# Exhibit 5

Declaration of Dr. Jeffrey Barrows

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **ALLIANCE FOR HIPPOCRATIC MEDICINE**, on behalf of itself, its members, and their members, and their members' patients; **AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS**, on behalf of itself, its members, and their patients; **AMERICAN COLLEGE OF PEDIATRICIANS**, on behalf of itself, its members, and their patients; **CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS**, on behalf of itself, its members, and their patients; **SHAUN JESTER, D.O.**, on behalf of himself and his patients; **REGINA FROST-CLARK, M.D.**, on behalf of herself and her patients; **TYLER JOHNSON, D.O.**, on behalf of himself and his patients; and **GEORGE DELGADO, M.D.**, on behalf of himself and his patients,<br>            Plaintiffs,<br><br>    v.<br><br>**U.S. FOOD AND DRUG ADMINISTRATION; ROBERT M. CALIFF, M.D.**, in his official capacity as Commissioner of Food and Drugs, U.S. Food and Drug Administration; **JANET WOODCOCK, M.D.**, in her official capacity as Principal Deputy Commissioner, U.S. Food and Drug Administration **PATRIZIA CAVAZZONI, M.D.**, in her official capacity as Director, Center for Drug Evaluation and Research, U.S. Food and Drug Administration; **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**; and **XAVIER BECERRA,** in his official capacity as Secretary, U.S. Department of Health and Human Services,<br>            Defendants. | Case No. _____ |

1

## DECLARATION OF DR. JEFFREY BARROWS

I, Jeffrey Barrows, D.O. M.A. (Ethics), a citizen of the United States and a resident of Blountville, Tennessee, declare under penalty of perjury under 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge.

1. I am over eighteen years old and make this declaration on personal knowledge.
2. I am a board-certified obstetrician and gynecologist and am the Senior Vice President of Bioethics and Public Policy for Plaintiff Christian Medical & Dental Associations (CMDA).
3. I practiced obstetrics and gynecology for approximately 18 years. I practiced gynecology in an office setting for an additional ten years.
4. I am familiar with CMDA, its members, their fields of practice, and CMDA's policies and positions.
5. CMDA is a national nonprofit organization headquartered in Tennessee. Its members are more than 13,000 Christian physicians, dentists, and allied healthcare professionals. CMDA has more than 1,200 members in Texas, including more than 600 physicians and approximately 35 OBGYNs.
6. CMDA is opposed to elective abortions as contrary to sacred scripture, respect for the sanctity of human life, and traditional, historical Judeo-Christian medical ethics.
7. CMDA's mission includes advocating on behalf of its members, including in litigation.

8. CMDA brings this suit on behalf of itself and its members.

9. CMDA has members in Texas and around the country who care for pregnant women in hospitals and clinics. CMDA's members care for women who suffer complications from chemical abortions.

10. A Risk Evaluation and Mitigation Strategy (REMS) is a drug safety program that the U.S. Food and Drug Administration (FDA) can require for certain medications with serious safety concerns to help ensure the benefits of the medication outweigh its risks.

11. I am familiar with the FDA's approval of chemical abortion drugs in 2000.

12. I am familiar with the FDA's regulatory changes regarding chemical abortion drugs, especially the REMS issued in 2016 and associated with the use of mifepristone and misoprostol for chemical abortions.

13. I understand that the FDA's 2016 changes expanded the gestational age for approved mifepristone use to 70 days (or 10 weeks) from 49 days (or 7 weeks), that it eliminated the in-person administration requirements for chemical abortion drugs, that it eliminated the requirement for a follow-up appointment after those drugs have been taken, and that it eliminated the prescriber reporting requirement for all adverse events except for death.

14. I also understand that the FDA subsequently eliminated the in-person dispensing requirements in 2021.

15. The FDA's actions harm women, practitioners, CMDA members, CMDA as an organization, and the medical profession generally.

16. Mifepristone and misoprostol are dangerous drugs that can potentially harm women. Relaxing the required medical supervision and oversight for patients taking these drugs puts women's health at risk.
17. By eliminating the in-person dispensing requirement and the requirement for a post-abortion follow-up, the FDA has exposed women to a higher likelihood of undetected serious complications. Specifically, the expanded use of telemedicine for chemical abortions means that some women who are beyond 70 days' gestation because they are mistaken or wrong about the gestational age of their unborn child will take these drugs outside of the appropriate window.
18. Similarly, without in-person visits and sonograms, women with ectopic pregnancies may escape diagnosis, which puts them at a greater risk of serious and life-threatening complications such as rupture of the Fallopian tube and secondary hemorrhage. Undetected ectopic pregnancies are especially dangerous for women because in some cases they can result in extreme bleeding for women.
19. By eliminating the adverse event reporting requirement for all events except death, the FDA has also undermined physicians' ability to practice evidence-based medicine. By failing to collect accurate information about the complications associated with chemical abortion, the FDA leaves doctors without accurate information about the drugs' safety for women.

20. As an organization, CMDA is harmed by the FDA's failure to require reporting of all adverse events, which prevents CMDA from providing the public, our members, and our members' patients with accurate statistics and complete information regarding potential risks associated with the use of chemical abortion drugs.

21. The inability to share accurate information with member physicians, their patients, and the public on the risks of chemical abortion frustrates and complicates CMDA's purpose to provide professional healthcare and to educate doctors, their patients, and the public about the dangers of chemical abortion.

22. By removing the requirements for in-person visits, the FDA has increased the risk of malpractice claims against physicians. The best way to prevent malpractice is for physicians to establish relationships with patients who they can treat over time. By doing away with the necessary medical supervision, the FDA will cause more women to present in life-threatening circumstances into the care of hospitalists and emergency department physicians who have no prior history with these patients.

23. By putting more doctors into riskier, emergent medical situations, the FDA's regulatory actions expose physicians to increased claims of liability.

24. The increased risks of exposure to liability and malpractice claims also impacts physicians because it drives up their insurance costs, especially those who practice in the hospital.

25. The FDA's loosening of chemical abortion regulations impacts the standard of care and the demands and expectations that hospitals will put on their physicians. The FDA has radically altered the standard of care for mifepristone and misoprostol. The agency did this without the requisite evidence to support its actions.

26. I am also concerned that the FDA's actions will force CMDA members to complete an unfinished elective abortion in an emergency situation, causing immediate emotional and moral distress for our members who are opposed to elective abortion and do not want to feel complicit in an immoral, unnecessary procedure.

27. CMDA has been involved with challenging the FDA's approval of chemical abortion drugs for 20 years. In 2002, we submitted a Citizen Petition with other pro-life groups challenging the FDA's actions, diverting valuable time and effort from CMDA's routine functions in order to assist in filing the petition.

Executed this November 12, 2022.

By: _____
Jeffrey Barrows, D.O. M.A.

6