# Exhibit 6

Declaration of Dr. Quentin Van Meter

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **ALLIANCE FOR HIPPOCRATIC MEDICINE**, on behalf of itself, its members, and their members, and their members' patients; **AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS**, on behalf of itself, its members, and their patients; **AMERICAN COLLEGE OF PEDIATRICIANS**, on behalf of itself, its members, and their patients; **CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS**, on behalf of itself, its members, and their patients; **SHAUN JESTER, D.O.**, on behalf of himself and his patients; **REGINA FROST-CLARK, M.D.**, on behalf of herself and her patients; **TYLER JOHNSON, D.O.**, on behalf of himself and his patients; and **GEORGE DELGADO, M.D.**, on behalf of himself and his patients,<br>         Plaintiffs,<br><br>     v.<br><br>**U.S. FOOD AND DRUG ADMINISTRATION; ROBERT M. CALIFF, M.D.**, in his official capacity as Commissioner of Food and Drugs, U.S. Food and Drug Administration; **JANET WOODCOCK, M.D.**, in her official capacity as Principal Deputy Commissioner, U.S. Food and Drug Administration **PATRIZIA CAVAZZONI, M.D.**, in her official capacity as Director, Center for Drug Evaluation and Research, U.S. Food and Drug Administration; **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**; and **XAVIER BECERRA,** in his official capacity as Secretary, U.S. Department of Health and Human Services,<br>         Defendants. | Case No. _____ |

## DECLARATION OF DR. QUENTIN L. VAN METER

I, Quentin L. Van Meter, a citizen of the United States and resident of Atlanta, Georgia, declare under penalty of perjury under 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge.

1. I am over eighteen years old and make this declaration on personal knowledge.

2. I am a board-certified pediatric endocrinologist.

3. I received my medical degree from the Medical College of Virginia in 1973.

4. I did my pediatric internship (1973-1974) and my pediatric residency (1974-1976) at the Naval Regional Medical Center in Oakland, through the University of California, San Francisco. I completed my pediatric endocrinology fellowship from 1978 to 1980 at The Johns Hopkins Hospital. I also worked as a staff pediatric endocrinologist at the Naval Hospital in San Diego (1980-1986) and was Chairman and Director of the residency training program at the Naval Hospital Oakland (1986-1991).

5. Following a 20-year career in the Navy Medical Corps, I moved to the Atlanta area and joined the Fayette Medical Clinic as a Pediatrician and Pediatric Endocrinologist. To better serve the ever-expanding population of pediatric patients with endocrine disorders, I developed my own full-time pediatric endocrine practice. Specifically, my practice helps children by treating them for disorders related to hormones and the endocrine glands that produce them.

6. I currently serve as the president of the American College of Pediatricians.
7. I am familiar with the American College of Pediatricians, its members, their fields of practice, and the organization's policies and positions, including as set forth in the complaint, which I have reviewed.
8. The American College of Pediatricians is a national organization of pediatricians and other healthcare professionals. Its membership includes more than 600 physicians and other healthcare professionals drawn from 47 different states across the nation. The American College of Pediatricians has members in the State of Texas.
9. The American College of Pediatricians brings this suit on behalf of itself and its members.
10. I am familiar with the FDA's approval of mifepristone and issuance of a risk evaluation and mitigation strategy (REMS) for the chemical abortion drug regimen, which includes both mifepristone and misoprostol.
11. I understand that prior to the 2000 approval of mifepristone, the FDA never required a clinical study evaluating the safety and effectiveness of chemical abortion drugs on pregnant girls under 18 years of age.
12. As a blocker of the hormone progesterone, mifepristone is an endocrine disruptor and, therefore, could interfere with pubertal development or adversely impact an adolescent girl's developing body and reproductive system. The FDA's failure to require pediatric clinical studies places girls at

risk from these drugs, which have the potential to dangerously adversely impact the health, safety, and welfare of the exposed adolescents.

13. To my knowledge, the FDA's 2000 approval of mifepristone for use in girls was unsupported by any scientific data showing that chemical abortion drugs are safe for girls under 18 years of age.

14. By failing to require studies, the FDA's 2000 approval placed young girls going through their reproductive development at risk.

15. Numerous studies have demonstrated that there is an increased risk from chemical abortion drugs to pregnant women and girls as compared to surgical abortion.

16. One recent study discovered that one-third of all post-abortion hospital emergency department visits in 2015 were after use of chemical abortion drugs. The FDA's elimination of REMS and loosening of restrictions increases the risk that girls will suffer complications from chemical abortion drugs.

17. I am also aware that, in 2016, the FDA eliminated the requirement that abortionists report non-fatal adverse events—preventing the agency, women and girls, their doctors, and the public from having an accurate understanding of the complications from chemical abortion drugs and the rate at which they occur.

18. Women, girls and their parents cannot give informed consent to chemical abortions drugs without this necessary information. And doctors cannot

accurately apprise their patients about the dangers of chemical abortion drugs without adequate studies elucidating these risks.

19. The American College of Pediatricians is also harmed by the FDA's failure to require reporting of all adverse events because it prevents us as an organization from providing the public, our members, and our members' patients with accurate statistics and complete information regarding potential risks associated with the use of chemical abortion drugs.

20. The inability to share accurate information with member physicians, their patients, and the public on the risks of chemical abortion frustrates and compromises our organization's purpose to provide professional healthcare and to educate doctors, their patients, and the public about the dangers of chemical abortion.

21. The American College of Pediatricians has challenged the FDA's continued deregulation of chemical abortion drugs. In 2019, we submitted a Citizen Petition with another pro-life group challenging FDA's 2016 major changes. It took considerable time, energy, and resources to assist in drafting the 26-page petition and compiling and analyzing supporting sources and studies. This effort caused the American College of Pediatricians to divert limited time, energy, and resources from its other priorities and routine functions.

22. The American College of Pediatricians continues to expend considerable time, energy, and resources on its public advocacy and educational activities

exposing the risk of harm to women, including pediatric girls, from the FDA's unlawful approval and deregulation of chemical abortion drugs.

Executed this November 11, 2022.

By: _____
Quentin L. Van Meter, M.D.