# Exhibit 10

Declaration of Dr. Steven A. Foley

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **ALLIANCE FOR HIPPOCRATIC MEDICINE**, on behalf of itself, its members, and their members, and their members' patients; **AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS**, on behalf of itself, its members, and their patients; **AMERICAN COLLEGE OF PEDIATRICIANS**, on behalf of itself, its members, and their patients; **CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS**, on behalf of itself, its members, and their patients; **SHAUN JESTER, D.O.**, on behalf of himself and his patients; **REGINA FROST-CLARK, M.D.**, on behalf of herself and her patients; **TYLER JOHNSON, D.O.**, on behalf of himself and his patients; and **GEORGE DELGADO, M.D.**, on behalf of himself and his patients,<br>　　　Plaintiffs,<br><br>　v.<br><br>**U.S. FOOD AND DRUG ADMINISTRATION; ROBERT M. CALIFF, M.D.**, in his official capacity as Commissioner of Food and Drugs, U.S. Food and Drug Administration; **JANET WOODCOCK, M.D.**, in her official capacity as Principal Deputy Commissioner, U.S. Food and Drug Administration **PATRIZIA CAVAZZONI, M.D.**, in her official capacity as Director, Center for Drug Evaluation and Research, U.S. Food and Drug Administration; **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**; and **XAVIER BECERRA**, in his official capacity as Secretary, U.S. Department of Health and Human Services,<br>　　　Defendants. | Case No. _____ |

1

## DECLARATION OF DR. STEVEN A. FOLEY

I, Steven A. Foley, a citizen of the United States and a resident of Carmel, Indiana, declare under penalty of perjury under 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge.

1. I am over eighteen years old and make this declaration on personal knowledge.

2. I am board-certified in obstetrics and gynecology. I practice in Angola, Indiana, and Evansville, Indiana.

3. As a hospitalist, I am associated with several hospitals and cover the emergency department for hospitals. As an OB/Gyn in a hospital setting, I have treated numerous women who have suffered complications from abortions.

4. I have practiced obstetrics and gynecology in Indiana and other states for many years.

5. I am a member of Plaintiff Christian Medical and Dental Associations.

6. During my time in Colorado, I was one of the only OB/Gyn doctors available to many patients. For example, during my time working in the plains of Colorado, it was 120 miles to the next OB/Gyn doctor.

7. I believe regulatory actions of the United States Food and Drug Administration (FDA) on chemical abortion will harm my practice and my patients.

8. Women suffer more complications from chemical abortions than surgical abortions.

9. The removal of the supervision requirements before administering chemical abortion drugs harms patients because it does not allow a doctor to establish gestational age, determine whether the woman has an ectopic pregnancy, or to check the Rhesus (Rh) levels of the patients. Giving women abortifacient drugs without these simple screening steps is simply against the standard of care and will cause more complications.

10. The FDA's actions will especially harm my practice in Indiana since the state's ban on abortions after 15 weeks took effect on September 15, 2022. This means more women will turn to chemical abortion drugs that they are able to obtain online and through the mail because they will seek to use these drugs to obtain surreptitious abortions after the gestational age limit. The increase in number of women taking chemical abortion drugs, especially later in gestational age, will lead to an increased demand in the emergency department.

11. Under the current practice by those who prescribe and dispense chemical abortion drugs like mifepristone and misoprostol, there is no follow-up or additional care provided to patients. Instead, with no established relationship with a physician, patients are simply left to report to the emergency room when they experience adverse effects.

12. Many women are underinformed on the severity of the effects associated with chemical abortions, including the duration and severity of bleeding, the pain associated with the process, and the emotional trauma that they experience.

13. When chemical abortion drugs work as intended, a woman will effectively deliver her unborn child and the placental and any other pregnancy tissues.

14. Many women who report to the emergency department do not disclose that they have taken abortifacient drugs. In some instances, women will tell medical providers that they are suffering a miscarriage. The lack of information or misinformation received by doctors by their patients impacts the course of treatment and the care that doctors can provide.

15. Because abortionists do not adequately inform a woman or a girl about what happens during a chemical abortion and give these drugs to her to take outside of the abortion facility, I have needed to treat and care for many women who have presented to the emergency department with intense bleeding and other effects of the chemical abortion drugs—although not considered complications from the regimen.

16. I have also treated several women for abortion-pill reversal, where women seek to stop a chemical abortion from occurring after they have taken mifepristone. I prescribe the drug progesterone for these patients in an attempt to save their pregnancy. These women experience mental anguish

over the experience of having chosen chemical abortion, and some of them do not feel like they were properly advised as to what they were choosing.

17. The FDA's removal of the adverse event reporting requirement for all adverse events except death harms my ability to perform evidence-based medicine. I am unable to assess the risks present to women because the FDA's removal of reporting requirements undermines the legitimacy of risk data.

Executed this November 13, 2022.

By: _____
Steven A. Foley, M.D.