# Exhibit 38

2020 Letter from Am. Coll. of Obstetricians & Gynecologists and Soc'y for Maternal-Fetal Med., to FDA about Mifepristone REMS (Apr. 20, 2020)

The American College of Obstetricians and Gynecologists
WOMEN'S HEALTH CARE PHYSICIANS

Society for Maternal•Fetal Medicine
High-risk pregnancy experts

April 20, 2020

Stephen M. Hahn, M.D.
Commissioner
U.S. Food and Drug Administration
10903 New Hampshire Avenue NW
Silver Spring, MD 20993

Re: Docket Number: FDA-2020-D-1106; Policy for Certain REMS Requirements During the COVID-19 Public Health Emergency Guidance for Industry and Health Care Professionals

Dear Commissioner Hahn:

On behalf of more than 60,000 of the nation's primary care obstetrician-gynecologists and subspecialty and high-risk obstetric practitioners dedicated to advancing women's health, thank you for your recent action to suspend enforcement of Risk Evaluation and Mitigation Strategy (REMS) requirements for certain drugs with laboratory testing or imaging requirements for the duration of the COVID-19 public health emergency. The American College of Obstetricians and Gynecologists and the Society for Maternal-Fetal Medicine urge the U.S. Food and Drug Administration (FDA) to immediately expand this policy to REMS and Elements to Assure Safe Use (ETASU) requirements for certain prescription drugs requiring in-person health care professional administration, where treatment could safely occur through telehealth or self-administration. In addition, physicians who provide such services in accordance with current clinical guidelines during this pandemic should not be held liable.

Obstetrician-gynecologists are serving on the front lines responding to the COVID-19 crisis. In order to provide the safest care for their patients and themselves, in-person visits are limited to emergency and essential physically necessary visits. We support the FDA's acknowledgment that REMS-required health care professional in-person dispensation is difficult because patients may need to avoid public places and patients suspected of having COVID-19 may be self-isolating and/or subject to quarantine. Under these circumstances, undergoing in-person clinic administration in order to obtain a drug subject to a REMS can put patients and others, including health care professionals and their families, at risk for COVID-19 transmission. As referenced in ACOG Committee Opinion #798, *Implementing Telehealth in Practice*, evidence suggests that telehealth provides comparable health outcomes when compared with traditional methods of health care delivery without compromising the patient–physician relationship.[1] Telehealth has quickly become integrated into nearly every aspect of obstetrics and gynecology. During this pandemic, it is essential to use telehealth services to limit COVID-19 transmission.

It is critical that the FDA promptly expand its recent policy to apply to the REMS and ETASU requirements for certain drugs requiring in-person dispensation, especially mifepristone. The current REMS and ETASU requirements for mifepristone are outdated and serve as a barrier to accessing this safe, effective medication. Further, they cause unnecessary delays in obtaining time-sensitive health care, without supporting improvements to patient safety or outcomes. During this federally declared public health emergency, these antiquated and superfluous requirements put patients and their physicians at risk, with no demonstrated benefit. As noted in the ACOG Position Statement, *Improving Access to*

*Mifepristone for Reproductive Health Indications*, mifepristone has been used by over 3 million women in the United States since FDA approval in 2000 and strong evidence exists regarding the safety of mifepristone for medication-induced abortion and medical management of early pregnancy loss.[2,3,4,5]

Restricting access to mifepristone interferes with the ability of obstetrician–gynecologists and other women's health clinicians to deliver the highest quality care for their patients, especially during the COVID-19 pandemic. Abortion is an essential component of comprehensive health care and is a time-sensitive service for which a delay of several weeks, or in some cases days, may increase the risks or potentially make it completely inaccessible.[6] Temporarily waiving REMS and ETASU requirements that certain drugs be dispensed in-person by certain medical professionals is particularly important for patients who suffer from other medical conditions and are at higher risk of serious complications from COVID-19, as well as those in rural areas for whom hours of travel for in-person administration would disallow social distancing recommendations and travel advisories.

In addition, we urge you to consider waiving the requirement for health care professional administration of subcutaneous depot medroxyprogesterone acetate (DMPA). Several studies have shown patient interest in self-administration and increased continuation of DMPA via subcutaneous at-home delivery.[7,8,9] In a period when limiting patient interactions with the health care system is essential to prevent COVID-19 transmission, it is in our patients' best interest to have unencumbered access to the contraceptive method of their choice, including DMPA.

Ensuring the safety of patients and physicians during the COVID-19 pandemic requires policy changes such as those already enacted by FDA to waive the REMS requirements for certain drugs with laboratory testing or imaging requirements. We strongly urge FDA to further protect patients and their health care professionals from the risk of transmission by promptly expanding the existing policy to waive REMS and ETASU requirements that certain drugs be dispensed in-person by certain medical professionals. Thank you for your consideration. We are available to answer any questions you may have regarding these issues.

Sincerely,

Maureen G. Phipps, MD

Maureen G. Phipps, MD, MPH, FACOG
Chief Executive Officer
American College of Obstetricians and Gynecologists

Judette Louis, MD, MPH
President
Society for Maternal-Fetal Medicine

Matt J. Granato, LL.M., MBA
Chief Executive Officer
Society for Maternal-Fetal Medicine

---

[1] Implementing telehealth in practice. ACOG Committee Opinion No. 798. American College of Obstetricians and Gynecologists. Obstet Gynecol 2020;135:e73–9.

[2] Improving Access to Mifepristone for Reproductive Health Indications. Position Statement. American College of Obstetricians and Gynecologists. June 2018. Available at https://www.acog.org/clinical-information/policy-and-position-statements/position-statements/2018/improving-access-to-mifepristone-for-reproductive-health-indications.

[3] Cleland K, Smith N. Aligning mifepristone regulation with evidence: Driving policy change using 15 years of excellent safety data. *Contraception*. 2015;92(3):179-181. doi:10.1016/j.contraception.2015.06.016.

[4] Sixteen Years of Overregulation: Time to Unburden Mifeprex. *N Engl J Med*. 2017;376(8):790-794.

[5] Song LP, Tang SY, Li CL, Zhou LJGYK, Mo XT. Early medical abortion with self-administered low-dose mifepristone in combination with misoprostol. *J Obstet Gynaecol Res*. 2018;44(9):1705-1711. doi:10.1111/jog.13716.

[6] Joint Statement on Abortion Access During the COVID-19 Outbreak. March 18, 2020. Available at https://www.acog.org/news/news-releases/2020/03/joint-statement-on-abortion-access-during-the-covid-19-outbreak.

[7] Upadhyay UD, Zlidar VM, Foster DG. Interest in self-administration of subcutaneous depot medroxyprogesterone acetate in the United States. *Contraception*. 2016;94(4):303-313. doi:10.1016/j.contraception.2016.06.006.

[8] Kohn JE, Simons HR, Della Badia L, et al. Increased 1-year continuation of DMPA among women randomized to self-administration: results from a randomized controlled trial at Planned Parenthood. *Contraception*. 2018;97(3):198-204. doi:10.1016/j.contraception.2017.11.009.

[9] Burke HM, Chen M, Buluzi M, et al. Effect of self-administration versus provider-administered injection of subcutaneous depot medroxyprogesterone acetate on continuation rates in Malawi: a randomised controlled trial. *Lancet Glob Heal*. 2018;6(5):e568-e578. doi:10.1016/S2214-109X(18)30061-5.