# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| ALLIANCE FOR HIPPOCRATIC MEDICINE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOOD AND DRUG ADMINISTRATION, *et al.*, <br><br> Defendants, <br><br> and <br><br> DANCO LABORATORIES, LLC, <br><br> Intervenor-Defendant. | Case No. 2:22-cv-00223-Z |

# DANCO'S MEMORANDUM IN OPPOSITION TO STATES' MOTION TO INTERVENE

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................1

   I.   The States Cannot Save This Lawsuit By Intervention ......................................1

       A.   The States Cannot Intervene In A Case Where Jurisdiction Is Lacking ......................................................................................................2

       B.   The States Cannot Continue Their Suit In Their Own Right ..................3

   II.   The States Are Not Entitled To Intervene As Of Right ....................................8

       A.   The Motion Is Untimely ........................................................................9

           1.   The States unreasonably delayed 11 months before moving to intervene ....................................................................................9

           2.   Allowing the States' belated intervention would severely prejudice Danco ...................................................................15

           3.   Denying intervention would not prejudice the States ......................16

           4.   Unique aspects of this case support denying intervention ..............17

       B.   The States Have Not Demonstrated A Legally Protectable Interest ....................17

       C.   Disposition Of This Action Will Not Impede The States' Ability To Protect Their Claimed Interests ........................................................21

       D.   The States Have Not Demonstrated Inadequate Representation ..........................22

   III.   Permissive Intervention Is Unwarranted ........................................................24

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*ACOG v. FDA,*
    467 F. Supp. 3d 282 (D. Md. 2020) ..........................................................................20, 21, 22

*ACOG v. FDA,*
    472 F. Supp. 3d 183 (D. Md. 2020) .........................................................................................11

*Aeronautical Radio, Inc. v. FCC,*
    983 F.2d 275 (D.C. Cir. 1993) ..................................................................................................4

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
    458 U.S. 592 (1982) ...................................................................................................................6

*Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.,*
    772 F.2d 401 (8th Cir. 1985) ............................................................................................15, 21

*Arkoma Assocs. v. Carden,*
    904 F.2d 5 (5th Cir. 1990) .........................................................................................................4

*Atkins v. N.C. Bd. of Educ.,*
    418 F.2d 874 (4th Cir. 1969) ....................................................................................................4

*Atlanta & F. R. Co. v. W. Ry. Co. of Ala.,*
    50 F. 790 (5th Cir. 1892) ..........................................................................................................4

*Barber v. Bryant,*
    860 F.3d 345 (5th Cir. 2017) ................................................................................................3, 5

*Benavidez v. Eu,*
    34 F.3d 825 (9th Cir. 1994) ......................................................................................................4

*Blake v. Pallan,*
    554 F.2d 947 (9th Cir. 1977) ............................................................................................21, 24

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ............................................................................................22, 23

*Buckley v. Ill. Jud. Inquiry Bd.,*
    997 F.2d 224 (7th Cir. 1993) ....................................................................................................4

*Bush v. Viterna,*
    740 F.2d 350 (5th Cir. 1984) ..................................................................................................25

*California v. Texas,*
    141 S. Ct. 2104 (2021) ........................................................................................................7, 19

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Carney v. Adams*,
    592 U.S. 53 (2020)...................................................................................2

*Danco Lab'ys, LLC v. All. for Hippocratic Med.*,
    143 S. Ct. 1075 (2023)............................................................................3

*Deus v. Allstate Ins. Co.*,
    15 F.3d 506 (5th Cir. 1994) ...................................................................21

*Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*,
    675 F.3d 149 (2d Cir. 2012)....................................................................4

*Doe v. Glickman*,
    256 F.3d 371 (5th Cir. 2001) ................................................12, 14, 24

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir. 1996) ...........................................................15, 22

*Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*,
    346 F.3d 552 (5th Cir. 2003) ................................................................10

*Field v. EPA*,
    No. 2:19-cv-120, 2020 WL 2086654 (N.D. Tex. Apr. 29, 2020) .............2

*Franciscan All., Inc. v. Azar*,
    414 F. Supp. 3d 928 (N.D. Tex. 2019) ................................................24

*Fuller v. Volk*,
    351 F.2d 323 (3d Cir. 1965)....................................................................4

*Guenther v. BP Ret. Accumulation Plan*,
    50 F.4th 536 (5th Cir. 2022) ................................................................23

*Haaland v. Brackeen*,
    599 U.S. 255 (2023)......................................................................6, 7, 17

*Harris v. Amoco Prod. Co.*,
    768 F.2d 669 (5th Cir. 1985) ..................................................................2

*Harrison v. Jefferson Par. Sch. Bd.*,
    78 F.4th 765 (5th Cir. 2023) ............................................................6, 20

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans
    Levee Dist.*,
    493 F.3d 570 (5th Cir. 2007) ..................................................................8

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Heaton v. Monogram Credit Card Bank of Ga.*,
297 F.3d 416 (5th Cir. 2002) ....................................................................19, 20, 23

*Hodges v. Abraham*,
300 F.3d 432 (4th Cir. 2002) ..................................................................................6

*Horn v. Eltra Corp.*,
686 F.2d 439 (6th Cir. 1982) ..................................................................................4

*Indus. Commc'ns & Elecs., Inc. v. Town of Alton*,
646 F.3d 76 (1st Cir. 2011) ....................................................................................4

*Inst. of Certified Pracs., Inc. v. Bentsen*,
874 F. Supp. 1370 (N.D. Ga. 1994) .......................................................................5

*Int'l Paper Co. v. Inhabitants of Town of Jay*,
887 F.2d 338 (1st Cir. 1989) ................................................................................24

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
138 S. Ct. 2448 (2018) ...........................................................................................4

*Kendrick v. Kendrick*,
16 F.2d 744 (5th Cir. 1926) ...............................................................................2, 3

*Kitchen v. BASF*,
952 F.3d 247 (5th Cir. 2020) ..........................................................................16, 23

*Kneeland v. NCAA*,
806 F.2d 1285 (5th Cir. 1987) ........................................................................10, 22

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) ............................................................8, 10, 22, 24

*La Union del Pueblo Entero v. Abbott*,
No. 5:21-cv-00844, 2021 WL 5410516 (W.D. Tex. Nov. 16, 2021) ....................24

*Lelsz v. Kavanagh*,
710 F.2d 1040 (5th Cir. 1983) ................................................................................9

*Louisiana by & through Landry v. Biden*,
64 F.4th 674 (5th Cir. 2023) ..................................................................................7

*Louisiana by & through La. Dep't of Wildlife & Fisheries v. NOAA*,
70 F.4th 872 (5th Cir. 2023) ..................................................................................6

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Louisiana v. Biden*,
338 F.R.D. 219 (W.D. La. 2021) ........................................................22

*Lucas v. McKeithen*,
102 F.3d 171 (5th Cir. 1996) .............................................................16

*M2 Tech., Inc. v. M2 Software, Inc.*,
589 F. App'x 671 (5th Cir. 2014) ......................................................25

*Mattice v. Meyer*,
353 F.2d 316 (8th Cir. 1965) ...............................................................4

*McClune v. Shamah*,
593 F.2d 482 (3d Cir. 1979)..................................................................3

*Miller & Miller Auctioneers, Inc. v. G. W. Murphy Indus., Inc.*,
472 F.2d 893 (10th Cir. 1973) .............................................................4

*Miller v. Albright*,
523 U.S. 420 (1998)...............................................................................5

*Nat'l Ass'n of State Util. Consumer Advocs. v. FCC*,
457 F.3d 1238 (11th Cir. 2006), *as modified*, 468 F.3d 1272 (11th Cir. 2006)........................4

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
732 F.2d 452 (5th Cir. 1984) .............................................................17

*Odle v. Flores*,
899 F.3d 344 (5th Cir. 2017) ...............................................................2

*Paxton v. Restaino*,
No. 4:22-cv-0143, 2023 WL 4614124 (N.D. Tex. July 18, 2023)............6

*Rotstain v. Mendez*,
986 F.3d 931 (5th Cir. 2021) ........................................................9, 25

*Save Our Springs All. Inc. v. Babbitt*,
115 F.3d 346 (5th Cir. 1997) ........................................................9, 10

