**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| ALLIANCE FOR HIPPOCRACTIC | ) | |
| MEDICINE, on behalf of itself, its member | ) | |
| Organizations, their members, and these | ) | |
| Members' patients, et al., | ) | |
| | ) | Case No. 2:22-cv-00223 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. FOOD AND DRUG | ) | |
| ADMINISTRATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**THE STATES OF MISSOURI, KANSAS, AND IDAHO'S REPLY IN SUPPORT OF
THEIR MOTION TO INTERVENE**

## <u>TABLE OF CONTENTS</u>

**Table of Authorities** ...................................................................................................... iii

I.   Intervention is not "futile" because this Court is bound by the Fifth Circuit ruling, and any hypothetical ruling by the Supreme Court in favor of Defendants would merely vacate the preliminary injunction, not amount to a ruling on a motion to dismiss........................................... 1

II.   The States have standing. ......................................................................................................... 2

III.  Defendants' arguments demonstrate why permissive intervention is appropriate. ...................... 7

IV.  Defendants' arguments against intervention as of right are foreclosed by precedent.................... 7

    A.  The States' motion is timely................................................................................................... 7

    B.  Intervenors have an interest in the subject of this action.......................................................... 9

    C.  There is no presumption of adequate representation. ............................................................. 10

**Conclusion** ................................................................................................................... **10**

**Certificate of Compliance** ........................................................................................ **iii**

**Certificate of Service** ................................................................................................ **iii**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                        Page(s)

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
    458 U.S. 592 (1982) ....................................................................................................5

*Barber v. Bryant,*
    860 F.3d 345 (5th Cir. 2017) ....................................................................................2

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ...............................................................................5, 10

*Czyzewski v. Jevic Holding Corp.,*
    580 U.S. 451 (2017) ....................................................................................................3

*Dept. of Com. v. New York,*
    139 S. Ct. 2551 (2019) ............................................................................................3, 4

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ......................................................................................8

*Gen. Land Off. v. Biden,*
    71 F.4th 264 (5th Cir. 2023) .....................................................................................4

*Haaland v. Brackeen,*
    599 U.S. 255 (2023) ....................................................................................................6

*Heaton v. Monogram Credit Card Bank of Georgia,*
    297 F.3d 416 (5th Cir. 2002) ..................................................................................10

*John Doe No. 1 v. Glickman,*
    256 F.3d 371 (5th Cir. 2001) ....................................................................................8

*Kentucky v. Biden,*
    23 F.4th 585 (6th Cir. 2022) ..................................................................................5, 6

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ....................................................................................................4

*Maryland v. King,*
    567 U.S. 1301 (2012) .................................................................................................2

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ....................................................................................................6

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923) ....................................................................................................5

*Nebraska v. Wyoming,*
  515 U.S. 1 (1995) ..........................................................................................................6

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,*
  732 F.2d 452 (5th Cir. 1984) .....................................................................................10

*Ross v. Marshall,*
  426 F.3d 745 (5th Cir. 2005) .......................................................................................9

*Rotstain v. Mendez,*
  986 F.3d 931 (5th Cir. 2021) .......................................................................................9

*Ry. Lab. Executives' Ass'n v. I.C.C.,*
  958 F.2d 252 (9th Cir. 1991) .......................................................................................7

*Sidney Coal Co., Inc. v. Social Sec. Admin.,*
  427 F.3d 336 (6th Cir. 2005) .......................................................................................7

*Sierra Club v. City of San Antonio,*
  115 F.3d 311 (5th Cir. 1997) .....................................................................................10

*Sierra Club v. Espy,*
  18 F.3d 1202 (5th Cir. 1994) ................................................................................. 8, 10

*South Carolina v. Katzenbach,*
  383 U.S. 301 (1966) ......................................................................................................6

*Stallworth v. Bryant,*
  936 F.3d 224 (5th Cir. 2019) .......................................................................................2

*Texas v. United States,*
  805 F.3d 653 (5th Cir. 2015) .............................................................................. 3, 7, 10

*Texas v. United States,*
  809 F.3d 134 (5th Cir. 2015) .......................................................................................4

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ................................................................................................. 2, 3

*Trbovich v. United Mine Workers,*
  404 U.S. 528 (1972) ....................................................................................................10

*Turkiye Halk Bankasi A.S. v. United States,*
  143 S. Ct. 940 (2023) ...................................................................................................6

*United States v. 36.96 Acres of Land, More or Less,*
  754 F.2d 855 (7th Cir. 1985) .......................................................................................9

