IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ALLIANCE FOR HIPPOCRATIC MEDICINE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOOD AND DRUG ADMINISTRATION, *et al.*, <br><br> Defendants. | 2:22-CV-223-Z |

**ORDER**

Before the Court is the States of Missouri, Kansas, and Idaho's Motion to Intervene ("Motion") (ECF No. 151), filed on November 3, 2023. Having considered the Motion, briefing, and relevant law — here, Federal Rules of Civil Procedure ("FRCP") 24(a) and (b) — the Court **GRANTS** the Motion.

**BACKGROUND**

Plaintiffs are doctors and national medical associations that provide healthcare for pregnant and post-abortive women and girls. ECF No. 137 at 2. They bring this suit against the United States Food and Drug Administration ("FDA") and others, challenging several FDA actions related to the handling of chemical abortion drugs mifepristone and misoprostol. ECF No. 1 at 2. And on November 3, 2023, three states ("Intervenors") moved to intervene. ECF No. 151 at 1. Defendants oppose the Motion. *Id.*

**LEGAL STANDARDS**

FRCP 24(a) provides that, "[o]n timely motion, the court *must* permit anyone to intervene" who claims "an interest relating to the property or transaction that is the subject of the action," and is "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

(emphasis added). Accordingly, a proposed intervenor is entitled to intervene if (1) the application for intervention is timely, (2) the applicant has an interest relating to the property or transaction which is the subject of the action, (3) the applicant is so situated that the disposition of the action may impair or impede his ability to protect that interest, and (4) the applicant's interest is inadequately represented by the existing parties to the suit. *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 542 (5th Cir. 2022); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984).

FRCP 24(b) provides another route: "On timely motion, the court *may* permit anyone to intervene who . . . is given a conditional right to intervene by a federal statute; or . . . has a claim or defense that shares with the main action a common question of law or fact." (emphasis added). And while permissive intervention is "committed to the discretion of the court," the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED R. CIV. P. 24(b)(1)(B); *United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577 (5th Cir. 2023).

ANALYSIS

A. **Intervenors can intervene as of right.**

As discussed *supra*, intervention as of right requires the satisfaction of four factors. *Guenther*, 50 F.4th at 542. The Court takes each in turn.

1. **Intervenors' Motion is timely.**

The Fifth Circuit assesses timeliness using factors set forth in *Stallworth v. Monsanto Co.*: (1) the length of time the movant waited to file, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the movants if the intervention is denied, and (4) any unusual circumstances. 558 F.2d 257 (5th Cir. 1977); *see also Team Fin., L.L.C.*, 80 F.4th at 578.

Timeliness "is contextual; absolute measures of timelines should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Moreover, this analysis "is not limited to chronological considerations[,] but is to be determined from all the circumstances." *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). And the Fifth Circuit has "rejected the notion that the date on which the would-be intervener became aware of the pendency of the action should be used to determine whether it acted promptly." *Espy*, 18 F.3d at 1206. Instead, courts should measure timeliness from when the intervenor "had reason to believe" his interests would be "adversely affected." *Id.*

Here, Intervenors argue they were only recently put on notice "that their interests may be adversely affected." ECF No. 152 at 13. Specifically, they note that — in June and July of 2023, respectively — the Kansas Department of Health and Environment "released information showing just how many Missourians are obtaining chemical abortions in Kansas before going back home to Missouri" and that "the States discovered that out-of-state organizations are sending thousands of abortion pills into Intervenor States, relying on the very actions by FDA that are challenged in this case." *Id.* And Intervenors aver they learned of these circumstances just two months ago because "it was not until late August, after the Fifth Circuit's decision, that a court held that FDA's recent actions preempt state laws that prohibit the mailing of abortion pills." *Id.*

In response, Defendants argue that "[n]o intervening events have altered the States' interest in this suit, so any purported interest has been present since the outset" and that "[t]he States' reliance on these . . . purported intervening events is illusory because none created or revealed any newfound interest by the States in the outcome of this litigation." ECF No. 163 at 17, 20. Further, Defendants argue, "[t]he States' request bears no resemblance to the circumstances present in the cases on which they rely." *Id.* at 20.

