IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| Alliance for Hippocratic Medicine, *et al.*, <br><br> Plaintiffs, <br><br> and <br><br> State of Missouri, *et al.*, <br><br> Intervenor-Plaintiffs, <br><br> *v.* <br><br> U.S. Food and Drug Administration, *et al.*, <br><br> Defendants, <br><br> and <br><br> Danco Laboratories, LLC, <br><br> Intervenor-Defendant. | Case No. 2:22-cv-00223-Z |

**INTERVENOR-PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS'
MOTION TO DISMISS, AND REPLY IN SUPPORT OF MOTION FOR
LEAVE TO AMEND**

1

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 3

FACTS ................................................................................................................................. 4

ARGUMENT ....................................................................................................................... 6

   I.   Defendants cannot prove this Court's intervention order was "clearly erroneous." ................................................................................................................ 6

   II.  Even if Plaintiffs never had standing to begin with, the States' suit may still proceed. ......................................................................................................... 8

CONCLUSION .................................................................................................................. 12

## INTRODUCTION

Defendants are exceptionally eager to get out of the Fifth Circuit. That is because the Fifth Circuit's merits analysis against FDA remains binding on this Court—just not courts in other circuits. When the U.S. Supreme Court reverses rather than vacates, any part of a Fifth Circuit opinion not reversed remains binding precedent. *Central Pines Land Co. v. United States*, 274 F.3d 881, 893 n. 57 (5th Cir. 2001). Here, the U.S. Supreme Court "reverse[d]" the Fifth Circuit's standing analysis, but did not vacate the opinion, so the merits analysis stands. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 397 (2024). That means that if this Court finds standing after a trial, then Fifth Circuit precedent will require this Court to enter judgment against Defendants.

To escape that likelihood, Defendants urge this Court to revisit its previous intervention decision. But that intervention decision is law of the case. Because Defendants cannot show that this Court's earlier intervention decision was "clearly erroneous," *Lyons v. Fisher*, 888 F.2d 1071, 1075 (5th Cir. 1989), this Court should reject Defendant's position.

This Court's earlier intervention decision was not erroneous, let alone "clearly" erroneous, because standing existed at the time for the private plaintiffs. The private plaintiffs lost standing only after the United States reversed its position on conscience laws in the Supreme Court. Defendants expressly rely on Judge Ho's concurrence on remand (ECF 198 at 9), but as Judge Ho has explained, the Fifth Circuit's standing analysis was correct based on the United States Solicitor General's position on federal

3

conscience laws at the time. *All. for Hippocratic Med. v. FDA*, 117 F.4th 336, 340–41 (5th Cir. 2024) (Ho, J., concurring). Only after "the Government switched positions before the Supreme Court," disclaiming its previous assertion, and only after the Supreme Court adopted the U.S. Solicitor General's new interpretation of federal conscience laws, did the private plaintiffs lose standing. *Id.* at 341.

Thus, the entire crux of Defendants' argument—that there was never standing to begin with, so intervention was improper—is wrong. At the very least, given the U.S. Solicitor General's complete 180 before the Supreme Court, Defendants cannot meet their exceptionally high burden of proving that this Court's previous intervention decision was "clearly erroneous."

Even if the private plaintiffs always lacked standing (rather than only after the U.S. Solicitor General flipped her position), this case can continue because venue is not jurisdictional. Defendants cite no case for their theory that they can assert a venue objection months or years after intervention, just because they think the party that most easily satisfies venue should be dropped from the case. That rule would be enormously wasteful.

## FACTS

Before this case went to the Supreme Court, the private plaintiffs' principal theory of standing was harm to conscience. As the Supreme Court reaffirmed, "doctors would have standing to challenge a government action that likely would cause them to provide medical treatment against their consciences." 602 U.S. at 387. This Court and two different panels of the Fifth Circuit readily concluded that the

private plaintiffs had standing under that theory. And how could they not? At the time, "the Government insisted that federal law 'requires doctors to offer abortion.'" 117 F.4th at 340, (Ho, J., concurring) (citation and emphasis omitted). Although the Federal Government asserted in *this* case that conscience laws would protect the doctors, the Federal Government took the exact opposite position in another case before the Fifth Circuit. The panel considered the government's position in that other case, *Texas v. Becerra*, 23 F. Supp. 3d 696 (N.D. Tex. 2022)—that doctors *must* provide abortions in certain circumstances—as evidence that the private plaintiffs were not "free to refuse treatment to mifepristone patients" on the basis of conscience. 78 F.4th at 237.

