**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| Alliance for Hippocratic Medicine, *et al.*, | |
| Plaintiffs, | |
| and | |
| State of Missouri, *et al.*, | |
| Intervenor-Plaintiffs, | Case No. 2:22-cv-00223-Z |
| *v.* | |
| U.S. Food and Drug Administration, *et al.*, | |
| Defendants, | |
| and | |
| Danco Laboratories, LLC, | |
| Intervenor-Defendant. | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................1

ARGUMENT .....................................................................................................................................2

      I.      Defendants Are Legally Entitled to Dismissal Under Rule 12,
           Notwithstanding the Court's Prior Grant of Intervention ............................................2

      II.     This Court Never Had Jurisdiction Over Plaintiffs' Claims .........................................3

      III.    This Court Must Comply with the Venue Statute's Mandatory Command .................6

CONCLUSION ................................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*All. for Hippocratic Med. v. FDA,*
    78 F.4th 210 (5th Cir. 2023) ................................................................................................. 4

*All. for Hippocratic Med. v. FDA,*
    117 F.4th 336 (5th Cir. 2024) ............................................................................................... 5

*Already, LLC v. Nike, Inc.,*
    568 U.S. 85 (2013) ........................................................................................................... 4, 5

*Am. Cyanamid Co. v. McGhee,*
    317 F.2d 295 (5th Cir. 1963) ............................................................................................... 3

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.,*
    364 F.3d 884 (7th Cir. 2004) ............................................................................................... 8

*Arizonans for Off. English v. Arizona,*
    520 U.S. 43 (1997) ............................................................................................................... 4

*Bailey v. Shell W. E&P, Inc.,*
    609 U.S. 710 (5th Cir. 2010) ............................................................................................... 1

*Central Pines Land Co. v. United States,*
    274 F.3d 881 (5th Cir. 2001) ............................................................................................... 6

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) ............................................................................................................. 5

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ..................................................................................................... 1, 5, 6

*Ford v. Sharp,*
    758 F.2d 1018 (5th Cir. 1985) ......................................................................................... 1, 3

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ......................................................................................................... 4, 5

*Happy Mfg. Co. v. S. Air & Hydraulics, Inc.,*
    572 F. Supp. 891 (N.D. Tex. 1982) ..................................................................................... 8

*Harris v. Amoco Prod. Co.,*
    768 F.2d 669 (5th Cir. 1985) ............................................................................................... 6

*Hillis v. Heineman,*
    626 F.3d 1014 (9th Cir. 2010) ............................................................................................. 8

*Lawson v. Dep't of Just.*,
    527 F. Supp. 3d 894 (N.D. Tex. 2021) ................................................................................3

*Lindquist v. City of Pasadena*,
    669 F.3d 225 (5th Cir. 2012) ..............................................................................................2

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................6

*Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*,
    2 F.3d 544 (4th Cir. 1993) ..................................................................................................3

*Qureshi v. United States*,
    600 F.3d 523 (5th Cir. 2010) ..........................................................................................3, 6

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ..............................................................................................................6

## STATUTES

28 U.S.C. § 1367(a) .....................................................................................................................9

28 U.S.C. § 1391(e)(1) ...............................................................................................................10

28 U.S.C. § 1406(a) .....................................................................................................................7

## RULES

Fed. R. Civ. P. 12(b)(3) ...............................................................................................................8

Fed. R. Civ. P. 12(h)(1) ...............................................................................................................7

Fed. R. Civ. P. 12(h)(1)(B) .........................................................................................................8

## OTHER AUTHORITIES

Wright & Miller, Federal Practice & Procedure § 1918 (3d ed. June 2024) .............................9

Wright & Miller, Federal Practice & Procedure § 2367 (4th ed. Nov. 2024) ...........................3

## INTRODUCTION

The Supreme Court unanimously determined that the original Plaintiffs in this case lacked standing. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). Those Plaintiffs have now filed a Notice of Voluntary Dismissal, dismissing "all claims brought in their complaint as to all defendants[.]" ECF No. 203 at 1. That Notice "results in immediate termination of the suit," *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 719 (5th Cir. 2010), and operates as if "the suit had never been filed." *Ford v. Sharp*, 758 F.2d 1018, 1023-24 (5th Cir. 1985). As this Court recognized, it has now "lost jurisdiction as to Plaintiffs' claims." ECF No. 206 at 1 (cleaned up).

