## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

|  |  |
|---|---|
| **STATE OF MISSOURI**, *et al.,* | |
| *Intervenor-Plaintiffs,* | |
| v. | |
| **U.S. FOOD AND DRUG ADMINISTRATION**, *et al.,* | |
| *Defendants,* | Case No. 2:22-cv-00223-Z |
| **DANCO LABORATORIES, LLC**, | |
| *Intervenor-Defendant,* and | |
| **GENBIOPRO, INC.**, | |
| *Intervenor-Defendant.* | |

## THE STATES OF FLORIDA AND TEXAS'S BRIEF
## IN SUPPORT OF THEIR MOTION FOR LEAVE TO INTERVENE

The States of Florida and Texas, in support of their Motion for Leave to Intervene pursuant to Rules 24(a) and 24(b), state as follows:

# TABLE OF CONTENTS

Table of Authorities .................................................................................. iii

Introduction ............................................................................................... 1

Procedural History .................................................................................... 2

Additional Facts Relevant to Intervention .............................................. 3

Analysis ...................................................................................................... 7

I. Movants are entitled to intervene as of right under FRCP 24(a)(2) ...... 8

    A.   The motion is timely ........................................................................ 8

        i.    A reasonable length of time has passed since Movants had
             reason to believe their interests are not adequately protected ........... 9

        ii.   Intervention would alleviate prejudice, not cause it ......................... 12

        iii.  Movants will suffer prejudice if intervention is denied ..................... 14

        iv.  Unusual circumstances ....................................................................... 15

    B.   Movants have an interest relating to the property or transaction
        which is the subject of the action ................................................... 15

    C.   The disposition of this action may impair or impede Movants' ability to
        protect their interests ..................................................................... 16

    D.   Movants' interests are inadequately represented by Plaintiffs ................. 17

II. In the alternative, the Court should allow permissive intervention under
    FRCP 24(b)(1)(B) ........................................................................... 18

    A.   The motion is timely ...................................................................... 18

    B.   Movants' claims share questions of law and fact in common with
        the main action ............................................................................. 18

    C.   Permissive intervention will not result in undue delay or prejudice
        to existing parties .......................................................................... 19

    D.   The Court should exercise its discretion to allow Movants to intervene ..... 21

Conclusion ............................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*
  No. 2:22-CV-223-Z, 2024 WL 1260639 (N.D. Tex. Jan. 12, 2024).......................20

*Ass'n of Pro. Flight Attendants v. Gibbs*
  804 F.2d 318 (5th Cir. 1986)..................................................................12

*Brumfield v. Dodd*
  749 F.3d 339 (5th Cir. 2014).............................................................15-18

*Diaz v. S. Drilling Corp.*
  427 F.2d 1118 (5th Cir. 1970)................................................................12

*Edwards v. City of Houston*
  78 F.3d 983 (5th Cir. 1996)..........................................9, 12, 13, 14

*E.E.O.C. v. Commercial Coating Service, Inc.*
  220 F.R.D. 300 (S.D. Tex. 2004).............................................................21

*Gen. Land Off. v. Trump*
  No. 24-40447, 2025 WL 1410414 (5th Cir. May 15, 2025).....................14, 17, 20

*Heaton v. Monogram Credit Card Bank of Georgia*
  297 F.3d 416 (5th Cir. 2002)................................................................16

*John Doe No. 1 v. Glickman*
  256 F.3d 371 (5th Cir. 2001)......................................8, 13-14, 21

*Kneeland v. Nat'l Collegiate Athletic Ass'n*
  806 F.2d 1285 (5th Cir. 1987)...............................................................18

*McDonald v. E. J. Lavino Co.*
  430 F.2d 1065 (5th Cir. 1970)...............................................................12

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*
  No. 5:21-CV-071-H, 2022 WL 974335 (N.D. Tex. Mar. 31, 2022)................13, 21

*Newby v. Enron Corp.*
  443 F.3d 416 (5th Cir. 2006)................................................................18

*Ross v. Marshall*
  426 F.3d 745 (5th Cir. 2005)............................................................15-16

*Sierra Club v. City of San Antonio*
  115 F.3d 311 (5th Cir. 1997)................................................................15

## TABLE OF AUTHORITIES
### (CONTINUED)

**Cases**                                                                                    **Page(s)**

*Sierra Club v. Espy*
    18 F.3d 1202 (5th Cir. 1994)...……………………………………..………9, 14-17, 21

*Stallworth v. Monsanto Co.*
    558 F.2d 257 (5th Cir. 1977)……………………………………………………..8, 21

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*
    338 F.R.D. 364, 372 (W.D. Tex. 2021)……………………………………………..19

*Texas v. United States*
    No. 4:18-CV-00167-O, 2018 WL 10562846 (N.D. Tex. May 16, 2018)……………..18