*Second Amend. Found. v. ATF*,
No. 3:21-cv-0116, 2023 WL 4304760 (N.D. Tex. June 30, 2023)........10

*Sierra Club v. Babbitt*,
995 F.2d 571 (5th Cir. 1993) ...............................................................2

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Sierra Club v. City of San Antonio*,
115 F.3d 311 (5th Cir. 1997) ...................................................................20, 23, 24

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) ...................................................................................21

*Sommers v. Bank of Am., N.A.*,
835 F.3d 509 (5th Cir. 2016) .......................................................................2

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966) .................................................................................6, 21

*St. Bernard Par. v. Lafarge N. Am., Inc.*,
914 F.3d 969 (5th Cir. 2019) .................................................................8, 16, 17

*Staley v. Harris Cnty.*,
160 F. App'x 410 (5th Cir. 2005) .................................................................17

*Stallworth v. Monsanto Co.*,
558 F.2d 257 (5th Cir. 1977) ...................................................................15, 17

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ....................................................................................3

*Summit Off. Park, Inc. v. U.S. Steel Corp.*,
639 F.2d 1278 (5th Cir. 1981) ................................................................2, 3, 5

*U.S. ex rel. Texas Portland Cement Co. v. McCord*,
233 U.S. 157 (1914) ...............................................................................1, 2, 3

*Texas v. HHS*,
__ F. Supp. 3d __, 2023 WL 4629168 (W.D. Tex. July 12, 2023) ..........................5

*Texas v. U.S. Dep't of Energy*,
754 F.2d 550 (5th Cir. 1985) ...................................................................18, 19

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ........................................................... *passim*

*Town of Chester v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ...............................................................................7, 24

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .................................................................................24

**TABLE OF AUTHORITIES—Continued**

Page(s)

*United States v. Franklin Par. Sch. Bd.*,
    47 F.3d 755 (5th Cir. 1995) ...............................................................................22, 23

*United States v. Ritchie Special Credit Invs., Ltd.*,
    620 F.3d 824 (8th Cir. 2010) ................................................................................15

*United States v. Texas*,
    599 U.S. 670 (2023)..........................................................................2, 7, 16, 19

*Utah v. Walsh*,
    No. 2:23-cv-016, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023)............................................4

*Utah v. Walsh*,
    No. 2:23-cv-016, 2023 WL 6205926 (N.D. Tex. Sept. 21, 2023) ............................................6

*Van Gemert v. Boeing Co.*,
    739 F.2d 730 (2d Cir. 1984)..............................................................................24

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ....................................................................18, 19, 20, 23

*Walters v. Edgar*,
    163 F.3d 430 (7th Cir. 1998) .................................................................................3

*White Hat v. Landry*,
    475 F. Supp. 3d 532 (M.D. La. 2020).........................................................................5

*Wright Cnty. Libr. Bd. v. Harper Collins Publishers, Inc.*,
    No. 6:99-cv-03368, 2000 WL 35402281 (W.D. Mo. Feb. 11, 2000) ...............................18, 24

**STATUTES:**

28 U.S.C. § 1391(e)(1)(A) .......................................................................................4

28 U.S.C. § 1391(e)(1)(B) .......................................................................................4

28 U.S.C. § 1391(e)(1)(C) .......................................................................................4

Mo. Rev. Stat. § 188.021(1)......................................................................................13

W.V. Code § 30-1-26(b)(9) ......................................................................................13

W.V. Code § 30-3-13a(g)(5)......................................................................................13

**TABLE OF AUTHORITIES—Continued**

Page(s)

**RULES:**

Fed. R. Civ. P. 24(a)(2) ....................................................................................8, 10, 18

Fed. R. Civ. P. 24(b)(1)(B) ...........................................................................................24

Fed. R. Civ. P. 24(b)(3) ..........................................................................................24, 25

**OTHER AUTHORITIES:**

*Abortions in Kansas, 1998 Preliminary Report*,
    https://www.kdhe.ks.gov/DocumentCenter/View/13421/KS-Abortions-1998-PDF...............10

*Abortions in Kansas, 2021 Preliminary Report*,
    https://perma.cc/3CQ6-SFNE ...................................................................................11

*Abortions in Kansas, 2022 Preliminary Report*,
    https://perma.cc/L5XC-4JT2 ...................................................................................11

Charles Alan Wright & Arthur R. Miller, 7C Fed. Prac. & Proc. Civ. § 1918 (3d ed.) .................4

Charles Alan Wright & Arthur R. Miller, 14D Fed. Prac. & Proc. Juris. § 3815
    (4th ed. Apr. 2023 update) ...................................................................................5

Emily Bazelon, *Risking Everything to Offer Abortions Across State Lines*,
    N.Y. Times (Oct. 4, 2022),
    https://www.nytimes.com/2022/10/04/magazine/abortion-interstate-
    travel-post-roe.html...............................................................................................12

*New Lawsuits Target State Restrictions On Abortion Pills*, Mo. Laws. Media
    (Jan. 25, 2023), https://molawyersmedia.com/2023/01/25/new-lawsuits-
    target-state-restrictions-on-abortion-pills/ ...............................................................12

Press Release, Andrew Bailey, Mo. Att'y Gen., *Attorney General Bailey Directs*
    *Letter to CVS and Walgreens Over Distribution of Abortion Pills*
    (Feb. 1, 2023), https://ago.mo.gov/attorney-general-bailey-directs-letter-to-
    cvs-and-walgreens-over-distribution-of-abortion-
    pills/#:~:text=The%20letter%20informs%20CVS%20and,be%20conveyed%2
    0in%20the%20mails ...............................................................................................12

**TABLE OF AUTHORITIES—Continued**

Page(s)

Rebecca Grant, *Group Using 'Shield Laws' to Provide Abortion Care in States That Ban It*, The Guardian (July 23, 2023), https://www.theguardian.com/world/2023/jul/23/shield-laws-provide-abortion-care-aid-access#:~:text=On%2014%20July%2C%20Aid%20Access,where%20providing%20abortion%20is%20illegal .............................................................................................. 11, 12

Ruth Reader, *State Abortion Bans Prove Easy to Evade*, Politico (Nov. 1, 2022), https://www.politico.com/news/2022/11/01/state-abortion-bans-medication-00064407 ................................................................................................................ 12

Tessa Weinberg, *Missouri Dems Hope Kansas, Illinois Will Help Pay for Out-of-State Residents' Abortions*, Mo. Indep. (Aug. 5, 2022), https://missouriindependent.com/2022/08/05/missouri-dems-hope-kansas-illinois-will-help-pay-for-out-of-state-residents-abortions/ ................................................... 10

## INTRODUCTION

Apparently anticipating an unfavorable outcome in the pending Supreme Court merits case arising from this Court's April 7, 2023 ruling, Missouri, Kansas, and Idaho have belatedly sought to intervene, seeking to "cure the purported defects" in this Court's jurisdiction. ECF No. 156 at 6. But "intervention could not cure this vice in the original suit." *U.S. ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157, 163-164 (1914). If Plaintiffs' suit is dismissed on standing, any intervenor "must abide the fate of that suit" and likewise will face dismissal. *Id.* at 164. And because the entire premise of the States' intervention motion is to stave off dismissal, granting intervention now accomplishes nothing.

The States also do not meet the standard for intervention as of right. Their motion is untimely; the States sat on their hands for nearly a year, moving to intervene only on the eve of Supreme Court review. The States offer a handful of excuses for their delay, but none holds up to scrutiny. The States also have not identified any legally protectable interests or any plausible prejudice from denying intervention. And because they share Plaintiffs' same goal of restricting access to mifepristone, Plaintiffs are capable of representing the States' interests. Permissive intervention is unwarranted for similar reasons.

Allowing the States to belatedly intervene now would be highly inefficient and reward litigation gamesmanship—especially where the Supreme Court will issue a decision in this case by summer. And intervention is unnecessary given that the States have already participated—and can continue to represent their interests—as amici. The States' motion should be denied.

## ARGUMENT

### I.   The States Cannot Save This Lawsuit By Intervention.

If Plaintiffs lack standing, intervention by the States cannot cure that fundamental defect. Nor can the States maintain this action in their own right. Intervention should be denied.