*United States v. Lopez-Velasquez,*
    526 F.3d 804 (5th Cir. 2008) ........................................................................................................1

*United States v. Texas,*
    599 U.S. 670 (2023) ......................................................................................................................3

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm.,*
    834 F.3d 562 (5th Cir. 2016) ........................................................................................................8

**Statutes**

5 U.S.C. § 705 ....................................................................................................................................2

28 U.S.C. § 1406(b) ..........................................................................................................................7

**Other Authorities**

https://www.theguardian.com/world/2023/jul/23/shield-laws-provide-abortion-care-aid-access....4

Rachel Cohen, *Access to Abortion Pills Has Grown Since Dobbs*, Vox (Dec. 27, 2023),
    https://www.vox.com/policy/2023/12/27/24015092/abortion-pills-mifepristone-roe-
    reproductive-misoprostol ..............................................................................................................8

*Press Release*, Planned Parenthood of the St. Louis Region (June 23, 2023),
    https://www.plannedparenthood.org/reproductive-health-services-planned-parenthood-st-
    louis-region/press-releases/post-dobbs-planned-parenthood-sees-700-increase-in-abortion-
    patients-traveling-to-illinois-from-outside-the-bi-state-region-for-care ..........................................8

Wright & Miller § 1918 ....................................................................................................................7

v

Defendants' arguments against intervention rest on a string of dubious speculations and the strange assertion that it would be more convenient to the Federal Government to litigate in multiple forums. In reality, failure to intervene would simply cause delay, increasing the time Defendants could continue their unlawful actions. The Court should grant intervention.

I. **Intervention is not "futile" because this Court is bound by the Fifth Circuit ruling, and any hypothetical ruling by the Supreme Court in favor of Defendants would merely vacate the preliminary injunction, not amount to a ruling on a motion to dismiss.**

Defendants' argument that the Court lacks jurisdiction—and so intervention would be "futile"—is based on a long line of speculative assumptions: that the Supreme Court will reverse the preliminary injunction on standing grounds; that the ruling necessarily would compel this Court to dismiss the case entirely; and that the private plaintiffs would be unable to amend their declarations or pleadings. Defendants' argument fails for many reasons.

First, the Fifth Circuit's holding that the private plaintiffs "made a clear showing" of standing governs this intervention motion. *All. For Hipp. Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 233 (5th Cir. 2023). This Court "remain[s] bound to follow [Fifth Circuit] precedent even when the Supreme Court grants certiorari on an issue." *United States* v. *Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008). Whatever Defendants speculate the Supreme Court *might* do in the future, this intervention motion is before the Court now and is governed by existing precedent. The Court thus need not even consider standing or venue yet because the private plaintiffs have established both.

Second, Defendants cannot simply assume the Supreme Court will rule in their favor on standing. They wrongly say (at 18) that the Supreme Court's grant of a stay "necessarily mean[t] FDA had demonstrated a likelihood of success." In fact, a stay is granted when a litigant makes the much lower showing of (1) irreparable harm absent a stay, (2) a "reasonable probability" of certiorari, and (3) a "fair prospect" of reversal. *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers). A "fair prospect" of reversal is worlds away from "necessar[y] … likelihood of success."

1

Third, Defendants wrongly assume that if the Supreme Court vacates the preliminary injunction, the Court will be compelled to dismiss the case entirely. For one thing, Defendants final argument in their certiorari petition is that this Court improperly balanced the equities in fashioning relief and relied on an improper statute, 5 U.S.C. § 705. Cert. Petn. at 27–30. Prevailing on either theory would not affect standing at all. Further, even a finding by the Supreme Court that the private plaintiffs lack standing for a preliminary injunction would not compel this Court to dismiss. In the present procedural posture, "plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (citation omitted). This is of course more stringent than needed to survive a motion to dismiss: pleading "general factual allegations of injury resulting from the defendant's conduct" that allow the Court to "'reasonably . . . infer" standing. *Stallworth v. Bryant*, 936 F.3d 224, 230 (5th Cir. 2019).

Thus, a Supreme Court ruling that the private plaintiffs lack standing for the preliminary injunction would vacate that injunction but would not compel this Court to immediately dismiss the case. The case would proceed subject to Defendants filing a motion to dismiss.  And under the one-plaintiff rule, either the States or the private plaintiffs could establish standing to avoid dismissal. Indeed, the private plaintiffs likely could rework their complaint or declarations to establish standing.