3

Intervenors' reasoning is persuasive. It is simply not the case that "no intervening events" have altered the States' interest here, because the States only recently learned of the foregoing significant circumstances: namely, the number of their residents obtaining chemical abortions and the number of out-of-state organizations mailing abortion pills into their states, *inter alia*. ECF No. 152 at 13. Nor is it the case that the States' request fits poorly with existing precedent. *See, e.g., Wal–Mart Stores, Inc.*, 834 F.3d at 565 ("The timeliness inquiry is not limited to chronological considerations but is to be determined from all the circumstances.") (internal marks omitted); *Stallworth*, 558 F.2d at 263 ("[T]he question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown."). And in any event, motions to intervene filed "before trial and any final judgment" are generally not unreasonable or untimely. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 378 (5th Cir. 2001); *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) ("[T]hat these motions were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concerns motions filed after judgment was entered in the litigation.").

The second *Stallworth* factor weighs the prejudice inflicted on existing parties arising from any delay. *Stallworth*, 558 F.2d at 257. This analysis "is concerned *only* with the prejudice caused by the applicants' delay, not [with] prejudice [that] may result if intervention is allowed." *Edwards*, 78 F.3d at 1002 (emphasis added). Here, Intervenors note that "no party has filed any substantive motion with this Court since the Court stayed Defendants' deadline to answer the Complaint on April 25, 2023." ECF No. 152 at 14. And they aver that "[t]he lack of any substantive activity before this Court since April demonstrates that no party is prejudiced by any 'delay in seeking intervention.'" *Id.* (quoting *Espy*, 18 F.3d at 1206).

Defendants respond that the FDA "would suffer substantial prejudice if intervention is granted at this late date" because "the States are responsible for creating [the current state of affairs] by sitting idly by until the case is teed up for the Supreme Court" and — in any event — "the States cannot alleviate the prejudice caused by their belated request by claiming that purported efficiency is in the best interests of FDA." ECF No. 163 at 22–23.

On the second *Stallworth* factor, the Court agrees with Intervenors. Any delay in filing a motion to intervene "cause[s] no prejudice whatsoever" where, during the period in question, "the parties to [the] litigation did nothing except anticipate and prepare to address" arguments to be presented later on. *Edwards*, 78 F.3d at 1002. That is the case here. Moreover, allowing intervention plausibly reduces the prejudice to Defendants because the only other realistic path for Intervenors is to file a separate lawsuit. And Defendants' characterization of "idle" Intervenors is wrong for reasons discussed above. *Supra* at Part A.1. (Timeliness).

The third and fourth *Stallworth* factors weigh the prejudice to the movants if intervention is denied and from any usual circumstances, respectively. *Stallworth*, 558 F.2d at 257. Here, Intervenors aver they "have several interests directly related to" this action, including "direct economic harms caused by increased costs to public insurance and public hospitals (each directly funded by the States)" from "emergency medical complications associated with increased use of chemical abortions — an increase attributable to Defendants' unlawful, arbitrary, and capricious actions," "direct harm to Intervenors' sovereign interests by directly interfering with (and infringing upon) Intervenors' sovereign authority to create their own legal and regulatory systems," and "harm to Intervenors' quasi-sovereign interest in protecting the health and wellbeing of their citizens — including the women and girls who have suffered (and will suffer) from complications" from the FDA's handling of chemical abortifacients. ECF No. 152 at 15–17.

Defendants deny any prejudice exists because "a putative intervenor must show that an adverse outcome of the subject litigation will prevent it from vindicating its rights" — but here, "the States are free to file their own lawsuit in an appropriate venue." ECF No. 163 at 23. Defendants further argue that "[t]he States' complaint that their chosen method of participation to date now affords them insufficient protection rings hollow considering their delay in moving for intervention" and that "[t]his unique procedural history and the current posture of the case weigh strongly against a finding of timeliness." *Id.* at 24.

Having weighed these arguments, the third and fourth *Stallworth* factors are satisfied. As Intervenors persuasively pled, "an adverse ruling in this litigation could significantly affect [their] ability to regulate their sovereign state legal systems or otherwise act to prevent both direct economic harms to the state and significant harms to the States' citizens." *Id.* at 15 (internal marks omitted). Further, several legal rights are "associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal," *Espy*, 18 F.3d at 1202, prompting the Fifth Circuit to acknowledge that the loss of the ability "to participate" in that manner or to "appeal th[e] ruling" results in prejudice to the intervenor, *Glickman*, 256 F.3d at 379; *Edwards*, 78 F.3d at 1002–03. So too here. And because there are no unusual circumstances weighing for or against the Motion's timeliness, Intervenors have satisfied the first factor required to intervene as of right.