It was not until "the Government switched positions before the Supreme Court" that the private plaintiffs were deprived of their principal theory of standing. 117 F.4th at 341, (Ho, J., concurring). There, the U.S. Solicitor General "disclaimed [its initial] reading" of federal law and advanced the exact opposite position it had advanced in the lower courts in cases like *Texas v. Becerra. Id.* (quoting 602 U.S. at 389) (emphasis omitted). Armed with the Solicitor General's switched position, the Supreme Court interpreted federal conscience laws to protect the private plaintiffs in the relevant circumstances. 602 U.S. at 390. With that switch in position plus the Supreme Court's authoritative interpretation of federal conscience laws, the private plaintiffs no longer faced a harm to conscience; they no longer faced the looming threat of the Federal Government saying it would take enforcement action if they did not perform abortions. The previous controversy between the parties disappeared.

5

The Supreme Court thus reversed the Fifth Circuit's standing analysis, leaving the merits analysis intact and binding on this Court. *Central Pines*, 274 F.3d at 893 n. 57. The Fifth Circuit then vacated this Court's stay order and remanded for further proceedings. *All. for Hippocratic Med. v. FDA*, 117 F.4th 336 (5th Cir. 2024).

## ARGUMENT

Defendants (collectively with Intervenor-Defendants) do not presently develop any argument contesting the States' standing. Instead, they ask this Court to reverse its previous order granting intervention. They insist that (1) there was never any suit for the States to intervene in in the first place, so intervention was not proper and (2) the States lack venue and cannot continue their suit independently. Both arguments fail.

### I. Defendants cannot prove this Court's intervention order was "clearly erroneous."

Right out of the gate, Defendants run into trouble because this Court has already ruled that intervention was proper. Intervention is "judged as of the time the motion [i]s ruled upon," not a year later. *Equal Empl. Opportunity Comm'n v. United Air Lines, Inc.*, 515 F.2d 946, 950 (7th Cir. 1975). Defendants thus must show that this Court's previous ruling, which is the law of the case, "was clearly erroneous." *See, e.g.*, *Lyons*, 888 F.2d at 1075. They cannot.

Defendants' principal theory for retroactively eliminating intervention is their contention that the private plaintiffs never had standing. Not so. When this Court permitted the States to intervene, the private plaintiffs had standing (and venue). The Fifth Circuit had concluded months before that the private plaintiffs sustained

6

cognizable conscience injuries based on the Federal Government's position that the Emergency Medical Treatment and Labor Act requires doctors with conscience objections to perform abortions. *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 236 (5th Cir. 2023). Only after the Federal Government squarely reversed that position did the Supreme Court conclude that the private plaintiffs lacked standing.

That means Defendants are wrong to insist (ECF 198 at 13) that the private plaintiffs "lacked standing from the outset." Those plaintiffs in fact had standing when this Court granted intervention—or at the very least, Defendants cannot show that those plaintiffs "clearly" lacked standing at that time given the position about conscience laws the Federal Government was then advancing—a position the U.S. Solicitor General flipped once she got to the Supreme Court. At the time, the Federal Government (which could take enforcement action against doctors or hospitals) was advancing the interpretation that the private plaintiffs were required to perform abortions. There was thus a concrete dispute between those doctors and the Federal Government. But at the very least, even if the private plaintiffs' standing were ambiguous, Defendants cannot meet their burden of proving that this Court's intervention decision was "clearly erroneous." In light of the Federal Government's switch in position, they cannot prove that the private plaintiffs "clearly" lacked standing when they filed the lawsuit. Indeed, this Court plus every judge on two Fifth Circuit panels concluded that the plaintiffs had standing before the switch in position. And the Supreme Court never considered the question before the U.S. Solicitor General switched positions.