Notwithstanding dismissal of the original action, the three Intervenor States of Missouri, Idaho, and Kansas ("the States") wish to continue pressing their claims. And they insist on doing so before this Court, even though the States' claims have no plausible connection to the Northern District of Texas. Particularly now that the original Plaintiffs have dismissed their suit, the States' Complaint must likewise be dismissed (or transferred), and none of the States' arguments in opposition, ECF No. 202, warrants a different result.

First, this motion does not seek to "revisit" the Court's prior intervention order. Rather, this motion seeks dismissal of the States' Complaint pursuant to Rule 12(b), which has nothing to do with the Court's grant of intervention pursuant to Rule 24. Second, the States incorrectly suggest that this Court had jurisdiction over the original Plaintiffs' claims at the time of intervention, which allows the States to continue litigating in this Court. But that is not how standing works; the Supreme Court's decision necessarily means that this Court *never* had jurisdiction over Plaintiffs' claims. And that is certainly true now that the original Plaintiffs have voluntarily dismissed their claims, making it as if their suit had never been filed. Finally, the States offer no basis for this Court to ignore the venue statute's mandatory commands. For all of these reasons, the States' claims cannot proceed before this Court, and the States' Complaint should be dismissed (or transferred).

1

## ARGUMENT

I.    **Defendants Are Legally Entitled to Dismissal Under Rule 12, Notwithstanding the Court's Prior Grant of Intervention**

At the outset, the States distort the standard of review governing Defendants' motion. The States assert that "Defendants urge this Court to revisit its prior intervention decision" which "is law of the case" and can be overturned only if it "was 'clearly erroneous.'" Opp'n at 3. But Defendants' motion does not request that this Court reconsider its prior Order granting intervention, ECF No. 175, nor does the motion argue that the Court erred in its analysis of the Rule 24 intervention factors. Instead, Defendants have invoked Rule 12 to argue that the States' Complaint must be dismissed. The motion therefore *assumes* the States' status as independent parties with their own Complaint; it does not seek to relitigate the intervention decision itself.

For similar reasons, the law of the case doctrine is irrelevant. That doctrine "applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Lindquist v. City of Pasadena*, 669 F.3d 225, 239 (5th Cir. 2012). Nothing in this Court's prior intervention Order addressed venue or any other Rule 12 defense. *See* ECF No. 175 at 1-2 (defining the "relevant law" as the Rule 24 standards governing intervention). Tellingly, the States do not point to any specific aspect of the Court's intervention decision that they believe conflicts with (let alone forecloses) Defendants' current Rule 12 motion.

To the extent the States are arguing that this Court's decision to allow intervention constituted an *implicit* determination that their Complaint survives Rule 12, that position is contrary to the States' own intervention filings, which suggested that the Court could grant intervention without "even consider[ing] standing or venue yet." States' Reply on Intervention (ECF No. 172) at 1. The States also acknowledged that, if the Court were to grant intervention, the logical next step in the case would be "Defendants filing a motion to dismiss." *Id.* at 2. As even the States admitted, then, Defendants' motion to dismiss is not foreclosed by the prior grant of intervention.

2

Because Defendants' motion does not conflict with the Court's prior grant of intervention, and instead is a straightforward motion to dismiss under Rule 12(b), there is no basis for applying a heightened "clear error" standard. The motion should be evaluated under the ordinary standard, *i.e.*, with the States having the burden to establish both jurisdiction and proper venue. *See* Defs.' MTD Br. (ECF No. 197) at 3; *Lawson v. Dep't of Justice*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021).