*Texas v. United States*
    805 F.3d 653 (5th Cir. 2015)…………………………………………………15, 18

*U.S. Equal Emp. Opportunity Comm'n v. Wellpath LLC*
    No. 5:20-CV-1092-DAE, 2021 WL 4096556 (W.D. Tex. Mar. 15, 2021)…………..19

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm.*
    834 F.3d 562 (5th Cir. 2016)…………………………………………8, 13, 15, 17

**Rules**                                                                                    **Pages**

Fed. R. Civ. P. 24(a)……………………………………………………………………..8

Fed. R. Civ. P. 24(b)…………………………………………………………….......18, 21

iv

## <u>INTRODUCTION</u>

It has been nearly two years since the States of Missouri, Kansas, and Idaho ("Plaintiffs") moved to intervene in this action. For much of that time, Plaintiffs ably represented the shared interests of the States of Florida and Texas ("Movants").

In recent months, however, it has become apparent that Movants' interests may no longer be adequately represented by Plaintiffs. Missouri and Idaho banned elective abortion after *Dobbs*. But in June, an Idaho Supreme Court decision triggered the circulation of an initiative petition proposing a constitutional right to elective abortion until viability. A week later, many of Missouri's abortion regulations were enjoined under a constitutional amendment passed in 2024. These developments may threaten Plaintiffs' standing to challenge the FDA's lawless regulation of mifepristone.

Meanwhile, the severity of Movants' injuries is increasingly evident. Data released earlier this summer revealed the magnitude of illegal telehealth abortions being performed in Florida and Texas, just after a new study discovered that over 10% of women who take abortion drugs suffer a "serious adverse event" like sepsis or hemorrhaging. At the same time, legal developments in Texas and Louisiana illustrated the difficulty of enforcing abortion regulations against abortionists in "shield law" jurisdictions.

Movants therefore seek to intervene in this action to preserve their interests and promote judicial efficiency.

1

## PROCEDURAL HISTORY

This action commenced in November 2022, when several physicians and member organizations sued the FDA and other government defendants.[1] Danco, the manufacturer of brand name mifepristone (Mifeprex), filed an unopposed motion for leave to intervene as a defendant in January 2023.[2] In November of that year, Missouri, Kansas, and Idaho moved to intervene as plaintiffs.[3] The Court granted the motion on January 12, 2024, over defendants' objection.[4] The states' original complaint in intervention challenged the FDA's approval of Mifeprex in 2000 (the "2000 Approval").[5]

On June 13, 2024, the United States Supreme Court determined that the physicians and member organizations lacked standing.[6] The states sought leave to file an amended complaint.[7] The Court granted the motion on January 16, 2025.[8] The states filed their amended complaint the same day.[9] The amended complaint

---

[1] Compl., ECF No. 1 (Nov. 18, 2022).

[2] Mot. to Intervene, ECF No. 19 (Jan. 13, 2023).

[3] Mot. to Intervene, ECF No. 151 (Nov. 3, 2023).

[4] Resp. and Object., ECF No. 163 (Dec. 16, 2023); Resp. and Object., ECF No. 164 (Dec. 18, 2023); Order Granting Mot. to Intervene, ECF No. 175 (Jan. 12, 2024).

[5] Compl. in Intervention, ECF No. 176 at 102-03 (Jan. 12, 2024) (requesting a declaration that mifepristone was unlawfully approved under Subpart H and a permanent injunction ordering the withdrawal of mifepristone and misoprostol as FDA-approved chemical abortion drugs).

[6] *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 374 (2024).

[7] Mot. for Leave to File Am. Compl., ECF No. 195 (Oct. 11, 2024).

[8] Order Granting Mot. for Leave to File Am. Compl., ECF No. 215 (Jan. 16, 2025).

[9] Am. Compl., ECF No. 217 (Jan. 16, 2025).

abandoned the states' challenge to the 2000 Approval. Motions to dismiss were filed by the government defendants[10] and Danco.[11] The states responded on February 20, 2025.[12]

Five days later, GenBioPro moved to intervene. The manufacturer of generic mifepristone explained that its interests were no longer adequately represented by Danco because the amended complaint challenged the 2019 approval of generic mifepristone without challenging the 2000 approval of Mifeprex.[13] The states objected.[14] The Court granted GenBioPro's motion on April 28, 2025.[15]

The FDA and Danco filed replies in favor of their motions to dismiss on May 5, 2025.[16] The Court has not ruled on those motions.

## **ADDITIONAL FACTS RELEVANT TO INTERVENTION**

Several developments are relevant to the Court's consideration of the Motion for Leave to Intervene.