1

## A.   The States Cannot Intervene In A Case Where Jurisdiction Is Lacking.

It is bedrock case law that a party's "status as an intervenor does not confer standing sufficient to keep the case alive" if "the party on whose side the intervenor intervened" lacks standing in their own right.  *Sierra Club v. Babbitt*, 995 F.2d 571, 574 (5th Cir. 1993) (citation, ellipses, and brackets omitted).  Intervention "presuppose[s] an action duly brought," *McCord*, 233 U.S. at 163-164, so "a person may not intervene if the original, underlying case was jurisdictionally defective," *Odle v. Flores*, 899 F.3d 344, 348 (5th Cir. 2017) (Graves, J., concurring in denial of rehearing en banc).  An intervenor's "participatory rights remain subject to the intervenor's threshold dependency on the original parties' claims," and it is "well-settled that '[a]n existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit.' "  *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (quoting *Kendrick v. Kendrick*, 16 F.2d 744, 745-746 (5th Cir. 1926)).

This black-letter law is true regardless of whether intervention is granted before or after the original plaintiff is found to lack standing.  After all, "a case or controversy can exist only if a plaintiff has standing to sue," *United States v. Texas*, 599 U.S. 670, 675 (2023), and "standing is assessed at the time the action commences," *Carney v. Adams*, 592 U.S. 53, 60 (2020) (citation omitted); *see also Field v. EPA*, No. 2:19-cv-120, 2020 WL 2086654, at *1 (N.D. Tex. Apr. 29, 2020) (Kacsmaryk, J.) ("One essential aspect of proving jurisdiction is proof of standing, because the federal courts must decide cases and controversies rather than act as roving philosopher kings passing judgment on the validity of the nation's laws.").  That is why the Fifth Circuit rejects intervention "in a 'jurisdictionally or procedurally defective' suit," *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 n.5 (5th Cir. 2016) (citation omitted), and why, "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs," *Summit Off. Park, Inc. v. U.S. Steel Corp.*,

2

639 F.2d 1278, 1282 (5th Cir. 1981).  It is black-letter law that "[a] motion for intervention under Rule 24 is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate."  *McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir. 1979); *see also, e.g.*, *Walters v. Edgar*, 163 F.3d 430, 432-433 (7th Cir. 1998).[1]

The States cannot circumvent that basic rule by rushing to intervene before the Supreme Court rules on whether Plaintiffs lack standing.  The States argue that "there is no impediment to intervention" "[b]ecause this Court has already ruled that the private plaintiffs have standing." ECF 156 at 5.  But the Supreme Court stayed that decision months ago, meaning there is no operative decision on which the States can piggyback.  *Danco Lab'ys, LLC v. All. for Hippocratic Med.*, 143 S. Ct. 1075 (2023).  If the Supreme Court holds in the pending merits case that Plaintiffs lack standing, "the only function remaining to th[is] court is that of announcing the fact and dismissing the cause."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see Barber v. Bryant*, 860 F.3d 345, 350, 352 (5th Cir. 2017) ("Because the plaintiffs do not have standing, we reverse the [preliminary] injunction and render a judgment of dismissal.").  The States—even if granted intervention—"must abide the fate of [Plaintiffs'] suit."  *McCord*, 233 U.S. at 164.

### B.    The States Cannot Continue Their Suit In Their Own Right.

In the face of all of this, the States maintain that they can "continue their suit" in their own right, regardless of Plaintiffs' fate in the Supreme Court.  *See* ECF No. 156 at 4-5.  But the exception they invoke is a narrow one: an intervenor must independently meet "the requirements that a plaintiff must satisfy—*e.g.*, filing a separate complaint" and demonstrating it "clearly has

---

[1]  Moreover, when intervention is " 'merely a contrivance between friends for the purpose of founding a jurisdiction which otherwise would not exist, the device cannot be allowed to succeed.' "  *Kendrick*, 16 F.2d at 746 (quoting *City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Tr. Co.*, 197 U.S. 178, 181 (1905)).  Both the States and Plaintiffs have been transparent that this is their goal.  *E.g.*, ECF No. 156 at 5; Cross-Pet. Reply 12-13, *All. for Hippocratic Med. v. FDA*, No. 23-395 (U.S. Nov. 28, 2023).

Article III standing"—before the court may "reach the merits."  *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2462-63 (2018).  Every Circuit agrees: a court may exercise its "discretion to treat an intervention as a separate action" *only* if the intervenors establish "a separate and independent jurisdictional basis" for their action.  *Arkoma Assocs. v. Carden*, 904 F.2d 5, 7 (5th Cir. 1990);[2] *see* Charles Alan Wright & Arthur R. Miller, 7C Fed. Prac. & Proc. Civ. § 1918 (3d ed.) ("[T]he court has discretion to treat the intervenor's claim as if it were a separate suit and may entertain it if it satisfies *by itself* the requirements of jurisdiction *and* venue." (emphases added)).  Although separate briefing would be required to fully examine the issue, every indication suggests the States lack such an independent basis, as to both venue *and* jurisdiction.

Take venue.  The States cannot meet their "burden of proof . . . to establish that venue is proper in th[is] district."  *Utah v. Walsh*, No. 2:23-cv-016, 2023 WL 2663256, at *5 (N.D. Tex. Mar. 28, 2023) (Kacsmaryk, J.) (citation omitted).  No party on either side of the "v" in the States' complaint resides in this district.  28 U.S.C. § 1391(e)(1)(A), (C).[3]  And "the events . . . giving rise" to the States' claims occurred within their own borders or in Washington, D.C., where the federal defendants sit.  *Id.* § 1391(e)(1)(B).  The States' proposal to "submit[ ] a joint complaint" with Plaintiffs, ECF No. 156 at 6, would not solve their venue problems, either.  If the Supreme

---

[2]  *See Indus. Commc'ns & Elecs., Inc. v. Town of Alton*, 646 F.3d 76, 79 (1st Cir. 2011); *Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160-162 (2d Cir. 2012); *Fuller v. Volk*, 351 F.2d 323, 328-329 (3d Cir. 1965); *Atkins v. N.C. Bd. of Educ.*, 418 F.2d 874, 876 (4th Cir. 1969); *Horn v. Eltra Corp.*, 686 F.2d 439, 440 (6th Cir. 1982); *Buckley v. Ill. Jud. Inquiry Bd.*, 997 F.2d 224, 227 (7th Cir. 1993); *Mattice v. Meyer*, 353 F.2d 316, 319 (8th Cir. 1965); *Benavidez v. Eu*, 34 F.3d 825, 829-831 (9th Cir. 1994); *Miller & Miller Auctioneers, Inc. v. G. W. Murphy Indus., Inc.*, 472 F.2d 893, 896 (10th Cir. 1973); *Nat'l Ass'n of State Util. Consumer Advocs. v. FCC*, 457 F.3d 1238, 1250 (11th Cir. 2006), *as modified*, 468 F.3d 1272 (11th Cir. 2006); *Aeronautical Radio, Inc. v. FCC*, 983 F.2d 275, 283 (D.C. Cir. 1993).

[3]  The familiar federal venue rules apply to States: "the state government . . .  resides at every point within the boundaries of the state"—but not beyond those boundaries.  *Atlanta & F. R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892).

Court determines that Plaintiffs lack standing, Plaintiffs must be dismissed. *See Barber*, 860 F.3d at 350, 352; *Summit*, 639 F.2d at 1282; *see also Miller v. Albright*, 523 U.S. 420, 427 (1998) (op. of Stevens, J.) (because plaintiff whose residency established Texas venue "did not have standing and [the court] dismissed him as a party," "venue in Texas was therefore improper" for remaining plaintiff); *cf. White Hat v. Landry*, 475 F. Supp. 3d 532, 550 (M.D. La. 2020) ("The Attorney General is the only defendant who resides in the Middle District," but "[a]s the claims against the Attorney General have been dismissed, venue is no longer proper in the Middle District under § 1391(b)(1)."). In any event, "venue cannot be based on the joinder of a . . . plaintiff who has been improperly and collusively joined for the purpose of creating venue in the district." Charles Alan Wright & Arthur R. Miller, 14D Fed. Prac. & Proc. Juris. § 3815 (4th ed. Apr. 2023 update); *see, e.g.*, *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("plaintiff cannot manufacture venue by adding [another entity] as a party" where that other entity "lacks standing to bring this action"). And because Plaintiffs do not challenge the 2023 REMS approval, the States cannot "piggyback off" Plaintiffs' alleged venue because "venue is established claim by claim, not by the entire suit." *Texas v. HHS*, __ F. Supp. 3d __, 2023 WL 4629168, at *11 (W.D. Tex. July 12, 2023); *see id.* ("each 'distinct cause of action' " must have "at least one plaintiff . . . with proper venue in the Northern District of Texas" (citation omitted)).