## II.    The States have standing.

Even if all Defendants' speculations were correct, intervention still would not be futile because the States have three independent bases for standing, and Defendants' venue arguments are illusory.

**Economic Harms.** "[M]onetary harms," the Supreme Court has held, "readily qualify as concrete injuries under Article III." *TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 425 (2021). The States allege and present evidence of many economic harms caused by Defendants' including, among other things, (1) increased public insurance costs for emergency medical procedures and mental health support for women who experience complications from chemical abortions; and (2) diversion of

resources by public hospitals to care for those who experience complications. Compl., ECF 151-1 at 68–78. The Fifth Circuit already held in this case that the private plaintiffs "sustain a concrete injury when they are forced to divert time and resources away from their regular patients" and "when mifepristone patients expose them to greater liability and increased insurance costs." 78 F.4th at 235–36. The States' allegations thus go beyond what the Fifth Circuit already concluded is sufficient. *Id.*

Defendants cannot dispute that the States have clear economic injuries, so they instead argue (at 5–6) that the Supreme Court's *United States v. Texas*, 599 U.S. 670 (2023), decision overturned what the Supreme Court described as a "traditional" basis for standing just two years before, *TransUnion* 594 U.S. at 425. But *Texas* itself rejected Defendants' position, noting that the case concerned "both a highly unusual provision of federal law and a highly unusual lawsuit" because Texas sought to "*require* the Executive Branch to make arrests or bring prosecutions," contrary to the "deeply rooted history of enforcement discretion." 599 U.S. at 684 (emphasis in original). The Supreme Court stressed that its decision "is narrow and simply maintains the longstanding jurisprudential status quo." *Id.* at 686.

With *Texas* inapplicable, Defendants question whether the States can muster "factual" proof for their allegations, arguing that the States have only established "isolated instances" of harm. But all allegations are assumed true for a motion to intervene. *Texas v. United States*, 805 F.3d 653, 660 (5th Cir. 2015). As is oft-repeated, "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). And at oral argument before the Fifth Circuit, Defendants in effect conceded that standing would be established if "the plaintiffs were states" because the States in the Supreme Court's census case, De*pt. of Com. v. New York*, 139 S. Ct. 2551 (2019), could "rely on population wide statistics and probabilities" as "the effects on them happened at the population level." Oral arg. rec. 17:16–17:42 (May 17, 2023). The States have done that here. In addition to affidavits detailing specific instances of fiscal harm, the States presented expert evidence of statistical likelihood that the States incur harms given the many chemical abortions

3

each year and the large percent of those that lead to ER visits (up to 14.6%)—especially because ER staff systemically miscode abortion complications as natural miscarriages. *E.g.*, ECF 151-3, App. 585–92 (Ex. 36). This is more than enough to show it is "fairly likely" the States will incur economic harm, especially because "FDA's own data shows that a definite percentage of women who take mifepristone will require emergency-room care." *All. For Hipp. Med.*, 78 F.4th at 233.

**Sovereign Harms.** "States have a sovereign interest in the power to create and enforce a legal code." *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (internal citations omitted). "[F]ederal preemption of state law" and "federal interference with the enforcement of state law" both create standing, *id.*, and the States alleged both, Compl., ECF 151-1 at 78–83. A State also has a "sovereign interest in its fiscal policy," *Gen. Land Off.* v. *Biden*, 71 F.4th 264, 274 (5th Cir. 2023), and the States' fiscal policy here is directly and negatively affected by Defendants' actions.

To be sure, standing is more difficult when a plaintiff asserts "only … indirect effects" rather than direct effects. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). But the Supreme Court has been clear that States can sue over the "predictable effect of Government action." *Dep't of Com.*, 139 S. Ct., at 2565–66 (allowing States to sue on the theory that a census question would lead to third parties violating "their legal duty to respond to the census," causing loss of revenue to the States). Those who are shipping mifepristone into all 50 States for abortion are doing so in clear and predictable reliance on FDA's unlawful actions, even calling their shipments "an FDA-approved pipeline."[1]

In a strange twist, Defendants accuse the States (at 8) of interfering with "federalism principles," but it is the unlawful "FDA-approved pipeline" that enables out-of-state actors to flout fundamental policy decisions of half the States. And it is FDA's unlawful acts that caused a court to conclude—two months before this motion for intervention—that West Virginia law was preempted.