### 2. Intervenors have interests relating to the property/transaction at issue.

To intervene as of right, Intervenors must next "demonstrate[] an interest in the subject of this action." *NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273, at *3 (5th Cir. Dec. 7, 2022). "The precise definition of an 'interest' has been hard to pin down, but we have interpreted Rule 24(a)(2) to require a 'direct, substantial, legally protectable interest in the proceedings.'" *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022)

(quoting *Edwards*, 78 F.3d at 995). Additionally, "[p]roperty interests are the quintessential rights Rule 24(a) protects, but we have made clear that Rule 24(a)(2) does not require 'that a person must possess a pecuniary or property interest to satisfy the requirement of Rule 24(a)(2).'" *Id.* (quoting *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos*, S.A., 831 F.2d 59, 62 (5th Cir. 1987)). "Nor does a legally protectable interest mean the interest must be legally enforceable; rather[,] [a]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *D'Andrea*, 2022 WL 17492273, at *3 (internal marks omitted).

Here, Intervenors put forth the "three broad categories" of injury, discussed *supra*. ECF No. 152 at 17. These alleged categories — in summary form — include (1) direct economic harms caused by increased costs to public insurance and public hospitals from emergency medical complications associated with increased use of chemical abortions, (2) direct harm to Intervenors' sovereign interests by directly interfering with their sovereign authority to create their own legal and regulatory systems, and (3) harm to Intervenors' quasi-sovereign interest in protecting the health and wellbeing of their citizens. *Id.*

Defendants respond that the States "lack a legally protected interest sufficient to warrant intervention" because they "treat this factor as essentially coextensive with Article III standing and argue that their allegations of economic harm, threat to sovereign interests in enforcing their legal codes, and *parens patriae* interest in protecting citizens' health provide an adequate basis to support their participation in this litigation." ECF No. 163 at 24. "Not so," Defendants argue, because "each of the States' three theories of standing fail as a matter of law" and "the interests they assert . . . are precisely the sort of broad-based 'ideological' and 'economic' motivations that are insufficient to support intervention." *Id.* at 24–25.

Intervenors have satisfied the second factor necessary to intervene as of right. Indeed, this Circuit has already held that any one of these injuries is sufficient to show "an interest relating to the property or transaction." *See Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (describing how states have "important sovereign interest[s]" in "protecting [their] self-governing authority," in "seeing that the scheme passed by the legislature is properly enforced," and in "the physical and economic health and well-being of the citizens directly affected").

Further, as Intervenors note, Plaintiffs' Complaint raises a significant number of allegations challenging "the FDA's approval of mifepristone," "the Agency's weakening of the various restrictions previously imposed to protect women and girls," and "actions taken by Defendants to weaken the protections surrounding access to mifepristone." ECF No. 152 at 18. Hence, Intervenors argue that any adjudication of Defendants' alleged unlawfulness will affect their interests because "[p]rosecution . . . both touches on ongoing harms to Intervenors' legally cognizable interests (including economic, sovereign, and *parens patriae* interests) and, depending on the outcome, 'threatens prospective interference' with Intervenors' legally protected interests." *Id.* (quoting *City of San Antonio*, 115 F.3d 315; *Brumfield*, 749 F.3d at 343). The Court agrees.

Lastly, and importantly, Plaintiffs' lawsuit presents a "public interest" question. "The interest requirement may be judged by a more lenient standard if the case involves a public interest question" because "[t]he zone of interests protected by a constitutional provision or statute of general application is arguably broader than are the protectable interests recognized in other contexts." *Brumfield*, 749 F.3d at 344; 6 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE Section 24.03[2][c], at 24–34 (citing *New Orleans Pub. Serv., Inc.*, 732 F.2d at 464–65). Hence, Intervenors have readily satisfied the first two factors necessary to establish a right to intervene.

### 3. The disposition of this action may, as a practical matter, impair or impede Intervenors' ability to protect their interests.