7

Venue similarly poses no difficulty. Defendants argue that venue vanished when the Supreme Court determined that Plaintiffs do not have standing. But venue, unlike standing, is not jurisdictional. *See Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939). Accordingly, the Supreme Court's determination about the private plaintiffs' standing does not affect this Court's previous decision to permit intervention. Defendants thus cannot meet their burden of proving that intervention was "clearly erroneous" a year ago.

It makes no difference to the States whether the private plaintiffs' complaint is dismissed at this stage. Because Defendants cannot show that this Court's intervention order was "clearly erroneous," the Court can permit the States' suit to proceed. Defendants cite no case for the proposition that they can raise a venue complaint a year after intervention simply because the facts change concerning one party's standing.

## II. Even if Plaintiffs never had standing to begin with, the States' suit may still proceed.

In the alternative, this Court can treat this action as an independent action if this Court dismisses the private plaintiffs. The Fifth Circuit has expressly recognized "circumstances in which an intervenor can continue to litigate after dismissal of the party that originated the action." *Harris v. Amoco Production Co.*, 768 F.2d 669, 676 (1985). Defendants fail to identify any reason why the States cannot continue this suit here.

The only reason they suggest is that none of the States reside in this district for purposes of venue. But there is no dispute that this Court had venue when the

8

States successfully intervened a year ago. Intervention is "judged as of the time the motion [i]s ruled upon." *United Air Lines*, 515 F.2d at 950. And just like only one plaintiff needs to have standing, so too at the time of intervention "venue need be proper for only one plaintiff." *Ry. Lab. Executives' Ass'n*, 958 F.2d 252, 256 (9th Cir. 1991). This "is not only the majority view—it is the only view adopted by the federal courts since 1971.'" *Sidney Coal Co., Inc. v. Soc. Sec. Admin.*, 427 F.3d 336, 345 (6th Cir. 2005). When this Court granted the States' motion to intervene, venue was indisputably proper. Defendants' venue argument thus fails.

No better is Defendants' suggestion that they can suddenly assert a venue objection if the private plaintiffs drop out of the case a year after the States were let in. "[T]he propriety of intervention after the dismissal of the original plaintiffs is in large part dependent on whether the intervenor has participated in an existing suit and has an independent *jurisdictional* basis to remain or seeks to join a non-existent suit." *In re Greyhound Sec. Litig.*, 1997 WL 531317, at *5 (Tex. N.D. 1997) (emphasis added); *see also Harris*, 768 F.2d at 675–76. Here, the States have both participated and have a jurisdictional basis to continue the suit—which Defendants do not at the moment contest. (Venue is nonjurisdictional.)

Defendants cite cases for the proposition that a court can transfer a case where it determines that the party satisfying venue lacks standing, but Defendants critically cite no case suggesting that a district court must transfer or dismiss based on venue when the district court permitted intervention only for an *appellate* court to later reverse on standing. Instead, their cases involve situations where the plaintiff

9

with venue is determined to lack standing at the outset, which is the opposite of what happened here. *See, e.g.*, *Miller v. Albright*, 523 U.S. 420, 426–27 (1998). Defendants fail to cite a single case adopting their novel theory that they can assert a venue objection months or years after successful intervention simply because one party drops out of the case.

That rule would be enormously wasteful. Consider, for example, a case with two plaintiffs that is litigated all the way to the cusp of final judgment—only for the plaintiff with venue to settle with the defendant on the last day of trial. Under Defendants' assertion, a defendant could raise a venue objection at that time, and the court would have to transfer the remaining plaintiff to another venue despite having finished nearly the entire trial. Congress wisely chose to make venue *not* jurisdictional to avoid that kind of waste.

Defendants presumably do not dispute that continuing the suit would be proper in the example just described, but this case is quite similar. This Court and the Fifth Circuit have already assessed the merits. And because the Supreme Court reversed the Fifth Circuit rather than vacating the opinion, the Fifth Circuit's merits analysis remains binding on this Court. *Central Pines*, 274 F.3d at 893 n. 57. To transfer now, especially since venue is not jurisdictional, would be extraordinarily wasteful. Indeed, Danco notes (ECF 200 at 9) that all parties have already expended "extensive resources." Forcing the parties to start over in a forum unfamiliar with any of these legal disputes would harm judicial economy.