## II.    This Court Never Had Jurisdiction Over Plaintiffs' Claims

As Defendants previously explained, the States' Complaint cannot proceed because the original Plaintiffs in this case never had standing, and thus there was no Article III dispute in which the States could intervene to present their claims. *See* Defs.' MTD Br. at 7-9. The States' primary response is that "the private plaintiffs . . . had standing when this Court granted intervention," and those Plaintiffs lost standing only after the Supreme Court issued its decision. Opp'n at 7.

As an initial matter, whatever merit this argument might have had, it certainly fails now that the original Plaintiffs have voluntarily dismissed all of their claims under Rule 41(a). As this Court previously acknowledged, *see* ECF No. 206, the Court lost jurisdiction over Plaintiffs' claims as soon as that Notice was filed. *See Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) ("[I]n the normal course, the district court is divested of jurisdiction over the case by the filing of the notice of dismissal itself."); *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963) ("That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play."). Moreover, that Notice makes it as if "the suit had never been filed." *Ford*, 758 F.2d at 1023-24; *see also, e.g.*, Wright & Miller, Federal Practice & Procedure § 2367 (4th ed. Nov. 2024) ("[A]s numerous federal courts have made clear, a voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action never had been filed."); *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 547 (4th Cir. 1993) ("When Marex filed its notice of dismissal . . . the action was terminated and the district court's interlocutory orders were vacated.").

3

Because Plaintiffs' suit was effectively never filed, the States cannot rely on any purported jurisdiction in the original suit to justify the States' claims being adjudicated in this forum.

In any event, even apart from Plaintiffs' dismissal under Rule 41(a), the States' argument is wrong on its own terms. The States portray this Court as having jurisdiction over Plaintiffs' claims up until the Supreme Court reversed, which occurred only after a supposed "switch in position" by Defendants that eliminated the Plaintiffs' claimed conscience harm. Opp'n at 5. As a factual matter, Defendants did not switch positions before the Supreme Court; their arguments have been consistent, both in this case and in unrelated litigation involving the Emergency Medical Treatment and Labor Act, as Defendants have previously explained. *See* Defs.' Reply Br., No. 23-10362 (5th Cir. filed May 12, 2023), at 12-14. Indeed, the Fifth Circuit merits panel acknowledged Defendants' argument that "federal law would allow the Doctors to refuse care based on a conscientious objection," *Alliance for Hippocratic Medicine v. FDA*, 78 F.4th 210, 236 (5th Cir. 2023), which is the same argument that Defendants pressed before the Supreme Court.

Regardless, the States' theory is contrary to black-letter principles of jurisdiction. The doctrine of standing addresses a plaintiff's ability to *bring* a lawsuit; when an event occurs subsequent to filing that eliminates the plaintiff's claimed injury, that implicates the distinct doctrine of mootness. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."); *see also, e.g.*, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-92 (2013) (discussing how "[a]t the outset of this litigation, both parties had standing to pursue their competing claims in court," but subsequent events in the lower courts "call[ed] into question the existence of any continuing case or controversy," which required evaluation under the mootness framework); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-92 (2000) (discussing distinction between standing

and mootness). Standing is accordingly evaluated at the time the lawsuit is filed. *See, e.g.*, *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."); *Friends of the Earth*, 528 U.S. at 191.

Here, contrary to the States' assertions, the Supreme Court did not conclude that a subsequent event—*i.e.*, Defendants' purported "switch in position"—eliminated an otherwise "concrete dispute between [the Plaintiff] doctors and the Federal Government." Opp'n at 7. That would have required evaluating the case under the mootness framework. *See Already, LLC*, 568 U.S. at 92. Instead, the Court concluded that "the plaintiffs lack standing to challenge FDA's actions." *Alliance*, 602 U.S. at 374; *see also id.* at 393 ("In sum, the doctors in this case have failed to establish Article III standing."). The Fifth Circuit also understood the Supreme Court to have based its decision on standing principles, not mootness. *See Alliance for Hippocratic Medicine v. FDA*, 117 F.4th 336, 340 (5th Cir. 2024) (per curiam) ("[T]he Supreme Court . . . held that the Plaintiffs lack standing to challenge several FDA actions."). The Supreme Court's holding, rooted in standing principles (rather than mootness), necessarily means that the original Plaintiffs in this case *never* had standing to pursue their claims. *See Alliance,* 602 U.S. at 379 (a plaintiff without standing cannot "get in the federal courthouse door"); *see also id.* at 396-97 ("[T]he federal courts are the wrong forum for addressing the plaintiffs' concerns about FDA's actions.").