***First***, new data alarmed Movants to the severity of their sovereign injuries. On June 23, 2025, the Society of Family Planning released a new report detailing "national shifts in abortion volume, by state and month, following the *Dobbs v.*

---

[10] Mot. to Dismiss Am. Compl., ECF No. 218 (Jan. 18, 2025).
[11] Mot. to Dismiss Am. Compl., ECF No. 221 (Jan. 28, 2025).
[12] Resp. to Mot. to Dismiss Am. Compl., ECF No. 228 (Feb. 20, 2025).
[13] Mot. to Intervene, ECF No. 229 (Feb. 25, 2025).
[14] Resp. to Mot. to Intervene, ECF No. 243 (Mar. 18, 2025).
[15] Memo. Op. and Order Granting Mot. to Intervene, ECF No. 246 (Apr. 28, 2025).
[16] Reply, ECF No. 247 (May 5, 2025); Reply, ECF No. 248 (May 5, 2025); *see also* Notice Regarding Position, ECF No. 249 (May 5, 2025).

*Jackson Women's Health Organization* Supreme Court decision."[17] This "#WeCount report" uses data purchased from "clinics, private medical offices, hospitals, and virtual clinic providers" and reveals the number of "abortions provided under shield laws."[18]

Among its major findings is that "[t]he proportion of abortions that were provided via telehealth increased over time from 5% in April-June of 2022 to 25% by the end of December 2024."[19] The report explains that "[l]egal climates appear to play an important role" in this trend.[20] Specifically, "[t]elehealth abortions provided into states with 6-week bans have increased; some of the increase into states with 6-week bans was due to the states switching from having telehealth restrictions to having 6-week bans during this time period. Telehealth abortions provided into states with total bans increased substantially by the end of 2024."[21]

Florida and Texas are no exceptions. In Florida, it has been illegal to provide an abortion through telehealth since May 1, 2024,[22] yet #WeCount reports 10,290

---

[17] Ex. 93, Society of Family Planning. *#WeCount Report April 2022 through December 2024* (June 23, 2025), available at https://societyfp.org/research/wecount/wecount-december-2024-data/. Citations to numbered exhibits refer to the appendix filed with the Motion for Leave to Intervene.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] Fla. Stat. § 390.0111(2) (effective date triggered by *Planned Parenthood of Sw. & Cent. Fla. v. State*, 384 So. 3d 67 (Fla. 2024) by operation of Laws of Fla. Ch. 2014-137 § 7).

telehealth abortions performed in Florida between May 2024 and December 2024.[23] Texas law prohibits providing abortion-inducing drugs to a pregnant woman without an in-person examination,[24] yet #WeCount reports 48,230 telehealth abortions performed in Texas between July 2023 and December 2024.[25]

These revelations come on the heels of an 865,727-sample study concluding that the incidence of sepsis, infection, hemorrhaging, or other "serious adverse event" associated with mifepristone abortion is 11%—a rate 22 times higher than disclosed by the FDA-approved label.[26]

**Second**, it has recently become clear that Movants will face significant difficulty in enforcing their abortion regulations against shield state abortionists. In December 2024, Texas Attorney General Ken Paxton petitioned for an injunction and civil penalties against Dr. Margaret Carpenter, a New York-based physician and abortion activist, for sending mifepristone and misoprostol to a Texas woman.[27] The woman, who did not have any physical conditions justifying the abortion under state law, suffered hemorrhaging and was taken to the hospital. On February 13, a Texas

---

[23] Ex. 94, Society of Family Planning, *#WeCount Report April 2022 through December 2024* (June 23, 2025) (Report data tables, Values tab), available at https://societyfp.org/research/wecount/wecount-december-2024-data/.
[24] Tex. Health & Safety Code § 171.063.
[25] Ex. 94, Society of Family Planning, *#WeCount Report April 2022 through December 2024* (June 23, 2025) (Report data tables, Values tab).
[26] Ex. 81, Ryan T. Anderson & Jamie Bryan Hall, *The Abortion Pill Harms Women: Insurance Data Reveals One in Ten Patients Experiences a Serious Adverse Event*, Ethics & Public Policy Center (Apr. 28, 2025), available at https://eppc.org/publication/insurance-data-reveals-one-in-ten-patients-experiences-a-serious-adverse-event/.
[27] Ex. 50, Pet. and App. for Temporary and Permanent Injunctive Relief, *Texas v. Carpenter*, No. 471-08943-2024 (Tex. Collin Cnty. Dec. 12, 2024).

judge entered a default judgment ordering Carpenter to pay over $100,000 in penal-
ties.[28] However, when Texas attempted to domesticate the judgment in July, the
county clerk refused to docket Texas's filing in light of New York's shield law.[29] Texas
is pursuing a mandamus action against the clerk, but New York Governor Kathy
Hochul has publicly vowed to oppose Texas's efforts: "Texas Attorney General Ken
Paxton has repeatedly tried to file a judgment against a New York doctor and our
response has been clear: hell no."[30]