The States' asserted interests also do not suffice to confer constitutional standing. To start, the States' claims generally suffer from many of the same attenuation, traceability, and redressability issues as Plaintiffs' claims, but introduce even *more* independent actors and speculative events separating FDA's actions from any asserted injury—like whether a woman experiencing an adverse event after being prescribed mifepristone will need emergency care, will receive it in her home state, at a public hospital, and that the State will be required to pay for that

5

care because she is a Medicaid participant or a state government employee.  ECF No. 151-1 (Proposed Compl.) ¶¶ 278, 290, 299, 307.  The States also do not attempt to trace any alleged harm from a particular FDA action, or to show that undoing that action would redress their alleged injuries.  *See, e.g.*, ECF No. 50 at 12-14; Cert. Pet. 17-24, *Danco Lab'ys v. All. For Hippocratic Med.*, No. 23-236 (U.S. Sept. 8, 2023).  If the Supreme Court rejects Plaintiffs' standing assertions as too speculative, the States' claims must necessarily fail, too.

Moreover, none of the States' particular purported harms satisfy the injury-in-fact requirement.  *First*, the asserted "quasi-sovereign" "*parens patriae*" interest, ECF No. 152 at 13-14, flatly contravenes black-letter law that "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government."  *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (citation omitted).  That is true even if the State "seeks only to protect the health and well-being of [its] residents."  *Hodges v. Abraham*, 300 F.3d 432, 444 (4th Cir. 2002).  Although States may sue private parties or other States based on an interest in their citizens' wellbeing, *e.g.*, *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601-610 & n.16 (1982), States cannot assert such interests "against the Federal Government, the ultimate *parens patriae* of every American citizen," *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966).[4]  "[A] telling indication of the severe constitutional problem with a state's assertion of standing to bring this lawsuit is the lack of historical precedent supporting it."  *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 769 (5th

---

[4] *See also Louisiana by & through La. Dep't of Wildlife & Fisheries v. NOAA*, 70 F.4th 872, 882 n.5 (5th Cir. 2023) ("it is dubious that [a State] may maintain its *parens patriae* suit against the federal government at all"); *Utah v. Walsh*, No. 2:23-cv-016, 2023 WL 6205926, at *3 n.1 (N.D. Tex. Sept. 21, 2023) ("State Plaintiffs likely do not have standing" because "it is dubious that Louisiana may maintain its *parens patriae* suit against the federal government at all" (citation omitted)) (Kacsmaryk, J.); *Paxton v. Restaino*, No. 4:22-cv-0143, 2023 WL 4614124, at *3 (N.D. Tex. July 18, 2023) ("The *parens patriae* action allows a state to sue on behalf of its citizens at large.  But it may not do so against the federal government." (citation omitted)).

Cir. 2023) (citation, quotation marks, and brackets omitted).

*Second*, the States' supposed "sovereign" interests fail because they allege only "mere disobedience of state or federal law," which does not "hinder[] the respective government's enforcement of it." *Id.* at 772; *see Louisiana by & through Landry v. Biden*, 64 F.4th 674, 683 (5th Cir. 2023) (rejecting sovereign interests where federal action lacked "a direct effect on [State] Plaintiffs' law or policy"); *see also infra* pp. 19-20. And sovereign interests aside, the States "must still satisfy the basic requirements of standing, which, as discussed, they do not." *Louisiana*, 64 F.4th at 684 & n.59; *see also Texas*, 599 U.S. at 688-689 (Gorsuch, J., concurring in the judgment) (observing that "the notion that States enjoy relaxed standing rules had no basis in our jurisprudence," and "lower courts should just leave that idea on the shelf in [the] future" (citation, quotation marks, and brackets omitted)).

*Third*, the States' speculative claims of proprietary injury are also insufficient to establish injury. As explained *infra* pp. 17-19, the States have not even attempted to quantify their economic injuries with any degree of specificity. *See California v. Texas*, 141 S. Ct. 2104, 2116-20 (2021) (rejecting States' claim to standing "where a causal relation between injury and challenged action depends upon the decision of an independent third party (here an individual's decision to enroll in, say, Medicaid)"); *Haaland*, 599 U.S. at 295-296 (similar). And the Supreme Court recently reiterated that States lack standing to assert "attenuated" injuries from "federal policies" in the form of "indirect effects on state revenues or state spending." *Texas*, 599 U.S. at 680 n.3.

These same problems doom the States' efforts to challenge the 2023 REMS approval. Because Plaintiffs did not challenge that action, the States must have standing in their own right for that claim—*regardless* of what happens in the pending Supreme Court case. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439-440 (2017) (intervenor "must demonstrate Article III

standing when it seeks additional relief beyond that which the plaintiff requests"). They do not.[5]

In short, if the Supreme Court holds that Plaintiffs lack standing, the States cannot piggyback on Plaintiffs' lawsuit or proceed with this litigation in their own right. And if the Supreme Court holds that Plaintiffs have standing, then by the States' own telling, their intervention is unnecessary. Either way, intervention is unwarranted. At minimum, however, judicial economy counsels against adjudicating the States' motion until the Supreme Court proceedings have concluded; on the States' own admission, the outcome of the Supreme Court appeal will directly affect their arguments for intervention. ECF No. 156 at 5.

## II.   The States Are Not Entitled To Intervene As Of Right.

Entirely aside from whether they can intervene as a procedural matter, the States also do not satisfy the standard for intervention as a legal matter. Intervenors-of-right must satisfy four requirements: (1) their motion "must be timely"; (2) they "must have an interest relating to the property or transaction which is the subject of the action"; (3) they "must be so situated that the disposition of the action may, as a practical matter, impair [their] ability to protect that interest"; and (4) their interest "must be inadequately represented by the existing parties to the suit." *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019); *see* Fed. R. Civ. P. 24(a)(2). "Every intervenor must satisfy each of the four requirements of Rule 24(a)(2)." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 n.8 (5th Cir. 2022). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).

The States flunk all four.

---

[5] Because Danco did not intervene as to Plaintiffs' challenge to the 2019 generic approval, Danco does not specifically address the States' motion to intervene and challenge as to that action.

### A.   The Motion Is Untimely.

The States' motion to intervene—filed nearly a year into litigation while this Court's underlying order is on appeal before the Supreme Court—is untimely in the extreme.  Four factors determine whether an intervention motion is timely: (1) "the length of time the movant waited to file"; (2) "the prejudice to the existing parties from any delay"; (3) "the prejudice to the movant if intervention is denied"; and (4) "any unusual circumstances."  *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021).  All four disfavor intervention.

### 1.   The States unreasonably delayed 11 months before moving to intervene.

In evaluating timeliness, "the court must consider . . . the movant's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case."  *Lelsz v. Kavanagh*, 710 F.2d 1040, 1044 (5th Cir. 1983) (citation and quotation marks omitted).

Plaintiffs filed their complaint and moved for a preliminary injunction on November 18, 2022.  The States moved to intervene on November 3, 2023.  The States "knew or reasonably should have known" that they had an interest in this case when Plaintiffs filed it in November 2022.  *Id.*  Indeed, they directly demonstrated that interest as of February 2023, when they filed amicus briefs supporting Plaintiffs' motion for a preliminary injunction.[6]  And Idaho's interest was also apparent as of March 2023, when it unsuccessfully moved to intervene in a separate action concerning the 2023 REMS, alleging nearly identical harms to its "sovereign and quasi-sovereign interests."  ECF No. 76, *Washington v. FDA*, No. 1:23-cv-03026 (E.D. Wash. Mar. 30, 2023).