---

[1] https://www.theguardian.com/world/2023/jul/23/shield-laws-provide-abortion-care-aid-access

Sugg. in Supp. at 3. That federal court holding certainly provides evidence that Intervenors' own laws are at risk. It would be "questionable" to require parties "to wait on the sidelines until after a court has already decided enough issues contrary to their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).[2]

**Quasi-Sovereign Harms.** Defendants provide only a single argument attacking Intervenors' standing to assert quasi-sovereign interests, arguing (at 9) only that there is a blanket rule "that States cannot assert *parens patriae* interests against the federal government." This question is academic because the States have asserted economic and sovereign harms, and the *parens patriae* doctrine does not apply to those interests. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 602 (1982).

In any event, Defendants overlook that *parens patriae* "encompasses two distinct concepts": (1) purely "third-party" suits where the State is only a "nominal party"; and (2) a "second, more modern conception" where a State "assert[s] some injury to their own interests"—that is, "*quasi-sovereign* interests." *Kentucky v. Biden*, 23 F.4th 585, 596–97 (6th Cir. 2022).

Only the first kind of *parens patriae* action is barred against the Federal Government. In every case where the Supreme Court has announced a bar on *parens patriae* suits against the government, the Supreme Court noted that the States failed to assert their own interests. *Massachusetts v. Mellon*, 262 U.S. 447, 484–85 (1923) ("[W]e are called upon to adjudicate, not rights of person or property, not rights of dominion over physical domain, *not quasi sovereign rights* actually invaded or threatened, but abstract questions of political power, of sovereignty, of government.") (emphasis added); *Haaland v. Brackeen*, 599 U.S. 255, 295 n.11 (2023) (faulting Texas for failing to assert a "concrete injury to the

---

[2] Defendants note (at 14) that the plaintiff in the West Virginia case later dropped its preemption count, but it appears the party did that because the court dismissed all other counts. It needed to drop the one count that was not dismissed so that the ruling dismissing all other counts would become a final judgment that could be appealed. *See GenBioPro v. Sorsaia*, No. 3:23-cv-00058, ECF 78 (S.D.W. Va.) (filing a notice of appeal three days after dropping its successful preemption argument).

State").[3] In contrast, *every* time a State has asserted a quasi-sovereign interest, which is "an injury to the state *itself*," *Biden*, 23 F.4th at 596–601 (emphasis in original), the Supreme Court has permitted a *parens patriae* suit to proceed. *Nebraska v. Wyoming*, 515 U.S. 1, 20 (1995) (permitting a *parens patriae* suit to proceed because it was not "'in reality for the benefit of particular individuals'"); *Massachusetts v. EPA*, 549 U.S. 497, 520 & n.17 (2007) (permitting a suit to proceed where the State asserted a "stake in protecting its quasi-sovereign interests" rather than purely third-party interests). The reason purely third-party *parens patriae* actions can be barred is because the Federal Government is "the ultimate parens patriae of every American citizen." *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966). That logic does not apply, and a suit is not barred, when a State, as here, asserts its own interest, because the Federal Government is not the "ultimate parens patriae" of the States.

In addition, *Massachusetts* held that the *parens patriae* bar applies only when a State challenges the validity of a federal statute. 549 U.S. at 520 n.17. The bar thus does not apply here for two reasons: the States have asserted their own quasi-sovereign interests, and they do not seek to invalidate a statute.

**2019 Generic Approval.** Relying on the Fifth Circuit's decision in this case for the first time, Defendants argue (at 9–10) that the States lack standing to challenge the 2019 approval of generic mifepristone. But the Fifth Circuit concluded only that private plaintiffs "did not introduce evidence showing that they are likely to be injured by the 2019 Generic Approval," not that they had no standing at all. 78 F.4th at 241. The States, in contrast, submitted evidence that the generic approval increased demand for mifepristone, aggravating their injuries. *E.g.*, ECF 151-3, App. 647–52 (Ex. 38).

---

[3] *Brackeen*'s language is certainly broad, but the Supreme Court has been clear that "'general language in judicial opinions' should be read 'as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering.'" *Turkiye Halk Bankasi A.S. v. United States*, 143 S. Ct. 940, 950 (2023) (citation omitted)). Neither *Brackeen* nor any case it cited involved a State asserting its own interests.