Under the third factor, Intervenors must prove the case "may, as a practical matter, impair or impede [their] ability to protect [their] interest[s]." *Ross v. Marshall*, 426 F.3d 745, 760 (5th Cir. 2005) (quoting *Espy*, 18 F.3d at 1205). "The impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule." *Brumfield*, 749 F.3d at 344. "Though the impairment must be practical and not merely theoretical, the [parties seeking to intervene] need only show that if they cannot intervene, there is a *possibility* that their interest could be impaired or impeded." *La Union*, 29 F.4th at 307 (internal marks omitted) (emphasis added).

Defendants argue that the "outcome of this matter will have no bearing on the States' interests" because a "ruling on the Plaintiffs' standing would have no '*stare decisis*' effect on the States or in any future action by the States." ECF No. 163 at 27. Nor, Defendants argue, "can the States otherwise establish that the outcome of this litigation will, as a 'practical … and not merely theoretical' matter, impair or impede the States directly, as is required for intervention as of right" since "they already have told this Court that 'the substantive arguments in the complaints are the same' and that they 'materially differ only with respect to the theories of standing.'" *Id.* (quoting *Brumfield*, 749 F.3d at 344.

But Intervenors have pled several compelling interests directly related to this action. And they are correct that "any final judgment that is adverse to Intervenors' claims may directly impair their ability to protect these interests," and that their ability to "protect their interests" is not affected by this Court's inability to "bind other district courts." ECF No. 152 at 19. That is because, contra Defendants' arguments, the Court's ruling "will undoubtedly . . . be relied upon as a precedent in future actions," and "the *stare decisis* effect of the district court's judgment" on

9

"an intervenor's interest" is sufficient to "supply the requisite disadvantage to satisfy this test." *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 424 (5th Cir. 2002); *Espy*, 18 F.3d at 1207. But in any event, Intervenors "do not need to establish that their interests *will* be impaired . . . only that the disposition of the action may impair . . . their ability to protect their interests." *Brumfield*, 749 F.3d at 344 (internal marks omitted) (emphasis in original). That burden is satisfied here.

### 4. Intervenors' interests are inadequately represented by existing parties.

Finally, the potential intervenor must prove "that 'the existing parties do not adequately represent' his interest." *Ross*, 426 F.3d at 761 (quoting *Glickman*, 256 F.3d at 380). "We have described this burden as 'minimal,' noting that a potential intervenor need only show that 'representation by the existing parties may be inadequate.'" *Id.* (quoting *Heaton*, 297 F.3d at 425).

Here, Intervenors argue that "an action brought by private plaintiffs cannot adequately represent governmental interests" because "'government[s] must represent the broad public interest,' not just the concerns of private litigants." ECF No. 152 at 20 (quoting *Espy*, 18 F.3d at 1208). Further, "some of the injuries Intervenors seek to assert in this action — specifically the sovereign harms caused by Defendants actions — could never be asserted by private, non-state parties." *Id.* And Intervenors aver that "other direct injuries to Intervenors — such as the economic harms to public hospitals and public insurance funded by the States — are not currently asserted by Plaintiffs," and "are almost certain to never be asserted" given "Plaintiffs' role as individuals and organizations not affiliated with the funding of the States' hospitals or insurance." *Id.*

In response, Defendants argue that "[t]he States have failed to rebut the presumption of adequate representation" because "[t]he States' argument conflates the representation analysis, which asks whether the litigation goals of parties are in alignment, with the question whether

parties are relying on the same theories of injury." ECF No. 163 at 28–29. But "[t]his is not the law," Defendants argue. *Id.* at 29. Rather, "the States' theory would 'write the requirement completely out of the rule' since distinct parties rarely present precisely overlapping theories of injury." *Id.* at 29 (quoting *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984)).

Intervenors have the better argument, and the third factor is thereby satisfied. It is indeed "axiomatic" that the interests of private Plaintiffs "will diverge from those" of Intervenors who, as state actors, "tak[e] a state-wide view" of the lawsuit. *City of San Antonio*, 115 F.3d at 315. And even though it is readily apparent that Plaintiffs do not — and cannot — represent several of the interests Intervenors seek to assert here, this Court need not "say for sure that the state's more extensive interests will *in fact* result in inadequate representation." *Brumfield*, 749 F.3d at 346. Rather, "all that the rule requires" is that "they might." *Id.*

Moreover, the Fifth Circuit has developed two doctrines that — when satisfied — give rise to a presumption of adequate representation. *Edwards*, 78 F.3d at 1005. Neither applies here. "First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Id.* This is the inverse of Intervenors' case: "it is governmental bodies seeking to intervene in a case brought by private plaintiffs, not the other way around." ECF No. 152 at 22.