Defendants also misconstrue Wright & Miller by insisting that this Court can entertain the States' suit only "if [a State] satisfies by itself the requirements of jurisdiction and venue." Wright & Miller, Federal Practice & Procedure § 1918. The treatise makes the quoted statement to explain that intervention cannot cure venue defects but that courts may entertain an intervenor's suit separately to discourage gamesmanship. *Id.* By contrast, here, venue was proper when this Court permitted the States to intervene. Defendants simply cannot show therefore that the intervention decision was clearly erroneous. And after the part of Wright & Miller that Defendants cite, the same source goes on to say that absent cases involving gamesmanship (where a party seeks to cure jurisdiction of another party), if a case involves a federal question (as this one does), then "venue objections should not be entertained." *Id.* Here, the States are not trying to keep the private plaintiffs in the suit but instead are advancing the States' own arguments in a forum already well familiar with all the issues.

There is also a strong connection to this venue. Defendants assert there is "no conceivable connection" between this forum and the dispute, ECF 198 at 17, but they ignore that this Court has been handling this case for two years, both this Court and the Fifth Circuit have assessed the merits, and the Fifth Circuit's merits analysis is binding on this Court because the Supreme Court did not vacate the Fifth Circuit's decision.

Ultimately, all Defendants' cases are inapposite. Those cases stand for the proposition that an intervening party, *at the time of intervention*, cannot intervene to

cure a standing defect of the original plaintiff. But the States do not seek to confer jurisdiction on the private plaintiffs. Rather, the States seek to assert their own interests, which the States have standing to do. And the mere fact that Defendants assert that the party with venue should be dismissed a year *after* intervention does not mean this Court should dismiss or transfer—especially when both this Court and the Fifth Circuit have already carefully assessed the merits.

## CONCLUSION

Defendants cannot show that this Court clearly erred in granting the States' motion to intervene. At the time intervention was granted, both jurisdiction and venue were secure. At the very least, given the U.S. Solicitor General's change in position, Defendants cannot prove that intervention was "clearly erroneous" a year ago. And because their only objection to amending the complaint rests on their (incorrect) venue arguments, this Court should permit amendment.

Dated: November 15, 2024

Respectfully submitted,

**ANDREW BAILEY**
Missouri Attorney General

/s/ *Joshua M. Divine*
Joshua M. Divine, #69875MO
*Solicitor General*
Maria Lanahan, #65956MO
*Deputy Solicitor General*
*Samuel C. Freedlund, #73707MO
*Deputy Solicitor General*

Office of the Attorney General
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
(573) 751-0774 (fax)
Josh.Divine@ago.mo.gov
Maria.Lanahan@ago.mo.gov
Samuel.Freedlund@ago.mo.gov

**KRIS W. KOBACH**
Attorney General of Kansas

/s/ Erin B. Gaide
*Erin B. Gaide, #29691KS
*Assistant Attorney General*
*Abhishek S. Kambli, #29788KS
*Deputy Attorney General*


Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612
(785) 296-7109
(785) 296-3131 (fax)
Erin.Gaide@ag.ks.gov

**RAÚL R. LABRADOR**
Idaho Attorney General

/s/ *Michael A. Zarian*
Michael A. Zarian #12418ID
*Deputy Solicitor General*
*James E.M. Craig, #6365ID
*Chief, Civil Litigation and
Constitutional Defense*

Office of the Attorney General
700 W. Jefferson St., Suite 210,
PO Box 83720
Boise, Idaho 83720
(208) 334-2400
michael.zarian@ag.idaho.gov
james.craig@ag.idaho.gov


*Counsel for Plaintiff-Intervenors*

* *pro hac vice applications forthcoming*

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with Local Rule 7.2 in that the brief does not exceed 25 pages (it is 10 pages), excluding the table of contents and signature block.

*/s/ Joshua M. Divine*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2024, the foregoing was filed electronically through the Court's electronic filing system and served by email on all parties.

*/s/ Joshua M. Divine*