Finally, even if Defendants *had* previously interpreted federal conscience laws in the way that the States claim (which they did not), that still would not have created standing for the original Plaintiff doctors. The Supreme Court made clear that the correct interpretation of federal conscience laws removed any threat of injury to those doctors. *See id.* at 387. The States cite no authority for their assumption that the vague assertion of an incorrect legal argument in unrelated briefing can create the concrete injury necessary for Article III standing—let alone that such standing exists

temporarily, up until the point when the law's correct meaning is clarified.

Regardless of how one views this case's procedural history, therefore, the States are incorrect that the original Plaintiffs had standing up until the Supreme Court's decision. And because this Court never had jurisdiction over the original Plaintiffs' claims, Fifth Circuit precedent confirms that the entire matter must be dismissed, regardless of the States' subsequent intervention. *See, e.g., Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) ("It is . . . well-settled that an existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit." (cleaned up)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (Scalia, J., plurality op.) (explaining that additional parties, "by later participating in the suit," could not create "jurisdiction[] that did not exist at the outset"); Defs.' MTD Br. at 7-9.[1]

## III.    This Court Must Comply with the Venue Statute's Mandatory Command

Because this case was never properly within this Court's jurisdiction, and particularly now that the original Plaintiffs have voluntarily dismissed this action, the States' Complaint cannot proceed in this Court given the States' inability to satisfy venue. *See* Defs.' MTD Br. at 9-14. None of the States' arguments in opposition warrants a different result.

First, the States reprise their argument that "venue, unlike standing, is not jurisdictional."

---

[1] Although not relevant to the present motion, the States are incorrect that "the Fifth Circuit's merits analysis against FDA remains binding on this Court." Opp'n at 1. For one, it is far from clear that an appellate ruling on preliminary relief would remain precedential even after the Plaintiffs extinguish the suit through voluntary dismissal. Regardless, the States' assertion rests on their same flawed premise that jurisdiction over this case existed until the Supreme Court's decision. Because the Supreme Court held that this case was never within the federal courts' Article III power, *see Alliance*, 602 U.S. at 396-97, neither this Court nor the Fifth Circuit ever had authority to decide the merits of Plaintiffs' claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law[.]"). The States' cited authority—*Central Pines Land Co. v. United States*, 274 F.3d 881, 894 n.57 (5th Cir. 2001)—arose in the distinct context of a panel decision being reversed *on the merits* on specific grounds, with other portions of that decision remaining binding. The precedential effect of panel opinions in those circumstances, when there is no dispute about jurisdiction, does not support the States' assertion here—*i.e.*, that a panel opinion remains binding even after the Supreme Court determines that the case was never within the federal courts' jurisdiction.

Opp'n at 8. But as Defendants previously explained, the States have not pointed to any authority allowing this Court to ignore a timely raised venue objection, particularly in the face of the venue statute's mandatory language. *See* 28 U.S.C. § 1406(a) (in a case with improper venue, "[t]he district court . . . *shall* dismiss, or if it be in the interest of justice, transfer such case" (emphasis added)); *see also* Defs.' MTD Br. at 11-12. The States never grapple with this clear statutory command.

Instead, the States try to rely on the original Plaintiffs to satisfy venue. *See* Opp'n at 8-9 ("[T]here is no dispute that this Court had venue when the States successfully intervened a year ago."). But again, those Plaintiffs, who never had standing, are now dismissed, as if their suit had never been brought. Whatever benefit the States might have been able to claim from the original Plaintiffs' participation has therefore also been extinguished.

More fundamentally, the States have no persuasive response to the case law holding that a party who lacks standing cannot be the basis for satisfying venue. *See* Defs.' MTD Br. at 12-13. The States contend that those cases are irrelevant because here it was "an *appellate* court" that "reverse[d] on standing," whereas in those cases "the plaintiff with venue is determined to lack standing at the outset[.]" Opp'n at 9-10. But here, too, the original Plaintiffs were "determined to lack standing at the outset," *id.*, before either Defendants or Intervenor-Defendant filed their initial responses to the Complaints. Indeed, the States when seeking intervention described this case as still being "in its earliest stages—Defendants have not even yet answered the Complaint." States' Reply on Intervention at 8. After having emphasized the early posture of this case to obtain intervention, the States cannot now contend that too much has happened such that Defendants have lost their entitlement to raise a venue defense.

Moreover, Rule 12 is explicit about when venue defenses are waived, *see* Fed. R. Civ. P. 12(h)(1), and the States do not contend that any of those circumstances applies here. There is no dispute that Defendants timely raised their venue defense through a Rule 12 motion in response to

the States' Complaint. *See* ECF No. 196. And even before that, Defendants consistently raised their

venue objection to the States proceeding in this District. *See, e.g.*, Defs.' Mot. to Hold Intervention

Mot. in Abeyance (ECF No. 155) at 4-5; Defs.' Reply on Mot. for Abeyance (ECF No. 158) at 5-8;

Defs.' Intervention Opp'n (ECF No. 163) at 4; Joint Status Report (ECF No. 191) at 2.

The States cite no authority supporting waiver in these circumstances. To the contrary,

courts have held that venue defenses are not waived even when the defendants engaged in far more

litigation conduct in district court. *See Happy Mfg. Co. v. S. Air & Hydraulics, Inc.*, 572 F. Supp. 891,

893 (N.D. Tex. 1982) (rejecting "three possible grounds" for waiver, including "filing of a

counterclaim" and raising "objections to deposition notices," none of which "comport[s] with the

rules concerning waiver of the venue defense in the Federal Rules of Civil Procedure"); *see also, e.g.*,

*Hillis v. Heineman*, 626 F.3d 1014, 1017-18 (9th Cir. 2010) (holding that "asserting a counterclaim

does not waive a defense of improper venue," noting that "there is nothing in the language of the[]

rules to support such a position"); *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884,

888 (7th Cir. 2004) (rejecting waiver based on defendants engaging in "very preliminary pretrial

litigation activity," such as "conducting settlement discussions and responding to discovery

requests"). In short, there is no basis for denying Defendants their entitlement to raise a venue

defense, *see* Fed. R. Civ. P. 12(b)(3), and this case stands in the same posture as those previously

cited by Defendants, *see* Defs.' MTD at 12-13—*i.e.*, where Plaintiffs were determined to lack

standing at the outset, and Defendants raised a timely venue objection through a Rule 12 motion.[2]

The States also continue to distort Wright & Miller as supporting their ability to proceed

---

[2] This posture also distinguishes this case from the States' far-fetched hypothetical of a defendant waiting until "the last day of trial" to "raise a venue objection at that time." Opp'n at 10. It is difficult to see how a defendant could wait until the last day of trial to raise a venue objection without running afoul of Rule 12(h)'s provisions regarding waiver. *See* Fed. R. Civ. P. 12(h)(1)(B) (requiring a venue defense to be presented either in a Rule 12 motion or "in a responsive pleading" under Rule 15). And in any event, there is no dispute that Defendants here raised their venue defense at the earliest possible point in the proceedings and consistently thereafter.

without satisfying venue. That treatise is explicit: "[T]he court has discretion to treat the intervenor's claim as if it were a separate suit and may entertain it if it satisfies by itself the requirements of jurisdiction *and venue*." Wright & Miller, Federal Practice & Procedure § 1918 (3d ed. June 2024) (emphasis added). That straightforward statement cannot be reconciled with the States' interpretation—that venue is irrelevant as long as federal-question jurisdiction exists. Opp'n at 11. To the contrary, the passage in Wright & Miller on which the States rely addresses venue objections when the main action remains pending:

> [S]upplemental jurisdiction may be utilized over an intervenor's claim in cases in which *jurisdiction in the main action* is premised on a federal question. Thus, it seems clear, applying the principle noted at the outset, that the intervenor's claim also would be supplemental (or ancillary) for venue purposes and venue objections should not be entertained *in this situation*.

Wright & Miller, Federal Practice & Procedure § 1918 (emphases added). The reference to supplemental jurisdiction highlights that the main action must still be pending. Supplemental jurisdiction is available only in a "civil action of which the district courts have original jurisdiction," 28 U.S.C. § 1367(a), and here jurisdiction never existed (as confirmed by the Supreme Court's decision), and certainly does not exist now that the original Plaintiffs have voluntarily dismissed their claims. *See* ECF No. 206. The States cannot rely on any notion of "supplemental venue" here, given that there is no longer any "main action" pending that would satisfy venue.

Even the States' interpretation of Wright & Miller underscores that allowing their claims to continue would be inappropriate. The States portray Wright & Miller as not requiring intervenors to satisfy venue, except in "cases involving gamesmanship (where a party seeks to cure the jurisdiction of another party)[.]" Opp'n at 11. Of course, that was the very premise of the States' intervention motion here—*i.e.*, because Defendants "attack[ed] the private plaintiffs' theories of standing," the States sought to "press sovereign and economic harms that cannot be asserted by private plaintiffs" so that "this Court . . . can more cleanly get to the merits" of Plaintiffs' claims. Intervention Mot.

(ECF No. 152) at 1. In other words, the States sought to intervene for the purpose of rehabilitating the original Plaintiffs' lack of standing. The States' own filings thus confirm the potential for gamesmanship, and the resulting need for rigorous enforcement of the venue statute's requirements.

Finally, the States cannot establish venue simply by pointing to past litigation proceedings occurring before this Court and the Fifth Circuit. Opp'n at 11. The venue statute requires that a party's *claims* have substantial connection to the chosen forum. 28 U.S.C. § 1391(e)(1). The litigation itself cannot serve as the requisite link to the forum, because then a plaintiff would always satisfy venue based solely on the act of filing their claims in a particular court. Aside from this litigation, the States do not dispute that their claims have no connection to the Northern District of Texas.

The proper course, therefore, is for this Court to dismiss the States' claims, or in the alternative transfer those claims to a District where venue might be proper—*i.e.*, the District of Columbia, the District of Maryland, the Western District of Missouri, the District of Idaho, or the District of Kansas.[3] The States have articulated no valid reason for seeking to litigate their claims before this Court, as opposed to the Federal courts located in their home jurisdictions or where Defendants are headquartered. And Defendants are entitled to dismissal or transfer pursuant to Rule 12(b)(3), notwithstanding this Court's prior grant of intervention. Particularly now that the original Plaintiffs have voluntarily dismissed all of their claims, this lawsuit should be over and should not be permitted to continue in this forum.

## <u>CONCLUSION</u>

The States' Complaint (ECF No. 176) should be dismissed or transferred for lack of venue.

---

[3] To the extent this case is transferred, Defendants reserve the right to present any and all arguments in opposition to the Intervenor States' claims, including that each of the Intervenor States lacks standing. As discussed above, venue can be satisfied only by a party with standing, which may further narrow the list of potentially proper venues. Thus, for purposes of judicial efficiency, the Court may prefer to either dismiss the case or transfer to the District of Columbia or the District of Maryland, to avoid potential further transfers in the event particular States are held to lack standing.

December 6, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC B. BECKENHAUER
JULIE STRAUS HARRIS
Assistant Directors

*/s/ Daniel Schwei*
DANIEL SCHWEI
Special Counsel
KATE TALMOR
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L St., NW
Washington, DC 20005
202-305-8693
daniel.s.schwei@usdoj.gov

BURDEN WALKER
Acting Deputy Assistant Attorney General

AMANDA N. LISKAMM
Acting Director

HILARY K. PERKINS
Assistant Director

NOAH T. KATZEN
Trial Attorney
Consumer Protection Branch

*Counsel for Defendants*