Criminal penalties have proven equally difficult to enforce. On January 31 of
this year, the district attorney for West Baton Rouge indicted Dr. Carpenter for send-
ing abortion drugs to a Louisiana woman who forced the pills on her minor daugh-
ter.[31] The girl experienced heavy bleeding, called 911, and was taken to the hospital
in an ambulance. Louisiana Governor Jeff Landry issued an extradition warrant for
Carpenter on February 11.[32] Two days later, Governor Hochul announced that she
"will not be signing an extradition order that came from the governor of Louisiana—
not now, not ever."[33] Similar criminal investigations of out-of-state abortionists are

---

[28] Ex. 51, Final Judgment and Order Granting Permanent Injunction, *Texas v. Car-
penter*, No. 471-08943-2024 (Tex. Collin Cnty. Feb. 13, 2025).
[29] *See* Michael Hill, *New York clerk again refuses to enforce Texas judgment against
doctor who provided abortion pills*, Associated Press (July 14, 2025).
[30] *See* Alejandra O'Connell-Domenech, *Texas Attorney General Paxton sues New York
county clerk over abortion ruling*, The Hill (July 28, 2025).
[31] Ex. 52, Bill of Indictment, *Louisiana v. Carpenter et al.*, No. 250187 (La. 18th Jud.
Dist. Jan. 31, 2025).
[32] Ex. 53, Letter from Governor Jeff Landry to the Governor of the State of New York
(Feb. 11, 2025).
[33] *See* Pam Belluck et al., *Abortion Provider Won't Be Extradited to Louisiana, N.Y.
Governor Says*, The New York Times (Feb. 13, 2025).

pending in Florida. Based on Louisiana's experience, shield laws will likely pose a significant barrier to enforcing any convictions that may result.

***Third***, changes to Plaintiffs' abortion laws are creating an asymmetry of interests. On July 3, 2025, a circuit judge enjoined many of Missouri's abortion regulations, finding them preempted by a constitutional amendment approved in November 2024. The enjoined laws include Missouri's ban on elective abortion and a wide range of regulations regarding admitting privileges, pathological examinations, waiting periods, telemedicine, informed consent, and even facility licensing.[34]

On June 24, 2025, the Idaho Supreme Court approved a fiscal impact statement and ballot title for an initiative petition proposing a constitutional right to elective abortion through viability.[35] The decision allowed the amendment sponsor to begin collecting signatures.[36] If enough are obtained, the amendment will appear on Idaho's November 2026 general election ballot.

The Kansas Supreme Court discovered a broad, unenumerated right to elective abortion in the Kansas Constitution in 2019.[37] It "affirmed" that decision in 2024.[38]

---

[34] Ex. 54, Order, *Comprehensive Health of Planned Parenthood Great Plains et al. v. Missouri*, No. 2416-CV31931 (Mo. Cir. Ct. Jackson Cnty. July 3, 2025).

[35] Ex. 55, Substitute Op., *Idahoans United for Women and Families v. Labrador et al.*, No. 52636-2025 (Idaho June 24, 2025).

[36] *See* Kyle Pfannenstiel, *'End the ban:' Idaho organizers start gathering signatures for abortion rights ballot initiative*, Idaho Capital Sun (July 3, 2025).

[37] *Hodes & Nauser, MDs, P.A. v. Schmidt*, 440 P.3d 461, 464 (2019).

[38] *Hodes & Nauser, MDs, P.A. v. Kobach*, 551 P.3d 37, 44 (2024).

## ANALYSIS

### I. Movants are entitled to intervene as of right under FRCP 24(a)(2).

A party must meet four criteria to intervene as of right under FRCP 24(a)(2):

(1) the application . . . must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm.*, 834 F.3d 562, 565 (5th Cir. 2016). Movants satisfy each requirement.

### A. The motion is timely.

In the Fifth Circuit, timeliness "is not limited to chronological considerations but is to be determined from all the circumstances." *Id*. District courts are guided by the four factors provided in *Stallworth v. Monsanto Company*:

(1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.

558 F.2d 257, 264 (5th Cir. 1977). These factors are "a framework and not a formula." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001). While "[a] motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness," *id.*, each factor supports intervention here.

i. *A reasonable length of time has passed since Movants had reason to believe their interests are not adequately protected.*

"The first factor focuses on the time lapse between the applicant's receipt of actual or constructive knowledge of his interest in the litigation and the filing of his motion for intervention." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996). Time is not measured from the commencement of the action. *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). Instead, the clock starts when a party becomes aware that its interests "may be" no longer protected by the original parties. *Id.* at 1207.

Movants only recently became aware that Plaintiffs may no longer be in a position to adequately represent Movants' interests in this action. As described above, an initiative petition that would amend the Idaho Constitution to legalize elective abortion through viability was approved for circulation on June 24, 2025.[39] Then, on July 3, 2025, many of Missouri's abortion regulations—including its ban on elective abortion—were enjoined under a similar constitutional amendment adopted in 2024.[40] In Kansas, elective abortion remains legal through viability due to the Kansas Supreme Court's decision in *Hodes & Nauser, MDs, P.A. v. Schmidt*, 440 P.3d 461 (2019). These developments threaten Plaintiffs' ability to allege sovereign injuries as a basis for standing.

Plaintiffs' ability to represent Movants' interests is also hamstrung by the amended complaint. The 2000 Approval was clearly unlawful, and the FDA's

---

[39] Ex. 54, *Comprehensive Health of Planned Parenthood Great Plains*, *supra* n. 34.
[40] Ex. 55, *Idahoans United for Women and Families*, *supra* n. 35.

subsequent actions should be set aside for that reason alone. But the amended complaint, which was filed in January, dropped the states' requests for a declaration that mifepristone was unlawfully approved under Subpart H and a permanent injunction ordering the withdrawal of mifepristone and misoprostol as FDA-approved chemical abortion drugs.

However, Plaintiffs continued to argue that their claim against the 2019 approval of generic mifepristone depended on the invalidity of the 2000 Approval. Resp. to Mot. to Intervene, ECF No. 243 7 (Mar. 18, 2025) ("With respect to the generic approval, the States are asserting the *exact same* arguments the original Plaintiffs did."). On April 28, the Court determined that the amended complaint does not "directly challenge the lawfulness of the 2000 approval," nor does its challenge to the 2019 approval of generic mifepristone "depend on the validity of the 2000 approval." Memo. Op. and Order Granting Mot. to Intervene, ECF No. 246 10 (Apr. 28, 2025).

At that time, an administrative remedy seemed possible. The FDA had requested an extension of time to respond to the amended complaint, stating that the new administration was insufficiently familiar with the issues involved. Unopposed Mot. for Ext. of Time, ECF No. 238 ¶ 5 (Mar. 3, 2025). Movants hoped that, once familiarized, the new administration would choose not to defend its predecessors' illegal acts. However, on May 5, 2025, the FDA filed a motion to dismiss arguing that Plaintiffs' economic and sovereign injuries do not establish standing to challenge any of the FDA's actions on mifepristone. Reply, ECF No. 247 (May 5, 2025). In June and

July, Movants became aware that pursuing penalties against shield state abortionists may prove equally futile. *Supra* nn. 27-33.

June was also when the #WeCount report revealed a staggering increase in the number of illegal telehealth abortions being performed in Florida and Texas.

In sum, Movants did not learn of developments impeding Plaintiffs' ability to assert sovereign injury until June and July; did not receive clear notice that none of the amended complaint's remaining claims depend on the validity of the 2000 Approval until April; did not know whether the new administration would continue to defend the FDA's actions until May; did not know whether shield state officials would choose to obstruct enforcement of Movants' abortion laws until June and July; and did not become aware of the massive increase in illegal telehealth abortions being performed within their borders until June. Taking these developments as a whole, as instructed by the Fifth Circuit and applied by the Court when granting previous motions to intervene in this action,[41] it has been about two months since Movants became aware that their interests were no longer adequately represented by Plaintiffs.

Defendants may argue that the clock started earlier, perhaps when the amended complaint was filed in January. Even then, the delay would be reasonable under the circumstances. As explained in an affidavit submitted by the agency that manages the Florida Medicaid program, gathering evidence of economic injury is a time-consuming process. It involves filtering claims by diagnosis code, requesting

---

[41] *See* Suggestions in Support of Mot. to Intervene, ECF No. 152 at 13 (Nov. 3, 2023); Order Granting Mot. to Intervene, ECF No. 175 at 3 (Jan. 12, 2024).

medical records from hundreds of healthcare providers, waiting for responses, decrypting records, narrowing records through keyword searches, and manually reviewing records to determine whether treatment was related to mifepristone complications.[42] The Fifth Circuit has approved analogous delays for less compelling reasons. *See Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (reversing order finding intervention untimely based on a five-month delay and reminding district courts not to "place[] undue emphasis on the first of the *Stallworth* factors"); *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970) ("In the context of this lengthy, complicated litigation, based on a contract signed over a decade ago, we do not think that the Government forfeited its right to intervene solely by the passage of a year.").

*ii. Intervention would alleviate prejudice, not cause it.*

Though it is second on the list, "[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene." *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970). This factor "is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed." *Edwards*, 78 F.3d at 1002. "[M]ere inconvenience is not in itself a sufficient reason to reject as untimely a motion to intervene as of right." *McDonald*, 430 F.2d at 1073.

---

[42] Ex. 72, Declaration of Ann Dalton ¶ 11.

The Fifth Circuit's rule of thumb is that motions to intervene filed "before trial and any final judgment" do not cause prejudice. *Glickman*, 256 F.3d at 377; *see also Edwards*, 78 F.3d at 1001 ("[T]hat these motions were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation."); *Wal-Mart Stores*, 834 F.3d at 565-66 ("Because the [intervenor] sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the [intervenor's] motion was timely.").

This case is still at an early stage procedurally. It has not progressed to discovery, let alone trial. The Court has yet to rule on a single dispositive motion. Consequently, intervention will not prejudice existing parties. To the contrary, intervention is to the Defendants' benefit, considering "the only other realistic path for Intervenors is to file a separate lawsuit," which would duplicate effort and waste resources. Order Granting Mot. to Intervene, ECF No. 175 5 (Jan. 12, 2024); *see also Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2022 WL 974335, at *7 (N.D. Tex. Mar. 31, 2022) ("[T]he Court finds that permissive intervention will not cause undue delay or prejudice . . . . As discussed above, the state intervenors could bring their own suit against the defendants, challenging HISA on Tenth Amendment grounds. Had they done so, the time and expense of separate litigation would almost invariably cause the defendants greater prejudice, expense, and delay. They would have to defend against all of Texas's claims, largely duplicating their efforts spent in the present lawsuit.").

13

*iii. Movants will suffer prejudice if intervention is denied.*

"The third factor focuses on the prejudice the potential intervener would suffer if not allowed to intervene." *Glickman*, 256 F.3d 371. Movants' arguments on this factor are materially identical to those made in favor of Plaintiffs' motion for leave to intervene. First, an adverse ruling in this litigation could significantly affect Movants' ability to exercise their sovereign prerogatives to regulate the health and welfare of their inhabitants and protect their fiscs. *See infra* I.B. This is because any adverse decision in this action would have a "stare decisis effect" in a separate action, whether or not it creates binding precedent. *Espy*, 18 F.3d at 1207; *see infra* I.C.

In the same vein, any injunction issued in this case would necessarily affect the injunctive relief available in a separate proceeding. *See Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414, at *7 (5th Cir. May 15, 2025) ("The district court's analysis failed to assess how any potential remedy will be restricted by the injunction . . . . '[I]f a state or federal judge in a separate proceeding decided that the appellants' contentions were meritorious, he would be unable to award them effective relief without generating an injunctive command that would overlap or conflict with the [prior] order.'") (quoting *Stallworth*, 558 F.3d at 268).

Relatedly, because there are certain legal rights "associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal," *Espy*, 18 F.3d at 1202, denying intervention would prejudice Movants, *Glickman*, 256 F.3d at 379 (intervenor would suffer prejudice "as a nonparty [who] will not be able to participate in the trial concerning that ruling nor will it be able to appeal that ruling"); *Edwards*, 78 F.3d at 1002-03.

14

*iv. Unusual circumstances*

"The final factor in determining timeliness is the existence of unusual circumstances militating either for or against a determination that the application is timely." *Espy*, 18 F.3d at 1207. To the extent there are unusual circumstances present in this case, *see supra* I.A.i, they militate in favor of intervention.

### B. Movants have an interest relating to the property or transaction which is the subject of the action.

A party seeking to intervene as of right must assert "an interest related to the property or transaction at issue in the case." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005). The interest must be "concrete, personalized, and legally protectable." *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015). "Non-property interests are sufficient to support intervention when, like property interests, they are concrete, personalized, and legally protectable." *Brumfield v. Dodd*, 749 F.3d 339, 343 (5th Cir. 2014).

Preserving a "regulatory system" is one such interest. *See Wal-Mart Stores*, 834 F.3d at 566; *see also Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (holding that a state's "important sovereign interest in protecting [its] self-governing authority" and "in seeing that the scheme passed by [its] legislature is properly enforced" supports intervention as of right). A state's interest is "judged by a more lenient standard if the case involves a public interest question." *Brumfield*, 749 F.3d at 344.

Movants have both property and "regulatory system" interests in this action. As explained in the proposed complaint in intervention, the FDA's actions inflict (1)

economic injuries by, *inter alia*, requiring Movants to pay for emergency medical treatment through Medicaid, and (2) sovereign harms by frustrating enforcement of Movants' abortion laws. Any adjudication of the lawfulness of the FDA's actions will have a direct effect on these interests. And because the fate of chemical abortion is of great public interest, Movants are entitled to even greater lenience than is ordinally given under FRCP 24(a)(2). *See id.* ("Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed.").

### C. The disposition of this action may impair or impede Movants' ability to protect their interests.

"The third criterion that an applicant for intervention must satisfy is that the disposition of the case into which he seeks to intervene 'may, as a practical matter, impair or impede his ability to protect [that] interest.'" *Ross*, 426 F.3d at 760. Intervenors "do not need to establish that their interests *will* be impaired . . . only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield*, 749 F.3d at 344 (emphasis in original). After all, "[i]t would indeed be a questionable rule that would require prospective intervenors to wait on the sidelines until after a court has already decided enough issues contrary to their interests." *Id*.

The "stare decisis effect" of a district court's judgment is sufficient to "supply the requisite disadvantage to satisfy" the third *Strickland* factor. *Espy*, 18 F.3d at 1207. It matters not that a decision may not bind other district courts because "[t]he district court's ruling . . . will undoubtedly, unless changed, be relied upon as a precedent in future actions." *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d

416,424 (5th Cir. 2002). And any injunction issued in this case would necessarily affect the injunctive relief available in a separate proceeding. *See Gen. Land Off. v. Trump*, 2025 WL 1410414, at *7; *Stallworth*, 558 F.3d at 268. Thus, the disposition of this case may impair or impede Movants' ability to protect their interests in a separate action.

### D. Movants' interests are inadequately represented by Plaintiffs.

"The final requirement for intervention as a matter of right is that the applicant's interest must be inadequately represented by the existing parties to the suit." *Espy*, 18 F.3d at 1207. "The applicant need only show that representation 'may be' inadequate." *Id*. This burden "is not a substantial one." *Brumfield*, 749 F.3d at 345.

Movants satisfy this "minimal" burden. *Id*. Pending litigation in Missouri, an initiative petition circulating in Idaho, and state supreme court precedent in Kansas may compromise Plaintiffs' ability to establish standing for their claims. *See supra* I.A.i. Even if Missouri or Idaho's ban on elective abortion survive, Plaintiffs' abandonment of their claim against the 2000 Approval undermines their remaining claims and shows that Plaintiffs and Movants do not share the "same ultimate objective." *Wal-Mart Stores, Inc.*, 834 F.3d at 569; *compare* Am. Compl., ECF No. 217 (Jan. 16, 2025) (seeking a return to the pre-2016 REMS) *with* Ex. A, Proposed Compl. in Intervention (seeking to set aside the FDA's approval of mifepristone).

Additionally, the #WeCount report shows that the volume of telehealth abortions in Florida (16,820 since July 2023) and Texas (48,230) and is much larger than in Missouri (3,010), Kansas (3,020), and Idaho (1,010). These figures suggest that Movants have "more extensive interests" in this action than Plaintiffs. *See Brumfield*,

749 F.3d at 346 ("We cannot say for sure that the state's more extensive interests will in fact result in inadequate representation, but surely they might, which is all that the rule requires.").

Because Movants satisfy each *Strickland* factor, they are entitled to intervene.

## II. In the alternative, the Court should allow permissive intervention under FRCP 24(b)(1)(B).

Permissive intervention "is appropriate when: (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Texas v. United States*, No. 4:18-CV-00167-O, 2018 WL 10562846, at *2 (N.D. Tex. May 16, 2018) (citing *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987)). While permissive intervention is discretionary, the Fifth Circuit encourages district courts to "allow intervention where no one would be hurt and the greater justice could be obtained." *Texas*, 805 F.3d at 657.

### A. The motion is timely.

Movants acted promptly upon becoming aware that their interests in this action may no longer be adequately represented by Plaintiffs. *See supra* I.A.

### B. Movants' claims share questions of law and fact in common with the main action.

To intervene under Rule 24(b)(1)(B), a party must have a "claim or defense that shares with the main action a common question of law or fact." This aspect of the rule "has been construed liberally" in favor of intervention. *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006).

18

The amended complaint challenges three categories of action taken by the FDA: its 2016 REMS changes, its 2019 approval of generic mifepristone, and its 2023 REMS changes. Plaintiffs claim these actions are arbitrary, capricious, not in accordance with law, and therefore invalid under the Administrative Procedure Act. Movants seek to challenge the same actions on the same grounds. Ex. A, Proposed Compl. in Intervention.

### C. Permissive intervention will not result in undue delay or prejudice to existing parties.

"The analysis as to whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis." *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021). As with intervention as of right, courts in the Fifth Circuit find motions to intervene nonprejudicial when filed before discovery, trial, and final judgment. *See, e.g., U.S. Equal Emp. Opportunity Comm'n v. Wellpath LLC*, No. 5:20-CV-1092-DAE, 2021 WL 4096556, at *2 (W.D. Tex. Mar. 15, 2021) ("[T]he Court finds that granting intervention here will not delay or prejudice the adjudication of the original parties' rights. Babineaux filed her motion to intervene at the beginning of discovery . . . and before a trial date has been set."). This case has not progressed to discovery, let alone trial. Permitting intervention at this juncture would not prejudice existing parties. *See supra* I.A.ii.

Defendants may argue that Movants' challenge to the 2000 Approval will unduly delay resolution of this case. Not so. Movants' arguments against the 2000 Approval are the same arguments made by the original physician and member organization plaintiffs and by Missouri, Kansas, and Idaho in their original complaint in

intervention. Ex. A, Proposed Compl. in Intervention. Defendants have briefed the issue in this Court, the Fifth Circuit, and the Supreme Court. Thus, the claim "will not inject significant unrelated questions of law and fact." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2024 WL 1260639, at *7 (N.D. Tex. Jan. 12, 2024).

The Fifth Circuit's recent opinion in *General Land Office v. Trump* supports this conclusion. That case began as a challenge by the General Land Office of Texas ("GLO") against President Biden's proclamation of new "priorities" for border wall funding. *Gen. Land Off. v. Trump*, 2025 WL 1410414, at *1. GLO challenged the proclamation under several provisions of the United States Constitution. *Id.* After the district court entered a preliminary injunction, a private landowner, two environmental organizations, and three federal contractors moved to intervene. The intervenors raised new claims ranging from "contract disputes" to "property damage" to "environmental issues." *Gen. Land Off. of State of Texas v. Biden*, No. 7:21-CV-00272, 2024 WL 2753253, at *2 (S.D. Tex. May 28, 2024). The existing parties opposed the motion, arguing that the "inject[ion of] a wide range of new fact-specific interests" would unduly delay the litigation. The district court agreed and denied the motions to intervene. *Id.*

The Fifth Circuit reversed. The district court's analysis was "flawed," the panel said, because it confused inconvenience for prejudice. *Gen. Land Off.*, 2025 WL 1410414 at *6. The Fifth Circuit explained that "would-be intervenors have no right to relitigate issues already decided" and "no prejudice can come from renewed

discovery or pretrial proceedings, because an intervenor must accept the proceedings as he finds them." *Id.* (quoting *Glickman*, 256 F.3d at 378; *Espy*, 18 F.3d at 1206 n.3). Therefore, the appellate court found it "difficult to understand how [the existing parties] could have been harmed." *Id.*

Movants do not seek to relitigate issues already decided. The validity of the 2000 Approval, though thoroughly and repeatedly briefed, has not been decided. While the reintroduction of this issue may cause a new round of motions to dismiss, "such is the nature of nearly any intervention." *Nat'l Horsemen's*, 2022 WL 974335, at *7. Movants also note that intervention would likely eliminate other time-consuming issues, such as whether this Court is a proper venue for Plaintiffs' claims. *See* Reply, ECF No. 247 1-6 (May 5, 2025); Reply, ECF No. 248 1-4 (May 5, 2025).

### D. The Court should exercise its discretion to allow Movants to intervene.

While Movants meet the requirements of FRCP 24(b)(1)(B), permissive intervention still lies within the discretion of the Court. Movants submit that permitting intervention would "obtain the greater justice" and further judicial economy. Rule 24 is designed to facilitate a single adjudication of claims arising from the same underlying facts, as duplicative litigation "waste[s] the parties and the Court's time and resources." *See E.E.O.C. v. Commercial Coating Service, Inc.*, 220 F.R.D. 300, 302–03 (S.D. Tex. 2004). This case presents the "classic example" in which "the rights asserted by two groups . . . should be adjudicated in one action, rather than in two." *Stallworth*, 558 F.2d at 270. "With little strain on the court's time and no prejudice to the litigants, the controversy can be stilled and justice completely done." *Id.*

## CONCLUSION

For the foregoing reasons, the States of Florida and Texas respectfully request that the Court grant their Motion for Leave to Intervene as of right or, in the alternative, exercise its discretion to permit intervention in this action.

Respectfully submitted this 22nd day of August 2025.

**JAMES UTHMEIER**
Florida Attorney General

**DAVID DEWHIRST**
Chief Deputy Attorney General

**KEN PAXTON**
Texas Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant
Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for
Civil Litigation

/s/ *Samuel F. Elliott*

*Jeffrey Paul DeSousa (FL 110951)
Acting Solicitor General

Jason J. Muehlhoff (TX 24135719)
Chief Deputy Solicitor General

*Samuel F. Elliott (FL 1039898)
Deputy Solicitor General

Office of the Florida Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 410-2672
samuel.elliott@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

/s/ *Amy Snow Hilton*

**AMY SNOW HILTON**
Chief, Healthcare Program
Enforcement Division
Texas State Bar No. 24097834

**KATHERINE PITCHER**
Assistant Attorney General
Texas State Bar No. 24143894

Office of the Texas Attorney General
PO Box 12548
Austin, TX 78711-2548
Telephone: 512-936-1709
Facsimile: (512) 499-0712
amy.hilton@oag.texas.gov
katherine.pitcher@oag.texas.gov

*Counsel for Plaintiff State of Texas*

22

*Pro hac vice application forthcoming