Courts routinely find far less lengthy delays untimely.  *See, e.g.*, *Save Our Springs All. Inc.*

---

[6]  Idaho participated as amicus in this Court.  ECF No. 100.  Missouri and Kansas separately participated as amici in this Court, the Fifth Circuit stay and merits proceedings, and the Supreme Court stay proceedings.  *See* ECF Nos. 100, 110; ECF Nos. 168, 169, 478-1, 480-1, *All. for Hippocratic Med. v. FDA*, No. 23-10362 (5th Cir.); *Danco Lab'ys, LLC v. All. for Hippocratic Med.*, 22A901 (U.S. Apr. 18, 2023).

*v. Babbitt*, 115 F.3d 346, 347 (5th Cir. 1997) (affirming denial of Texas's motion to intervene filed less than 3 months after complaint); *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc*., 346 F.3d 552, 561 (5th Cir. 2003) (2.5 months); *Kneeland v. NCAA*, 806 F.2d 1285, 1289 (5th Cir. 1987) (4 months); *see also, e.g.*, *Second Amend. Found. v. ATF*, No. 3:21-cv-0116, 2023 WL 4304760, at *4 (N.D. Tex. June 30, 2023) (denying intervention where party engaged in "opportunism" by waiting until after injunction issued).

The States offer a bare three-sentence explanation for their untimely motion, contending that three events only recently "put [them] on notice that their interests may be adversely affected." ECF No. 152 at 9.  None is remotely new, let alone novel enough to justify the year-long delay.[7]

*First*, the States point to this year's update to a Kansas annual report about abortion statistics showing "how many Missourians" are obtaining abortions in Kansas.  *Id.*  Kansas has released a similar report each year since at least 1998.  *Abortions in Kansas, 1998 Preliminary Report*.  Missouri argues that the 2022 report was the first one released "since after *Dobbs*," ECF No. 152 at 9, but never explains why that timing justifies its belated intervention.  And even after *Dobbs*, Missouri was on notice that women would continue to seek abortion care in other States. *See, e.g.*, Tessa Weinberg, *Missouri Dems Hope Kansas, Illinois Will Help Pay for Out-of-State Residents' Abortions*, Mo. Indep. (Aug. 5, 2022).  Indeed, the Missouri Attorney General filed a lawsuit in July 2022, months *before* Plaintiffs filed their complaint, designed to stop the City of St. Louis from assisting women in obtaining abortion care in other States.  Pet., *Missouri v. St. Louis*, No. 2222-CC08920 (Mo. 22nd Jud. Cir. Ct. July 26, 2022).  And in all events, the Kansas annual report is irrelevant to Missouri's professed interests here:  The report does not contain any

---

[7] Two of these three purported rationales apply only as to Missouri and therefore cannot establish Kansas's and Idaho's interests.  *See La Union del Pueblo Entero*, 29 F.4th at 309 n.8 ("*Every* intervenor must satisfy each of the four requirements of Rule 24(a)(2)." (emphasis added)).

information about the number of Missourians seeking follow-up care in *Missouri*, much less the subset of women who sought such care at a public hospital.  In fact, the number of Missourians obtaining abortions in Kansas substantially *decreased* from 2021 to 2022.  *Compare Abortions in Kansas, 2021 Preliminary Report* at 8, *with Abortions in Kansas, 2022 Preliminary Report* at 8.[8]

     *Second*, the States point to various news articles reporting that certain organizations are mailing mifepristone without regard to local laws that prohibit or restrict abortion at the recipient's address.  ECF No. 152 at 3-5.  These articles—which have nothing to do with this litigation—offer no facts about mailing mifepristone into Missouri, Kansas, or Idaho.  Obtaining mifepristone by telemedicine is legal in Kansas.  *See* Order on Remand, *Trust Women Found., Inc. v. Bennett*, No. 2019-cv-00060 (Kan. Dist. Ct. Div. 3) (Nov. 23, 2022).  And most important, this is not *new* news: Idaho and Missouri have long been on notice of the possibility that women in States that restrict abortion access might seek to obtain mifepristone by mail.  Their past litigation conduct and public statements confirm as much.  The States acknowledge this has been occurring since at least 2018; their own sources note that a federal judge enjoined the in-person dispensing requirement in 2020. *See* Rebecca Grant, *Group Using 'Shield Laws' to Provide Abortion Care in States That Ban It*, The Guardian (July 23, 2023) (cited at ECF No. 152 at 4); *see also ACOG v. FDA*, 472 F. Supp. 3d 183, 232 (D. Md. 2020).  Idaho and Missouri unsuccessfully sought to intervene in that litigation in June 2020 on the ground that enjoining the in-person dispensing requirement would make it "harder to defend and enforce" their state laws regulating medication abortion.  ECF No. 51-1 at

---

[8] Kansas and Idaho, for their part, do not explain why a report about the number of *Missourians* obtaining abortions justifies their belated intervention.  It doesn't.  The report documents a decline in Kansas residents obtaining abortions in 2022 and shows that *zero* women from Idaho obtained abortions in Kansas in 2022. *Abortions in Kansas 2022* at 6, 8.  Idaho also highlighted the potential that women would travel to States where abortion remains legal in its March 2023 proposed complaint accompanying its motion to intervene in the Washington litigation over the 2023 REMS. *See* ECF No. 76-1 at 11, *Washington v. FDA*, No. 1:23-cv-03026 (E.D. Wash. Mar. 30, 2023).

7, *ACOG v. FDA*, No. 8:20-cv-01320 (D. Md. June 8, 2020). The States also highlighted concerns involving the distribution of mifepristone by mail in their amicus briefs before this Court. ECF No. 48-2 at 1, 7; ECF No. 100 at 13. The Missouri Attorney General sent a public letter to pharmacies in February 2023 "informing them that . . . us[ing] the mail to distribute abortion pills is both unsafe and illegal" under state law. *See* Press Release, Andrew Bailey, Mo. Att'y Gen., *Attorney General Bailey Directs Letter to CVS and Walgreens Over Distribution of Abortion Pills* (Feb. 1, 2023). And Idaho highlighted similar concerns in its March 2023 motion to intervene in the Washington litigation. ECF No. 76-1 at 11, *Washington v. FDA*, No. 1:23-cv-03026, (E.D. Wash. Mar. 30, 2023). The States' complaints about shield laws run into the same problem: States began enacting shield laws in May 2022; Massachusetts enacted the first shield law containing a telemedicine provision in July 2022. *See* Grant, *supra*.

The States maintain that they only recently learned about the scope of the telemedicine-by-mail issue. But the question is when the proposed intervenor "knew or *reasonably should have known* of [its] stake in the case." *Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (emphasis added). The States have reasonably been on notice since at least 2018, and certainly since FDA temporarily suspended the in-person dispensing requirement in 2021, that women could seek to obtain mifepristone by mail. They likewise have been on notice since before Plaintiffs filed suit that this practice might become more common post-*Dobbs*. As an October 2022 article cited in the States' complaint explains, "[o]rders for abortion pills to telemedicine nonprofit Aid Access have increased in states that have imposed restrictions since the Supreme Court gave states permission to do so in June." Ruth Reader, *State Abortion Bans Prove Easy to Evade*, Politico (Nov. 1, 2022) (cited at Proposed Compl. ¶ 373 n.165); *see also* Emily Bazelon, *Risking Everything to Offer Abortions Across State Lines*, N.Y. Times (Oct. 4, 2022) (cited at Proposed

12

Compl. ¶ 373 n.165) ("After *Dobbs*, queries to Aid Access tripled to about 3,600 a month from about 1,200, roughly two-thirds of them from women in states with abortion bans.").

*Third*, Missouri points to an August 2023 decision in an out-of-state district court case involving a preemption challenge to West Virginia's prohibition on prescribing mifepristone via telemedicine, which has since been dismissed with prejudice. ECF 152 at 3; *see* ECF No. 73 at 2, *GenBioPro, Inc. v. Sorsaia*, No. 3:23-cv-00058 (S.D.W. Va. Oct. 18, 2023); ECF No. 74 (S.D.W. Va. Oct. 19, 2023). Missouri says that it was unaware that there might be a conflict between FDA's actions and Missouri's law mandating in-person dispensing of mifepristone until the West Virginia district court's August ruling. ECF No. 152 at 3.

Missouri's argument beggars belief. Even setting aside the fact that this case does not involve any similar preemption claims, and that the West Virginia decision is nonprecedential, is from another district, involves a different State's law,[9] and that the telemedicine preemption claim has since been dismissed with prejudice, Missouri has *long* been on notice that state laws restricting abortion access—and telemedicine bans and in-person dispensing requirements in particular—are subject to potential preemption challenges. GenBioPro filed a similar case challenging Mississippi's telemedicine ban as preempted in 2020. *See* ECF No. 1, *GenBioPro v. Dobbs*, No. 3:20-cv-00652 (S.D. Miss. Oct. 9, 2020). The *GenBioPro* suit challenging West Virginia's law and a similar suit challenging North Carolina's law were both filed in January 2023. ECF No. 1, *GenBioPro v. Sorsaia*, No. 3:23-cv-00058 (S.D.W. Va. Jan. 25, 2023); ECF No. 1, *Bryant v. Stein*, No. 1:23-cv-00077 (M.D.N.C. Jan. 25, 2023). Missouri (along with Kansas and Idaho) filed a motion for leave to participate as amici in the West Virginia case on February 28, 2023, *see* ECF

---

[9] Missouri mandates in-person *dispensing*. Mo. Rev. Stat. § 188.021(1). West Virginia prohibits *prescribing* mifepristone by telemedicine. W.V. Code §§ 30-3-13a(g)(5); 30-1-26(b)(9).

No. 24, *GenBioPro v. Sorsaia*, No. 3:23-cv-00058 (S.D.W. Va. Feb. 28, 2023); the Missouri legal press reported on both the North Carolina and West Virginia suits soon after they were filed in January 2023.[10]  More broadly, the United States sued Idaho in August 2022, arguing its state laws restricting abortion are preempted under EMTALA.  ECF No. 1, *United States v. Idaho*, No. 1:22-cv-00329 (D. Idaho Aug. 2, 2022).

The filing of several complaints raising preemption challenges to similar laws "reasonably should have" put Missouri on notice of the alleged risks to its sovereignty.  *Glickman*, 256 F.3d at 376.  And even if Missouri was somehow not on notice when it filed its own amicus brief in this case in February, it certainly was aware of any supposed risk when it, along with Kansas and Idaho, filed an amicus brief in the West Virginia litigation in March.  ECF No. 30, *GenBioPro v. Sorsaia*, No. 3:23-cv-00058 (S.D.W. Va. Mar. 6, 2023).

The States hint at two other arguments, neither of which saves their untimely filing.

In the background section of their motion, the States note that the federal defendants' September 2023 petition for certiorari "focuses" on Plaintiffs' standing (or lack thereof).  ECF No. 152 at 5.  That is not late-breaking news.  The States have long known that Plaintiffs' standing is a key question on which the viability of this suit turns.  That issue has been heavily litigated since the outset of this case.  *See, e.g.*, ECF No. 7 at 7-11; ECF No. 28 at 8-16; ECF No. 50 at 9-14.  The States offer no reason why the petition for certiorari was the first filing to put them on notice of this concern, as opposed to the November 2022 through February 2023 preliminary injunction briefing, or the March 2023 hearing, or the April 2023 stay briefing, or the April and May 2023 Fifth Circuit appeal briefing.

The States also suggest in passing that their intervention is per se timely because they

---

[10]  *New Lawsuits Target State Restrictions On Abortion Pills*, Mo. Laws. Media (Jan. 25, 2023).

moved to intervene before trial or final judgment. ECF No. 152 at 9. The Fifth Circuit rejects such "absolute measures of timeliness." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977) (citation and quotation marks omitted); *see also id.* ("whether the request for intervention came before or after the entry of judgment, [i]s of limited significance"). For good reason; focusing on what *has not* occurred ignores what *has*: Plaintiffs filed their complaint and moved for a preliminary injunction; Danco timely intervened; the parties and amici (including the States) engaged in lengthy injunction briefing; this Court held a multi-hour hearing; Danco and FDA appealed for a stay to the Fifth Circuit and Supreme Court, where the States again participated as amici; and Danco and FDA appealed the injunction to the Fifth Circuit, and subsequently the Supreme Court, which has since granted review. Intervention at this late stage is untimely. *See, e.g.*, *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 831, 833 (8th Cir. 2010) (intervention motion filed six months after preliminary injunction untimely where would-be intervenor knew about injunction "since its inception"); *Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985) (affirming denial of intervention motion filed five days after temporary restraining order was entered where other parties "managed to file their intervention motions" before TRO hearing and would-be intervenors participated as amici in district court and on appeal).

### 2. Allowing the States' belated intervention would severely prejudice Danco.

Allowing the States to belatedly intervene will severely prejudice Danco, waste this Court's and the parties' time and resources, and risk further delaying resolution of Plaintiffs' claims on the merits. *See Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996).

As this Court is well aware, this case involves complex issues that have generated substantial briefing and required significant time and investment by the parties, this Court, the Fifth Circuit, and the Supreme Court. Had the States intervened at the outset, the parties and the

Court could have collectively litigated and resolved the States' and Plaintiffs' claims, including the States' claims involving the 2023 REMS, which post-date Plaintiffs' complaint. As the States backhandedly acknowledge, expanding the scope of existing litigation at this stage to separately litigate this "additional claim[ ]" would be highly inefficient. ECF No. 152 at 11; *see id.* at 1 (bemoaning "serious risk of judicial inefficiency if not all interests are presented at once").

Danco will also be prejudiced if the States are allowed to "revisit[ ] issues previously addressed at length by the parties." *See Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996). The States assert that intervention is warranted to protect their interests if the Supreme Court vacates the injunction based on Plaintiffs' lack of standing. ECF No. 152 at 1. But if Plaintiffs lack standing, the Supreme Court is unlikely to address the APA claims on the merits. *See, e.g.*, *Texas*, 599 U.S. at 676 (standing is "threshold question"). Requiring Danco to return to this Court to litigate the States' ability to maintain this suit, *see supra* pp. 3-8, and to relitigate the same merits issues on remand against a different opponent, is highly inefficient.

The States do not dispute that granting them leave to intervene over a year after Plaintiffs filed their complaint and moved for a preliminary injunction will severely prejudice Danco, thereby forfeiting any such argument. *See, e.g.*, *Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020) (issues not briefed are forfeited). Instead, they focus on whether Danco can point to prejudice starting at the end of August. ECF No. 152 at 10. That starting point is fundamentally flawed for the reasons already explained. Intervention should be denied on this basis alone.

### 3. Denying intervention would not prejudice the States.

The States will not suffer prejudice if intervention is denied. The States remain free to pursue their claims in separate litigation in a proper venue. *See supra* pp. 4-5; *St. Bernard Par.*, 914 F.3d at 975 (no prejudice even if "it will be difficult to pursue [the] claim elsewhere" or proposed intervenor "preferred not to bring a separate action"). An adverse ruling in this suit will

16

not bind the States as nonparties.  *E.g.*, *Haaland*, 599 U.S. at 293.  This is in stark contrast to

Danco's position:  Danco (swiftly) intervened because an adverse ruling would threaten Danco's

ability to market its only product, thereby jeopardizing the company's very existence.  *See* ECF

No. 20 at 5-6; Order, ECF No. 33 at 3 ("Danco moved to intervene within weeks of first learning

of its interest in the case.").  In the meantime, the States are free to continue participating as amici.

### 4.  Unique aspects of this case support denying intervention.

Finally, "unusual circumstances militat[e] . . . against a determination that the application

is timely."  *Stallworth*, 558 F.2d at 266.  The States do not proffer any further "justification for

[their] tardiness."  *Id.*  The extreme degree of publicity around this case severely undercuts any

claim that the States were unaware of this litigation's stakes, *see Staley v. Harris Cnty.*, 160 F.

App'x 410, 412 (5th Cir. 2005), and their litigation conduct in this very case and others

demonstrates their sophistication on these issues.  That a decision by the Supreme Court is

imminent also counsels against pushing forward.

### B.  The States Have Not Demonstrated A Legally Protectable Interest.

The States also have not demonstrated an adequate interest in the "transaction which is the

subject of the action."  *St. Bernard Par.*, 914 F.3d at 974.  The key question is whether the alleged

interest is "legally protectable," which requires the interest to be "one which the *substantive* law

recognizes as belonging to or being owned by the applicant."  *New Orleans Pub. Serv., Inc. v.

United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984).  None of the States' three purported

interests are sufficiently "concrete, personalized, and legally protectable" to warrant intervention.

*Texas v. United States*, 805 F.3d 653, 657-658 (5th Cir. 2015).

*First*, the States' claimed economic harms from Medicaid and government insurance

expenditures and from public hospital costs do not justify intervention.  ECF No. 152 at 13.

"[E]conomic interests can justify intervention when they are directly related to the litigation."

17

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 568 (5th Cir. 2016).  But a "generalized, 'purely economic interest' " in spending less money will not suffice.  *Texas*, 805 F.3d at 658 (citation omitted).  The States' alleged economic injuries fall into the latter category.

Alleged financial expenditures are too far removed from this lawsuit to establish a "direct . . . interest in the proceedings."  *Id.* at 657 (citation and quotation marks omitted).  The States have not identified a single example of an expenditure that would have been avoided had FDA's 2016, 2021, or 2023 actions not occurred, despite having several years of data to draw from.  The closest Idaho comes is to assert that it provided Medicaid coverage in 2022 "for a woman" following an unsuccessful medication abortion, Proposed Compl. ¶ 295, but Idaho provides no facts demonstrating that this woman would have been unable to obtain mifepristone under the pre-2016 REMS, nor does it attempt to quantify any costs Idaho incurred as a result of that single case.  And although Missouri claims that over a five-year period, its public hospitals filed 55 medication abortion "complication reports," *id.* ¶ 306; *id.* Ex. 39 at 2, Missouri offers no facts about what preparing a "complication report" entails, whether the complications in question were serious adverse events, whether the medication abortions would have been available under the pre-2016 REMS, or how much those "complications" cost Missouri.

Instead, the States say that the ripple effect of FDA's actions will ultimately lead to an economic burden.  The fact that "the outcome of [a case] might somehow increase" financial costs is not "sufficient to warrant intervention under Rule 24(a)(2)," particularly where that alleged financial cost rests on "speculation" about subsequent events by independent actors.  *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 552 (5th Cir. 1985); *see also Wright Cnty. Libr. Bd. v. Harper Collins Publishers, Inc.*, No. 6:99-cv-03368, 2000 WL 35402281, at *2 (W.D. Mo. Feb. 11, 2000) (denying intervention where Missouri's asserted financial interest was too speculative).  Such

interests fail under Article III, *Texas*, 599 U.S. at 680 n.3, and they fail for purposes of intervention too. Otherwise, "it would be difficult on a principled basis to hereafter deny" any State's motion to intervene into any action that could potentially affect the State's fisc. *Texas*, 754 F.2d at 552. Every State undoubtedly "yearns for lower" costs. *Texas*, 805 F.3d at 658 (citation omitted).

The States also fail to plausibly allege any claimed financial interest is "substantial." *Id.* at 657 (citation omitted). They have not attempted to quantify (1) the number of women who obtain a medication abortion involving mifepristone, (2) that would not have been available prior to 2016, 2021, or 2023, (3) require follow-up hospital care, (4) go to an emergency room in their home State, (5) at a public hospital, (6) are on Medicaid or other public insurance as opposed to private insurance, and (7) the costs billed to the State associated with treating that hypothetical woman. *Cf. Texas*, 141 S. Ct. at 2117. Perhaps because of the degree of speculation involved, Missouri and Kansas do not estimate their putative economic harm, asserting only that they incur "some" such emergency medical costs or generally "expend funds." Proposed Compl. ¶¶ 290, 294. And although Idaho recites some data about funds expended for "abortion medical complications," it does not attempt to isolate the funds spent specific to *medication* abortions involving FDA-approved mifepristone. *See id.* ¶¶ 296-297. Nor do the States attempt to quantify the amount of money spent as a result of FDA's decisions in 2016, 2021, and 2023—as opposed to the 2000 approval, which the States do not challenge.

*Second*, the States argue that a generic interest in "preserving a 'regulatory system'" justifies intervention-by-right. ECF No. 152 at 13 (quoting *Wal-Mart*, 834 F.3d at 566, and citing *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 424 (5th Cir. 2002)). But, as the very cases they cite show, the Fifth Circuit's intervention doctrine is far more circumspect. The States are not the "intended beneficiar[ies]" of FDA's mifepristone REMS. *Wal-Mart*, 834 F.3d

at 567 (citation omitted). The States are not attempting to intervene in defense of a law they "successfully petition[ed]" to be adopted, *see id.*, or that speaks to the very core of the "Congressionally designed framework" they are directly charged with enforcing, *see Heaton*, 297 F.3d at 424-425 (authorizing FDIC to intervene in litigation challenging the framework designed "to ensure the safety and integrity of the federal deposit insurance system"). Nor is this case like *Sierra Club v. City of San Antonio*, 115 F.3d 311 (5th Cir. 1997) (cited at ECF No. 152 at 13-14), where Texas was allowed to intervene to defend its management of state natural resources against a challenge that Texas's actions violated the Endangered Species Act.

Here, nothing in FDA's 2016, 2021, or 2023 actions relating to mifepristone limits the States' ability to "create their own legal and regulatory systems." ECF No. 152 at 13. The States are still free to—and do—heavily regulate and restrict abortion access within their borders, above and beyond the mifepristone REMS. The States do not cite any authority holding that the federal government impinges state sovereignty when, relying on decades of studies and substantial expertise, it elects to change the conditions under which a drug is available for safe and effective use, which the States allege makes it incidentally harder to violate their laws. Any purported threat to the States' ability to enforce their laws is also too attenuated to justify intervention as of right. Because this suit does not challenge "the enforceability of [the States'] law[s]," any "alleged failure to follow state and federal law is not currently injuring [the States'] sovereign interest." *Harrison*, 78 F.4th at 772. As the *ACOG* court explained in denying Missouri's and Idaho's motion to intervene, "the resolution of this case will not eliminate any state's ability to continue to regulate medication abortion, as they choose, above and beyond the FDA's requirements. As a result, these broader policy interests supported by the States cannot serve as a basis for mandatory intervention." *ACOG v. FDA*, 467 F. Supp. 3d 282, 289 (D. Md. 2020).

20

*Third*, the States suggest they have a "quasi-sovereign interest in protecting the health and wellbeing of their citizens" that justifies intervention.  ECF No. 152 at 13.  But as discussed above, the federal government is "the ultimate *parens patriae* of every American citizen."  *Katzenbach*, 383 U.S. at 324; *see supra* p. 6.  And a "generalized preference that the case come out a certain way" is *not* enough to justify intervention.  *Texas*, 805 F.3d at 657; *see also Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir. 1977) ("sufficient interest for purposes of establishing intervention of right" cannot rest "solely on public interest grounds").  Otherwise, States could intervene in virtually any and every case, stripping the mandatory intervention doctrine of all its teeth.  And again, the States remain free to pursue those "broader policy interests" by regulating "medication abortion[ ] as they choose, above and beyond the FDA's requirements."  *ACOG*, 467 F. Supp. 3d at 289.

### C.   Disposition Of This Action Will Not Impede the States' Ability To Protect Their Claimed Interests.

Because the States have not identified a legally protected interest in this case, they have not shown an adverse impact supporting intervention.  Regardless, the States have ample other avenues to protect any purported interest, including by filing their own lawsuit or by continuing to participate in these proceedings as amici.  *See Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994); *Ark. Elec. Energy Co.*, 772 F.2d at 404; *see also* ECF No. 137 at 29, 63 (noting States' participation as amici and discussing their briefs in granting preliminary injunction).

The States argue that an adverse ruling in this case would have "*stare decisis* effect" should the States ultimately file their own lawsuit.  ECF No. 152 at 15 (citation omitted).  But non-parties are not bound by res judicata.  *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (reiterating "the fundamental nature of the general rule that only parties can be bound by prior judgments" (citation, quotation marks, and brackets omitted)).  The Supreme Court's ruling may make it more difficult for the States to defend their alleged interests in future litigation, but "every case has the

potential to create new legal precedent or persuasive authority, so the application of mandatory intervention under Rule 24 must be governed by a more exacting limiting principle than the notion that other laws will become harder to defend and enforce." *ACOG*, 467 F. Supp. 3d at 289 (citation and quotation marks omitted). And if the States viewed *stare decisis* as a real concern, they would have intervened sooner, before the preliminary injunction was appealed.

### D. The States Have Not Demonstrated Inadequate Representation.

The States also have not established that Plaintiffs cannot adequately represent their interests. The Fifth Circuit presumes adequacy when would-be intervenors share "the same ultimate objective as a party to the lawsuit," unless the party seeking to intervene demonstrates "adversity of interest, collusion, or nonfeasance." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (citation omitted). Only if a presumption of adequacy does not apply may courts "revert to the *de minimis* standard of proof." *Edwards*, 78 F.3d at 1006.

That presumption applies here. The States and Plaintiffs have the same end objective: a court order dramatically curtailing or eliminating access to mifepristone. Indeed, although the States assert "unique interests," ECF No. 152 at 17, they never claim to have a different "ultimate objective" from Plaintiffs. *United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995). To the contrary; the States insist their "complaints materially differ only with respect to the theories of standing." ECF No. 156 at 2. And no matter how numerous the States' assertedly "important interests" may be, ECF No. 152 at 17, "[t]here can only be one 'same ultimate objective,'" otherwise the Fifth Circuit "would have added an 's' to objective." *Louisiana v. Biden*, 338 F.R.D. 219, 224 (W.D. La. 2021) (quoting *Kneeland*, 806 F.2d at 1288); *see also, e.g.*, *La Union*, 29 F.4th at 308 (where both parties' goal was to "uphold SB 1," it was "uncontested" they had the same ultimate objective).

Because the States' and Plaintiffs' ultimate objective is the same, the States must prove

"adversity of interest, collusion, or nonfeasance" to overcome the presumption of adequate representation. *Franklin Par. Sch. Bd.*, 47 F.3d at 757.  They cannot.  The States do not argue that they have satisfied these criteria and thus forfeit the argument.  *See Kitchen*, 952 F.3d at 253.  At most, the States gesture at an "adversity" argument, claiming that their interests are *broader* than Plaintiffs' interests.  *See* ECF No. 152 at 16-17.  But the degree to which interests overlap is not the legally relevant metric.  "[T]o show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662.  "[D]ifference of opinion concerning litigation strategy or individual aspects of a remedy" is not enough.  *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022).

Failure to argue (or prove) adversity sets this case apart from the States' preferred citations. *See* ECF No. 152 at 17-18.  "In *Brumfeld*, for example, Louisiana and the [intervenor-parents] had the same objective," but "the parents demonstrated that their interests diverged from the state's in certain key respects," including because Louisiana and the parents had taken diametrically opposed legal positions on a threshold jurisdictional inquiry.  *Texas*, 805 F.3d at 662 (discussing *Brumfeld*, 749 F.3d at 346).  Or take *Wal-Mart* (cited at ECF No. 152 at 18):  The plaintiff there would have "accept[ed] a procedural victory," while the intervenor sought "a declaratory judgment that the [challenged] scheme is constitutionally valid."  834 F.3d at 569; *see also Heaton*, 297 F.3d at 425 (finding adversity because individual bank could not represent FDIC's institutional interest in protecting the banking system); *City of San Antonio*, 115 F.3d at 315 (same, where State's interest in maintaining "state-wide" water supply "diverge[d]" from individual pumpers "that rely on the aquifer's water supply for their immediate subsistence").

Finally, the States are wrong to suggest that private plaintiffs can never "adequately

represent governmental interests." ECF No. 152 at 16. The Fifth Circuit has never presumed inadequacy in those circumstances, and neither should this Court. In several of the States' citations, courts granted a private party's request to intervene in cases in which the government was already participating, *see Glickman*, 256 F.3d at 381; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972); in another, the State was permitted to intervene in a private capacity but not as a government entity, *see City of San Antonio*, 115 F.3d at 315. When a private plaintiff can adequately represent the State's position, courts deny the State intervention-by-right.[11]

## III. Permissive Intervention Is Unwarranted.

Permissive intervention requires "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Even where that requirement is satisfied, permissive intervention is improper if it will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 934 (N.D. Tex. 2019).

Permissive intervention is unwarranted for three reasons.[12] *First*, because the States have only "a generalized interest as to [the litigation's] outcome" and "fail[ ] to show any unique legal interests or factual contributions that would aid in the resolution of this case," their interests are "insufficient to justify adding a new party and counsel to an already complex case," *La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-00844, 2021 WL 5410516, at *3 (W.D. Tex. Nov. 16, 2021), *aff'd*, 29 F.4th 299 (5th Cir. 2022); *see supra* pp. 17-21.

---

[11] *E.g.*, *Van Gemert v. Boeing Co.*, 739 F.2d 730, 738 (2d Cir. 1984); *Wright Cnty. Libr. Bd.*, 2000 WL 35402281, at *2; *Int'l Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 345 (1st Cir. 1989); *Blake*, 554 F.2d at 955.

[12] Because the States lack standing to seek relief on FDA's 2023 changes to the mifepristone REMS—relief no other party seeks—they cannot permissively intervene on that claim. *See Town of Chester*, 581 U.S. at 439; *Franciscan All., Inc.*, 414 F. Supp. 3d at 938 n.3 (applying *Town of Chester* to permissive intervention).

*Second*, "intervention will unduly delay or prejudice the adjudication" of this case.  Fed. R. Civ. P. 24(b)(3).  The timeliness requirement is even more stringent under permissive intervention than mandatory intervention.  *Rotstain v. Mendez*, 986 F.3d 931, 942 (5th Cir. 2021).  Allowing intervention during the Supreme Court's review will not promote efficient adjudication.  *Supra* pp. 9-17.  New parties entering the litigation at this late stage will only inject new complexities, costs, and prolongment into a case that has already significantly taxed this and other courts' judicial resources.  These byproducts of permissive intervention would unduly delay the litigation and prejudice Danco.  *Supra* pp. 15-16.  That is reason enough to deny permissive intervention.  *See, e.g.*, *M2 Tech., Inc. v. M2 Software, Inc.*, 589 F. App'x 671, 676 (5th Cir. 2014) (denying intervention to prevent "delay[ing] resolution of the matter"); *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (intervention improper where it would "make the proceeding a Donnybrook Fair").

*Third*, the States' interests have not gone unheard.  The States may continue to make their voices heard through their role as amicus curiae in this litigation.  "In acting on a request for permissive intervention, it is proper for the court to consider the fact that the [would-be intervenor] has been granted *amicus curiae* status in this case." *Bush*, 740 F.2d at 359.  The States' purportedly unique harms are well-known, along with a forthcoming law review article embracing the States' theory that "mailed medication abortion can cross borders in ways that undermine state laws." ECF No. 137 at 29 & n.9 (quoting David S. Cohen et al., *Abortion Pills*, 76 Stan. L. Rev. 1, 9 (forthcoming 2024)).  Permissive intervention should accordingly be denied.

## CONCLUSION

For the foregoing reasons, and those in the Government's brief, this Court should deny the States' motion to intervene.

Respectfully submitted,

*/s/ Jessica L. Ellsworth*
Jessica L. Ellsworth*
Catherine E. Stetson*
Philip Katz*
Lynn W. Mehler*
Marlan Golden*
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
Tel:  (202) 637-5600
jessica.ellsworth@hoganlovells.com

*admitted *pro hac vice*

Ryan Brown
RYAN BROWN ATTORNEY AT LAW
Texas Bar No. 24073967
ryan@ryanbrownattorneyatlaw.com
1222 S. Fillmore Street
Amarillo, TX 79101
Tel: (806) 372-5711

*Counsel for Danco Laboratories, LLC*

December 18, 2023

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with Local Rule 7.2 in that it does not exceed 25 pages, excluding the table of contents and table of authorities.

*/s/ Jessica L. Ellsworth*
Jessica L. Ellsworth

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 18, 2023, I electronically filed the foregoing using the

CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing

system to all parties of record.

*/s/ Jessica L. Ellsworth*
Jessica L. Ellsworth