**Venue.** Even assuming the private plaintiffs run into standing problems, that would make no difference on venue. Venue is not jurisdictional, 28 U.S.C. § 1406(b), and when "a particular claim or party is so closely related to the original action that it can be considered ancillary," Wright & Miller explains, "venue objections should not be entertained." Wright & Miller § 1918. In addition, just as only one plaintiff need establish standing, so too "venue need be proper for only one plaintiff." *Ry. Lab. Executives' Ass'n v. I.C.C.*, 958 F.2d 252, 256 (9th Cir. 1991). This "is not only the majority view— it is the only view adopted by the federal courts since 1971.'" *Sidney Coal Co., Inc. v. Social Sec. Admin.*, 427 F.3d 336, 345 (6th Cir. 2005). Even under the worst-case scenario envisioned by Defendants where the private plaintiffs are declared to lack standing, venue and jurisdiction would be satisfied because, at minimum, the private plaintiffs satisfy venue and the States satisfy standing.

### III. Defendants' arguments demonstrate why permissive intervention is appropriate.

Defendants' arguments against mandatory intervention misstate or overlook binding Fifth Circuit precedent. To the extent Defendants' arguments are credited at all, however, they only demonstrate why permissive intervention is appropriate.[4] Permissive intervention would allow resolution of these common questions of law and fact in a single forum, promoting both judicial efficiency and the interests of fairness. And it would do so in a manner in which "no one would be hurt and the greater justice could be obtained." *Texas*, 805 F.3d at 657.

### IV. Defendants' arguments against intervention as of right are foreclosed by precedent.

#### A. The States' motion is timely.

**Date of calculation.** As detailed in the States' previous filings, several events occurred last summer that made clear the need to intervene. Sugg. in Supp. at 3–5, 8–9. Defendants contend that none of these events "materially *changed* any interest [Intervenors] could have vis-à-vis this litigation."

---

[4] Defendants' argument against permissive intervention rests almost exclusively on an argument that Intervenors' motion was untimely. Defs.' Resp. at 25. As Intervenors have demonstrated at length, this argument is both factually and legally incorrect. *See* Sugg. in Supp. at 7–12; *infra* sec. IV.A

Defs.' Resp. at 12 (emphasis altered). But the question is when the States were fully put on *notice* that their interests may be adversely affected, not when "the would-be intervenor became aware of the pendency of the action." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). Defendants argue (at 12) that news reports of activists mailing mifepristone into all 50 States "have nothing to do with the issues in this litigation." To the contrary, these news reports state that persons are mailing mifepristone in express reliance on the FDA actions at issue here. Sugg. in Supp. at 4–5. And while Defendants assert the States should have known about this in November 2022, a news report just last week stated that "the big shift [in mailing mifepristone] *really happened in June 2023*, when Aid Access became the first organization to start leveraging" new laws. Rachel Cohen, *Access to Abortion Pills Has Grown Since Dobbs*, Vox (Dec. 27, 2023) (emphasis added).[5] Defendants note that the number of abortions in Kansas performed on Missourians decreased slightly from 2020 to 2022, but a slight decrease after a monumental change in law is a noteworthy discovery, especially because an abortion clinic across Missouri's other border (in Illinois) has, "since *Dobbs*," substantially "expanded [its] capacity, resources, and footprint." *Press Release*, Planned Parenthood of the St. Louis Region (June 23, 2023).[6]

Finally, this case is still in its earliest stages—Defendants have not even yet answered the Complaint. This strongly counsels in favor of intervention being timely. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 377 (5th Cir. 2001); *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996); *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm.*, 834 F.3d 562, 565–66 (5th Cir. 2016). In fact, moving to intervene earlier may have been prejudicial to the existing parties, because it might have delayed the already-established briefing schedule.

---

[5] https://www.vox.com/policy/2023/12/27/24015092/abortion-pills-mifepristone-roe-reproductive-misoprostol

[6] https://www.plannedparenthood.org/reproductive-health-services-planned-parenthood-st-louis-region/press-releases/post-dobbs-planned-parenthood-sees-700-increase-in-abortion-patients-traveling-to-illinois-from-outside-the-bi-state-region-for-care

**Prejudice.** Defendants argue (at 16) they "will be forced to … litigate" this case "notwithstanding" their belief that nobody has standing. But merely having to litigate is not cognizable prejudice. "Since such prejudice is inherent to intervention generally, and not specific to delay," courts do "not consider it in [the] timeliness analysis." *Rotstain v. Mendez*, 986 F.3d 931, 939 (5th Cir. 2021). Defendants would experience the same thing if the States sued in a different court—as Defendants suggest the States should do.

The States, in contrast, face a real threat of prejudice. Prejudice to a proposed intervenor exists if the party "is not allowed to contest" a case "that *may* expose it" to future harms. *Ross v. Marshall*, 426 F.3d 745, 756 (5th Cir. 2005) (emphasis added); *see also* Sugg. in Supp. at 11. Defendants' argue for a "heads I win, tails you lose" approach—either the States' claims are unrelated, so intervention is inappropriate, or they stem from common facts and law and so intervention should be barred because the private parties *may* succeed on their claim. But the States assert interests no private party can. And the States can seek only equitable relief, so monetary damages are unavailable. So any delay caused if the States cannot obtain relief through intervention by definition involves irreparable harm to the States.

### B.  Intervenors have an interest in the subject of this action.

Defendants argue (relying on a nearly 40-year-old, out-of-circuit case) that "the interest analysis" is both distinct and more stringent than standing. *See* Defs.' Resp. Br. at 18–19 (citing *United States v. 36.96 Acres of Land, More or Less*, 754 F.2d 855, 859 (7th Cir. 1985)). The only "interest analysis" Defendants can point to, however, is the requirement that an intervenor have "a stake in the matter that goes beyond *a generalized preference* that the case come out a certain way." Defs.' Resp. Br. at 19 (citing *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)) (emphasis added).

Intervenors agree—and have asserted several independent bases for standing that go "beyond a generalized preference" in the outcome of a case. *Texas*, 805 F.3d at 657.  Defendants assert (at 19),

9

that the States have nothing but abstract "'ideological' and 'economic' motivations." Not so. As demonstrated above, the States seek to assert sovereign, quasi-sovereign, and direct economic harms—including economic harms more direct than those already held sufficient by the Fifth Circuit in this case. 78 F.4th at 235–36. That makes this distinct from the breach of contract action, cited by Defendants, which "d[id] not involve . . . a public law question" and where the proposed intervenor did "not itself possess" any "substantive legal right." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 460, 465–66 (5th Cir. 1984). None of those things is true here.

### C. There is no presumption of adequate representation.

Similarly, Defendants assert (at 23–24) that intervention is improper if the States share with the private parties a goal of prevailing on the APA claims. But adequate representation does not exist simply because the proposed intervenor and a party "agreed on the merits." *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 425 (5th Cir. 2002); *see also Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997). The Fifth Circuit has repeatedly declined to apply an "ultimate objective" presumption when a governmental entity seeks to intervene. *See* Sugg. in Supp. at 18–19; *Heaton*, 297 F.3d at 425; *Brumfield*, 749 F.3d at 345. Defendants cite no case otherwise, and for good reason. When a State asserts things like sovereign interests, private parties by definition cannot adequately represent those interests. *See Brumfield*, 749 F.3d at 346. That is especially true given that courts require only a minimal showing of inadequacy of interest. Indeed, Intervenors do not need to establish that representation will be inadequate; only "that representation '*may be*' inadequate." *Espy*, 18 F.3d at 1207 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)) (emphasis added).

### Conclusion

The Court should grant intervention.

Dated: January 4, 2023

Respectfully submitted,

**ANDREW BAILEY**
Missouri Attorney General

**RAÚL R. LABRADOR**
Idaho Attorney General

/s/ *Joshua M. Divine*
Joshua M. Divine, #69875MO
*Solicitor General*
*Maria Lanahan, #65956MO
*Deputy Solicitor General*
*Samuel C. Freedlund, #73707MO
*Deputy Solicitor General*

/s/ Joshua N. Turner
*Joshua N. Turner, #12193ID
*Acting Solicitor General*
James E.M. Craig, #6365ID
*Acting Division Chief*

Office of the Attorney General
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
(573) 751-0774 (fax)
Josh.Divine@ago.mo.gov
Maria.Lanahan@ago.mo.gov
Samuel.Freedlund@ago.mo.gov

Idaho Office of
The Attorney General
700 W. Jefferson St., Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
james.craig@ago.idaho.gov

*Counsel for Proposed Plaintiff-Intervenors*

*Counsel for Proposed Plaintiff-Intervenors*

**KRIS W. KOBACH**
Attorney General of Kansas

* *pro hac vice applications forthcoming*

/s/ Erin B. Gaide
*Erin B. Gaide, #29691KS
Assistant Attorney General

Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612
(785) 296-7109
(785) 296-3131 (fax)
Erin.Gaide@ag.ks.gov

11

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this motion complies with Local Rule 7.2 in that the brief does not exceed 10 pages, excluding the table of contents, table of authorities, and signature block.

<u>/s/ Joshua M. Divine</u>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on January 4, 2024, the foregoing was filed electronically through the Court's electronic filing system and served by email on all parties.

<u>/s/ Joshua M. Divine</u>

1