"The second presumption of adequate representation arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. "In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.*; *International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978). But under this test, the interests of

11

the existing party and the intervenor must "align precisely." *Brumfield*, 749 F.3d at 345. Here, they do not — for all the reasons discussed *supra*.

Further, this presumption does not apply when an intervenor can make "arguments that [an existing party] cannot make . . . given the differences in the objectives . . . ." *Wal–Mart Stores, Inc.*, 834 F.3d at 569. That is the case here. Intervenors have asserted interests and arguments that cannot be asserted by private Plaintiffs, such as "direct sovereign harms as well as economic interests stemming from the operation of public hospitals and public insurance funds." ECF No. 152 at 22. But in any event, "it is enough" for the purposes of this factor that the Intervenors' broader interests "may diverge" from Plaintiffs' interests "in the future." *Heaton*, 297 F.3d at 425. Thus, Intervenors prevail under FRCP 24(a).

### B. Permissive intervention would be appropriate in the absence of an entitlement.

Even if this Court was mistaken in the foregoing analyses — and Intervenors were *not* entitled to intervene — it would still be appropriate for the Court to grant Intervenors permissive intervention. As discussed *supra*, permissive intervention under Rule 24(b) permits the Court, through its discretion, to grant intervention where (1) the application is timely, (2) there is a common question of law or fact, and (3) there will be no undue delay or prejudice to the original parties. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987*)*; *M2 Tech., Inc. v. M2 Software, Inc.*, 589 F. Appx. 671, 675 (5th Cir. 2014). In other words, "[f]ederal courts should allow intervention where no one would be hurt and greater justice could be attained." *Espy*, 18 F.3d at 1205 (internal marks omitted). Such is the case here.

#### 1. There are common questions of law or fact.

Having proved timeliness, Intervenors next argue they have "several broad categories of interests directly affected by Defendants' challenged actions and which could be impaired by the

outcome of this case" and that "[e]ach of these categories of interests . . . share common questions of law and fact sufficient to warrant permissive intervention." ECF No. 152 at 24. And they aver that "[a]llowing Intervenors to litigate these interests will not inject significant unrelated questions of law and fact into this Court's analysis of the unlawfulness of Defendants' actions," but rather "would allow a more efficient and total adjudication of the action in a manner in which 'no one would be hurt and the greater justice could be obtained.'" *Id.* (quoting *Espy*, 18 F.3d at 1205).

The Court agrees. And as Intervenors note, Fifth Circuit cases counsel the same. ECF No. 152 at 24; *U.S. Equal Emp. Opportunity Comm'n v. Wellpath LLC*, No. 5:20-CV-1092-DAE, 2021 WL 4096556, at *2 (W.D. Tex. Mar. 15, 2021) (finding common questions of law or fact sufficient to support permissive intervention where the intervenor alleged injuries stemming from the same conduct alleged by the plaintiff); *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021) (finding common questions of law and fact where the dispute affected how school policies impact students attending the school); *Team Fin., L.L.C.*, 80 F.4th at 578.

### 2. There will be no undue delay or prejudice to the original parties.

Finally, "[t]he analysis . . . whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis." *Students for Fair Admissions*, 338 F.R.D. at 372. And for the reasons discussed *supra*, the timeliness analysis weighs in favor of Intervenors. Moreover, courts regularly rely on FRCP 24(b) to find that motions to intervene are appropriate in circumstances similar to these. *See Wellpath, LLC*, 2021 WL 4096556, at *2 (finding that allowing intervention "[would] not delay or prejudice the adjudication of the original parties' rights" because the intervenors filed "at the beginning of discovery . . . and before a trial date [had] been set"). And as Intervenors correctly note, "[n]o party can point to any prejudice suffered from

Intervenors moving to intervene now, rather than [at] an[] earlier time in this action," and that "allowing Intervenors to intervene now — before Defendants have even answered the lawsuit — will not affect any deadlines or result in any undue delay." ECF No. 152 at 25; *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989).

CONCLUSION

Having found that Intervenors are entitled to intervene, and that — in any event — permissive intervention is appropriate given the circumstances, the Court **GRANTS** the Motion.

**SO ORDERED.**

January 12, 2024

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE