IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

STATE OF MISSOURI, *et al.*,

      Intervenor Plaintiffs,

v.

                            2:22-CV-223-Z

U.S. FOOD AND DRUG
ADMINISTRATION, *et al.*,

      Defendants,

and

DANCO LABORATORIES, LLC, *et al.*,

      Intervenor Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Motion to Dismiss Intervenor-States' Amended Complaint ("Defendants' Motion") (ECF No. 218), filed January 18, 2025, and Intervenor-Defendant Danco Laboratories, LLC's Motion to Dismiss Intervenor-States' Amended Complaint ("Danco's Motion") (ECF No. 221), filed January 28, 2025 (together, the "Motions"). The Court granted Intervenor Plaintiffs leave to file a consolidated response to the Motions. ECF Nos. 226, 227. Intervenor Plaintiffs responded to the Motions on February 20, 2025. ECF No. 228. Defendants and Danco replied on May 5, 2025, after the Court granted a deadline extension. ECF Nos. 247, 248, 241. On August 22, 2025, Texas and Florida also moved to intervene. ECF No. 254. Louisiana followed suit on September 19, 2025. ECF No. 264.

The Motions are now ripe. Having considered the Motions, briefing, and relevant law, the Court **GRANTS** Defendants' Motion and **DENIES as MOOT** Danco's Motion. The Court also **DENIES as MOOT** Texas, Florida, and Louisiana's Motions to Intervene. This case is **TRANSFERRED** to the Eastern District of Missouri under 28 U.S.C. Section 1406(a).

BACKGROUND

Several doctors and four medical associations ("Original Plaintiffs") brought this case in 2022 to challenge the Food and Drug Administration's ("FDA") 2000 approval of name-brand mifepristone, its 2019 approval of generic mifepristone, and its subsequent 2016 and 2021 loosening of federal regulations of mifepristone. ECF No. 1. This Court permitted Danco, the New Drug Application ("NDA") holder for name-brand mifepristone, to intervene. ECF No. 33. Then, this Court granted in part the Original Plaintiffs' preliminary-injunction motion and stayed the effective date of the challenged FDA actions under 5 U.S.C. Section 705. ECF No. 137.

Defendants and Danco immediately appealed and moved the Fifth Circuit to stay the preliminary injunction. The Fifth Circuit partially stayed the preliminary injunction and reinstated the FDA's approval of name-brand mifepristone, pending the appeal's outcome. *All. for Hippocratic Med. v. FDA*, No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023). Defendants and Danco then went to the Supreme Court, which entirely stayed the preliminary injunction pending the Fifth Circuit's or the Supreme Court's potential decision on the merits. *Danco Lab'ys, LLC v. All. for Hippocratic Med.*, 143 S. Ct. 1075 (2023) (mem.).

After extensive oral argument, the Fifth Circuit issued its merits ruling on August 16, 2023. *All. for Hippocratic Med. v. FDA*, 78 F.4th 210 (5th Cir. 2023), *rev'd sub nom.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024). The Fifth Circuit held that the Original Plaintiffs "made a 'clear showing' of associational standing." *Id.* at 233 (quoting *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017)); *see also All. for Hippocratic Med. v. FDA*, 117 F.4th 336, 340 (5th Cir. 2024) (Ho, J., concurring) ("We all agreed that [the Original Plaintiffs had standing]. No member of this court disagreed—not on the motions panel, the merits panel, or the en banc court."). The

Fifth Circuit affirmed that the Original Plaintiffs faced imminent, and legally cognizable, conscience and economic harms. *Id.* at 233–37.

And the Fifth Circuit rejected Defendants' argument that federal conscience protections sufficiently alleviated the Original Plaintiffs' conscience injuries, finding that the federal government engaged in duplicitous "inconsistencies" about those protections between this case and others concerning the Emergency Medical Treatment and Labor Act ("EMTALA"). *All. for Hippocratic Med.*, 78 F.4th at 237 ("The inconsistencies between the Government's position in *Texas v. Becerra* and FDA's position here tend to rebut the notion that Doctors are free to refuse treatment to mifepristone patients.").

Although the Fifth Circuit did not fully address the issue of third-party standing, it held that the Original Plaintiffs "likely" had a closer relationship with their patients than abortion providers do with theirs, citing Supreme Court precedents that hold abortion providers have standing to invoke their patients' rights. *Id.* at 240, 240–41 (citing *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2118–19 (2020), *abrogated by, Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)). Thus, consistent application of Supreme Court precedent—no matter the plaintiff's political persuasions—meant this case was not "materially different" than cases where abortion providers had standing based on their patients' rights. *Id.* at 240 (citing *June Med. Servs.*, 140 S. Ct. at 2118–19; *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016), *abrogated by, Dobbs*, 142 S. Ct. 2228; *Gonzales v. Carhart*, 550 U.S. 124, 133 (2007)); *see also All. for Hippocratic Med.*, 117 F.4th at 342 (Ho, J., concurring) ("[E]very member of our court agrees that we apply the same Article III principles whether you're black or white, Republican or Democrat, environmentalist or evangelical." (alteration in original) (quoting *Jackson Mun. Airport Auth. v. Harkins*, 98 F.4th 144, 148 (5th Cir. 2024) (Ho, J., concurring))); *cf. All. for Hippocratic Med.*, 602 U.S. at 398 (Thomas, J., concurring) ("So, just as abortionists lack

standing to assert the rights of their clients, doctors who oppose abortion cannot vicariously assert the rights of their patients.").

Unlike the Fifth Circuit, the Supreme Court accepted "the Government's view" that federal conscience protections alleviated the alleged conscience injuries and held the Original Plaintiffs "lack standing." *All. for Hippocratic Med.*, 602 U.S. at 374, 389. That is, the Supreme Court ratified the Solicitor General's argument: that the "Government . . . *disclaimed*" a reading of EMTALA that would require doctors to perform emergency abortions against their consciences—a reading that the Government affirmatively *endorsed and argued for* elsewhere. *Id.* at 389 (emphasis added); *see also All. for Hippocratic Med.*, 117 F.4th at 341 (Ho, J., concurring) ("[T]he Government switched positions before the Supreme Court."). In short, "the Court reversed" the Fifth Circuit "because the Government reversed." *All. for Hippocratic Med.*, 117 F.4th at 341 (Ho, J., concurring). Accordingly, the Supreme Court held the Original Plaintiffs never had standing, reversed the Fifth Circuit's judgment, and remanded this case to the Fifth Circuit. *All. for Hippocratic Med.*, 602 U.S. at 396–97 ("Here, the plaintiffs have failed to demonstrate that FDA's relaxed regulatory requirements likely would cause them to suffer an injury in fact."). The Fifth Circuit, in turn, remanded the case to this Court for further proceedings. *See All. for Hippocratic Med.*, 117 F.4th at 340.

After the Fifth Circuit's decision, but before the Supreme Court granted certiorari, the states of Missouri, Idaho, and Kansas ("Intervenor Plaintiffs") sought to intervene as plaintiffs. ECF No. 151; *FDA v. All. for Hippocratic Med.*, 144 S. Ct. 537 (Dec. 13, 2023) (mem.). This Court granted intervention in January 2024, and the Intervenor Plaintiffs filed their Intervenor Complaint. ECF Nos. 175, 176. After the Supreme Court's decision, Intervenor Plaintiffs moved to amend their complaint. ECF No. 195. And the Original Plaintiffs voluntarily dismissed, leaving only the Intervenor Plaintiffs. ECF Nos. 203, 206. This Court granted the Intervenor

Plaintiffs leave to amend their complaint, explaining that Defendants' venue concerns were best addressed with the benefit of full briefing under the proper motion to dismiss standard. *See* ECF No. 215 at 3 ("Unlike in the cases Defendants and Intervenor Defendant cite, venue remains disputed here and should be properly dealt with at a phase where each party may fully argue the issue.").

Defendants and Danco filed the instant Motions seeking dismissal of the Intervenor Plaintiffs' Amended Complaint. ECF Nos. 218, 221. While briefing for the Motions continued, GenBioPro, Inc. ("GenBioPro"), the entity manufacturing generic mifepristone and the holder of the FDA's Abbreviated New Drug Application to market generic mifepristone, moved to intervene as a defendant. ECF No. 229. The Court permitted GenBioPro's intervention. ECF No. 246. GenBioPro joined the pending Motions. ECF No. 249. All briefing for the Motions concluded on May 5, 2025.[1] Months later, and nearly two years after Missouri, Idaho, and Kansas filed their Motion to Intervene, the states of Texas and Florida also moved to intervene as plaintiffs on August 22, 2025. ECF No. 254. Louisiana followed suit, filing a separate Motion to Intervene on September 19, 2025. ECF No. 264.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) permits defendants to seek a case's dismissal or transfer for "improper venue." Once a party moves for dismissal under Rule 12(b)(3), the party asserting that venue is proper typically carries the burden of establishing venue. *See Lawson v. U.S. Dep't of Just.*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021) ("Plaintiff has the burden to establish venue is proper in the Northern District of Texas."); *see also Freedom Coal. of Drs. for Choice v. Ctrs. for Disease Control & Prevention*, No. 2:23-CV-102, 2023 WL 9105435, at *2 (N.D.

---

[1] Despite the change from a Democratic to a Republican presidential administration in January 2025, the FDA has consistently defended broad availability of mifepristone throughout this litigation.

Tex. Nov. 3, 2023) ("[M]ost district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum." (quoting *Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017))); *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 458 (S.D. Tex. 1996) (finding that not requiring plaintiffs to establish venue "would circumvent the purpose of the venue statutes" (internal quotation omitted)). "Put simply, if a plaintiff cannot defend its choice of venue, the case does not belong there in the first place." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-CV-206, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023). When reviewing a motion to dismiss for improper venue, courts must accept all allegations in the complaint as true and resolve all conflicts in favor of the plaintiff. *See id.*

28 U.S.C. Section 1391 governs "the venue of all civil actions" in district courts. 28 U.S.C. § 1391(a)(1). In actions such as this one, where a defendant is an officer or employee of the United States or a federal agency, venue is proper in three scenarios. First, venue is proper in a district where a "defendant in the action resides." *Id.* § 1391(e)(1)(A). Second, it is proper in a district where a "substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(e)(1)(B). And third, it is proper in a district where the "plaintiff resides." *Id.* § 1391(e)(1)(C).

If a plaintiff does not meet Section 1391's venue strictures, then Congress has mandated that courts must dismiss the case or, "if it be in the interest of justice," transfer it to a district of proper venue. 28 U.S.C. § 1406(a). Thus, if "venue is challenged" and the court finds that venue is improper, "the case *must* be dismissed or transferred under [Section] 1406(a)." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) (emphasis added).

When Section 1406 requires dismissal or transfer, it is "well-settled" that courts "'generally prefer transfer to dismissal.'" *Turentine v. FC Leb. II LLC*, No. 3:22-CV-1625, 2022

WL 16951647, at *2 (N.D. Tex. Nov. 15, 2022) (quoting *Carter v. H2R Rest. Holdings, LLC*, No. 3:16-CV-1554, 2016 WL 4507459, at *4 (N.D. Tex. July 15, 2016) (collecting cases)); *see also Springboards to Educ., Inc. v. Hamilton Cnty. Read 20*, No. 3:16-CV-2509, 2017 WL 3023489, at *5 (N.D. Tex. July 14, 2017) ("Courts generally prefer transfer to dismissal, and this Court is no different."). The Court has discretion to decide whether to transfer or dismiss. *See Springboards*, 2017 WL 3023489, at *6; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008). But transfer should be preferred when it would "prevent waste of time, energy, and money" or "protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Autoflex Leasing-Dall. I, LLC v. Autoflex LLC*, No. 3:16-CV-2389, 2017 WL 713667, at *6 (N.D. Tex. Feb. 23, 2017). In short, "the interest of justice generally favors transferring a case to an appropriate forum." *Willis v. Green Tree Servicing, LLC*, No. 14-1544, 2015 WL 9809939, at *2 (D.D.C. Mar. 5, 2015).

## ANALYSIS

Defendants and Danco argue that the Intervenor Plaintiffs cannot continue litigating in the Northern District of Texas now that the Supreme Court has held the Original Plaintiffs lacked standing to sue. *See* ECF No. 219 at 7, 9–13. They note that the Intervenor Plaintiffs do not satisfy any of the three avenues Section 1391(e) provides for establishing venue. And they argue that the Intervenor Plaintiffs cannot continue benefitting from the Original Plaintiffs' satisfaction of the venue requirement because the Original Plaintiffs never, in the Supreme Court's estimation, brought a proper case or controversy. Defendants contend that it "would eviscerate the venue statute's requirements" to permit parties who can establish venue, but not jurisdiction, to file a case, then allow intervening plaintiffs to continue it once the original plaintiffs leave. *Id.* at 12.

7

Piggybacking on the Original Plaintiffs' venue, Intervenor Plaintiffs claim that standing can exist but later be lost. *See* ECF No. 228 at 14–15 ("[T]he private plaintiffs *did* have standing when they first brought their suit. . . . [Then they] los[t] standing." (emphasis in original)). Intervenor Plaintiffs do not argue they independently satisfy any of the three ways plaintiffs can establish venue under Section 1391(e). In fact, Section 1391 appears not once in their briefing. *See* ECF No. 228. Rather, Intervenor Plaintiffs seek to reframe Defendants' and Danco's Motions as an attempt to reconsider this Court's "earlier intervention decision." *Id.* at 8. They ask the Court to accept their arguments that (1) standing can fluctuate over time, (2) the Original Plaintiffs had standing when the Court granted their intervention regardless of the Supreme Court's holding, and (3) they can continue enjoying the benefit of the Original Plaintiffs' venue without independently satisfying Section 1391(e)'s requirements, long after the Original Plaintiffs have left. *See id.* at 7, 11–12, 16–17.

Defendants challenge the Intervenor Plaintiffs' Amended Complaint on other threshold grounds besides venue. *See* ECF No. 219 at 8–15. But they focus their Motion on their venue challenge. And district courts have "leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Daves v. Dall. Cnty.*, 64 F.4th 616, 623 (5th Cir. 2023) (quoting *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)). This leeway is not "boundless." *Id.* at 655 (Higginson, J., concurring in part and dissenting in part). But if jurisdiction is difficult to determine while another threshold issue, like venue, is clear, then courts may evaluate the simpler threshold issue first. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000) (holding that "lower courts facing multiple grounds for dismissal" may "consider the complexity of subject-matter jurisdiction issues" along with "federalism" and "judicial economy and restraint concerns" to dismiss for a different threshold issue "before considering challenges to its subject-matter jurisdiction"); *see also Sinochem*, 549

U.S. at 436 ("But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.").

Here, venue is an appropriate threshold issue to consider before subject-matter jurisdiction. In *Sinochem*, the Supreme Court held that a district court properly considered *forum non conveniens* before subject-matter jurisdiction. 549 U.S. at 436. It follows that venue is also an appropriate threshold issue: While Section 1406(a) *requires* dismissal or transfer when venue is improper, transfer under the *forum non conveniens* doctrine lies within a court's discretion.

Other district courts have likewise evaluated venue before other threshold issues. *See, e.g., GHJ Holdings, Inc. v. Mag Instrument, Inc.*, No. 5:10-CV-230, 2011 WL 13223645, at *2 (E.D. Tex. June 17, 2011) ("Resolving venue first is particularly appropriate here . . . ."); *Seariver*, 952 F. Supp. at 460 ("If Plaintiffs' claims raise a genuine issue of standing, the question must be addressed by a court with proper venue."); *Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Regul. Council*, 720 F. Supp. 3d 461, 474 (W.D. La. 2024) ("[B]ecause the Court has determined that venue is not proper . . . without the Individual Plaintiffs as parties, the Court need not consider the Article III standing of the Association Plaintiffs."). In this case, evaluating standing first would demand analyzing Missouri, Idaho, and Kansas's injuries from several different FDA actions, and considering whether those injuries are too far removed from each of the FDA's actions for each state. This is a "complex[]" inquiry. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018). But evaluating venue requires only a straightforward application of Section 1391(e)'s text, together with a consideration of the residual effect of the Original Plaintiffs' case. Thus, venue is the clearer threshold issue to evaluate here. *See id.* ("We hold that the district court acted within its discretion in deciding the

9

issues of personal jurisdiction and *forum non conveniens* before that of subject-matter jurisdiction."); *see also Wellogix, Inc. v. SAP Am., Inc.*, 648 F. App'x 398, 400 (5th Cir. 2016).

Intervenor Plaintiffs also argue that, by intervening, Danco waived its venue objection. *See* ECF No. 228 at 12. To save its Motion, Danco argues for a distinction without a difference, attempting to distinguish between intervention that occurs before the Intervenor Plaintiffs themselves intervened and intervention that occurs after. *See* ECF No. 248 at 5 ("But Danco intervened in the Alliance Plaintiffs' lawsuit *before* the States intervened." (emphasis in original)).

The distinction Danco identifies is not legally relevant. By intervening at all, Danco waived its venue objection. *See* 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1918 (3d ed. 2025) ("The intervenor cannot question venue. By voluntarily entering the action the intervenor has waived the privilege not to be required to engage in litigation in that forum."); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-CV-235, 2018 WL 2722051, at *2 (E.D. Tex. June 6, 2018) ("[M]any [c]ourts have addressed this exact issue, holding that an intervenor cannot object to venue. Commentators have identified this position to be a well-established, general legal principle." (internal citation omitted)); 6 MOORE'S FEDERAL PRACTICE § 24.22 (3d ed. 2025) ("A party who intervenes as plaintiff or defendant may not object to the venue chosen for the action. Since the intervenor specifically invoked the jurisdiction of the court, it waives any potential venue objections."). And "[i]n any event, the Government's venue objection puts the issue squarely before the Court," even without considering Danco's Motion. ECF No. 248 at 5. Thus, Danco's Motion is **DENIED as MOOT**, and the Court does not consider its arguments.

## I. The Intervenor Plaintiffs Do Not Satisfy the Venue Statute's Requirements

Though the Court cannot explain the Supreme Court's ratification of the Government's contradictory positions on federal conscience protections, its standing ruling governs the remainder of this case. "Both [this Court] and the [Fifth Circuit] applied governing Court precedent" and concluded the Original Plaintiffs had standing. *All. for Hippocratic Med.*, 117 F.4th at 340 (Ho, J., concurring). But according to the Supreme Court, the Original Plaintiffs never had a jurisdictionally valid case. Thus, the Court must decide whether the Intervenor Plaintiffs may continue a case initiated by parties who never had standing.

### A. The Original Plaintiffs' Venue Does Not Extend to the Intervenor Plaintiffs

Intervenor Plaintiffs' venue argument relies entirely on the fact that the Original Plaintiffs satisfied the venue statute's requirements. *See* ECF No. 228 at 11–17. They argue that venue is only evaluated once: at the moment of intervention. Once venue is satisfied, the Intervenor Plaintiffs contend, then it may never be raised again. *Id.* at 11 ("Defendants do not dispute that venue is proper when the States successfully intervened. That is enough."). However, the Intervenor Plaintiffs' argument would require this Court to hold that standing can be won and lost—and that if an intervenor continues a case after the original parties without jurisdiction cease litigating it, then the intervenor need not independently satisfy threshold requirements. Both arguments are wrong.

First, it is "well-settled" that a party may only intervene in an "existing suit within the court's jurisdiction." *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (internal quotation omitted). If a jurisdictionally valid case does not exist, then intervention is impermissible. *See Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 526 (5th Cir. 1980); *In re Greyhound Sec. Litig.*, No. 3:95-CV-2103, 1997 WL 531317, at *3 (N.D. Tex. Aug. 15, 1997) ("By its very nature intervention presupposes pendency of an action in a court of competent

11

jurisdiction . . . ." (quoting *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974))). The Supreme Court has long affirmed this view and held that "rights to intervene . . . presuppose an action duly brought under its terms." *U.S. ex rel. Tex. Portland Cement Co. v. McCord*, 233 U.S. 157, 163 (1914).

Decades of Supreme Court precedent led every jurist who assessed this case to conclude that the Original Plaintiffs had a jurisdictionally valid case. The Supreme Court reinterpreted those precedents and thereby ratified the Government's contradictory arguments to hold otherwise. It alone has that prerogative, and it is not the province of lower courts to defy the Supreme Court's "express command." *All. for Hippocratic Med.*, 117 F.4th at 340 (Ho, J., concurring). After the Supreme Court's decision, this Court must conclude that the Original Plaintiffs never had a jurisdictionally valid case.

The Intervenor Plaintiffs' innovative theory of won-and-lost standing does not change this conclusion. They misread Judge Ho's remand concurrence in this case to claim that the Original Plaintiffs "did have standing when they sued" and only "lost standing" after the Supreme Court's decision. ECF No. 228 at 8. But Judge Ho did not assume that standing can be won and lost as Intervenor Plaintiffs surmise. He wrote only that every court to consider the case had "*determine[d]*" the Original Plaintiffs had standing before the Supreme Court disagreed. *All. for Hippocratic Med.*, 117 F.4th at 340 (emphasis added). And he explained the "Supreme Court has now reversed." *Id.* All true. Nowhere, however, does Judge Ho take the position that the Original Plaintiffs "*did* have standing when they first brought their suit" or that the Original Plaintiffs initially had standing and only later were "deprived" of it. ECF No. 228 at 14, 15 (emphasis in original).

He does not do so for the simple reason that "standing is assessed as of the date on which suit was filed." *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 449 (5th Cir. 2019)

(citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." (emphasis added)). The Supreme Court, regardless of any lower-court rulings to the contrary, "assure[s]" itself that a plaintiff "had Article III standing at the *outset* of the litigation." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (emphasis added). This is because standing is different than mootness. "Mootness has been described as 'the doctrine of standing set in a time frame.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *Geraghty*, 445 U.S. at 397). *But see Friends of the Earth*, 528 U.S. at 190 (recognizing that "the description of mootness as 'standing set in a time frame' is not comprehensive"). Even if that description oversimplifies matters, it illustrates that the injury underpinning standing must generally "continue throughout [the litigation's] existence." *Arizonans for Off. Eng.*, 520 U.S. at 68 n.22 (internal quotation omitted). Otherwise, the case or controversy is moot.[2] Thus, a case may be moot when the injury giving rise to standing disappears. But the loss of a once-present injury is not the same as holding that a plaintiff lacks standing. When a court holds that a plaintiff lacks standing, it means the plaintiff did not have standing "at the outset." *Friends of the Earth*, 528 U.S. at 180.

That is exactly what the Supreme Court held here. It did not hold the Original Plaintiffs "*lost* standing." ECF No. 228 at 8 (emphasis added). The Court held, rightly or wrongly, that they "*lack* standing." *All. for Hippocratic Med.*, 602 U.S. at 372 (emphasis added). That is, the Court looked to the *time of filing* to find that the Original Plaintiffs "have failed to establish

---

[2] Stated differently, standing differs from mootness because standing "must exist at the commencement of the litigation." *Id.* This is a one-time inquiry, though the standards for proving standing rise as the case continues. *See Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Article III standing." *Id.* at 393. It follows that the Original Plaintiffs never "establish[ed] a justiciable case or controversy in federal court." *Id.* at 396.

Thus, in the Supreme Court's view, Intervenor Plaintiffs did not intervene in a jurisdictionally valid case. *See Harris*, 768 F.2d at 675. That flaw means the Intervenor Plaintiffs cannot benefit from the Original Plaintiffs' venue. *See Truvillion*, 614 F.2d at 526 ("A different case is presented, however, when the earlier suit . . . was jurisdictionally or procedurally defective. There is no right and no obligation to intervene in a defective suit.").

To hold otherwise would require turning a blind eye to Article III's case-or-controversy requirement. If a party over whom a federal court never had jurisdiction could nevertheless confer the benefit of venue to a future intervenor, then the intervenor would bypass requirements it otherwise must meet. And those venue requirements would only be satisfied by way of a case that, in essence, never existed. Just as federal courts may not issue advisory opinions, they also cannot permit the benefits of satisfied venue to flow to new parties when venue was only "satisfied" in a case that was never properly in federal court. Both scenarios improperly purport to give legal effect to rulings issued without the case-or-controversy requirement being satisfied. And in both scenarios, the result is that the ruling has no legal effect, because it is as if that ruling never happened.

Here, because the Supreme Court held that a proper case or controversy never existed, this Court's determination that the Original Plaintiffs satisfied the venue requirements was merely advisory. Intervenor Plaintiffs cannot satisfy the venue statute's requirements simply because this Court previously found that the parties to an invalid case did. That is, Intervenor Plaintiffs cannot piggyback on the Original Plaintiffs' venue when the Original Plaintiffs were never properly before this Court.

Because there was no jurisdictionally valid case in which the Intervenor Plaintiffs could intervene, they must satisfy a "recognized exception[]" to the rule that an "existing suit within

14

the court's jurisdiction is a prerequisite of an intervention." *In re Greyhound Sec. Litig.*, 1997 WL 531317, at \*5.

## B. Intervenor Plaintiffs Must Independently Satisfy Venue to Maintain a Separate Suit

Where, as here, no valid case existed in which to intervene, a court may exercise its discretion and evaluate whether "the intervention could be treated as an original suit." *McCord*, 233 U.S. at 164. Such intervenors must have an "independent basis for jurisdiction" to be "treated as stating a wholly separate claim." *In re Greyhound Sec. Litig.*, 1997 WL 531317, at \*3 (quoting *Horn v. Eltra Corp.*, 686 F.2d 439, 440 (6th Cir. 1982)); *see also Arkoma Assocs. v. Carden*, 904 F.2d 5, 7 (5th Cir. 1990) ("When a separate and independent jurisdictional basis exists a federal court has the discretion to treat an intervention as a separate action, and may adjudicate it despite dismissal of the main action if failure to do so might result in unnecessary delay or other prejudice."). This prevents intervenors from continuing a case to "reviv[e] a defunct action." *In re Greyhound Sec. Litig.*, 1997 WL 531317, at \*4. As the Supreme Court noted in *McCord*, the intervention must be able to be "treated as an original suit." 233 U.S. at 164. And the Court has since affirmed *McCord*'s holding. In *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, the Supreme Court explained that *McCord* treated the "intervention . . . as an original suit" because "the intervenor met the requirements that a plaintiff must satisfy" for an original suit. 585 U.S. 878, 891 (2018) (omission in original) (quoting *McCord*, 233 U.S. at 163–64).

Intervenor Plaintiffs argue that this exception only requires that they satisfy *jurisdictional* requirements, but "once a *statutory* requirement for getting into court has been satisfied, that is enough." ECF No. 228 at 13 (emphasis added). In their view, if an invalid case somehow validly satisfied the requirements of the venue statute, then intervenors must only allege federal jurisdiction and standing. They contend that venue "is not jurisdictional" and so

15

they may benefit from the Original Plaintiffs' satisfaction of it. *Id.* But they miss that the Original Plaintiffs never "g[ot] into court" in the first place and thus could not have "satisfied" the "statutory requirement." *Id.* Intervenor Plaintiffs heavily rely on *Harris v. Amoco Production Co.* 768 F.2d 669. They argue it holds that "jurisdictional requirements would bar an intervenor from continuing a suit, [but] procedural ones would not." ECF No. 228 at 13.

In *Harris*, the Fifth Circuit considered whether a district court could "retain jurisdiction" over an intervenor's claims "once those of the original plaintiffs ha[d] been dismissed" because the original plaintiffs "settled." 768 F.2d at 675, 674. The Fifth Circuit noted that an intervenor's "mere presence in an action does not clothe it with the status of an original party" but that an intervenor "need not always abandon its own claims merely because the main plaintiffs have dropped out." *Id.* at 675. *Harris* affirmed that "district courts have the 'discretion to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor.'" *Id.* (quoting *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965)). And it confirmed "that there are circumstances in which an intervenor can continue to litigate after dismissal of the party that originated the action." *Id.* at 676. The *Harris* court then evaluated in detail whether those "circumstances exist[ed]" in that case. *Id.* It concluded they did because a granular analysis of Title VII revealed the "procedural devices" Title VII requires plaintiffs to comply with before filing suit were "steps of economy." *Id.* at 678. And it held that the intervenor need not satisfy Title VII's "procedural prerequisites" because the "raison d'etre" [sic] of those prerequisites was "absent." *Id.*

*Harris* does not save the Intervenor Plaintiffs for two reasons. First, *Harris* does not shallowly hold that an original plaintiff can satisfy all procedural requirements while an intervenor must only satisfy jurisdictional ones to continue the intervenor's claims after the original plaintiff departs. That is quite a wider holding than *Harris*'s. Instead, *Harris* only held

16

that the intervenor need not satisfy the particular procedural requirements relevant in that case to continue the suit. Indeed, the *Harris* court devoted five pages to analyzing the procedural requirements in detail to determine whether the intervenor must satisfy those particular requirements again. *See id.* at 676–82. And it concluded "that the *statute* enables the *EEOC* to maintain suit at the sound discretion of the district court." *Id.* at 682 (emphasis added); *see also id.* at 681 ("Section 706(f)(1) dictates only the method of getting [jurisdiction], and as we have discussed, nothing in the statute suggests that a valid intervention by the Commission, once present, need be dispelled; indeed, the scheme as a whole compels the reverse.").

*Harris* does not hold that an original plaintiff must satisfy only procedural requirements while an intervenor must only satisfy jurisdictional ones. Instead, it narrowly holds that in "appropriate circumstances," an intervenor need not meet particular "statutory" requirements deemed procedural if "the purpose the provision is intended to serve" is absent. *Id.* at 679. And based on an extensive review of the record before the court in that case, the Fifth Circuit determined that such a purpose *was* absent. Thus, *Harris* does not support Intervenor Plaintiffs' broad assertion that they must satisfy only jurisdictional requirements to continue this case.

Second, *Harris* presupposes that the original plaintiffs had a proper case before the court. *Harris* makes clear that it is "well-settled that 'an existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit.'" 768 F.2d at 675 (quoting *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926)). To that end, the Fifth Circuit concluded the original plaintiffs in *Harris* had brought a jurisdictionally valid case. *See id.* at 678 (noting "the parties are already in court pursuant [to a] statutory scheme"). Once a case is properly in federal court, *Harris* only holds that an intervenor need not "comply[] with the calisthentics [sic] of an alternative route." *Id.* Here, after the

17

Supreme Court's June 2024 decision, the Court must hold that the Original Plaintiffs never had a case before this Court in the first place.

In sum, *Harris*'s holding is limited. It holds only that a detailed examination of a particular statutory scheme may reveal that it would be nonsensical to require an intervenor to independently satisfy certain procedural requirements—provided the original plaintiff brought a valid case in the first instance. It does not hold, as Intervenor Plaintiffs aver, that an intervenor need not satisfy *any* procedural requirements when a court considers whether the intervenors may continue the case in the original plaintiff's absence. As discussed, intervention requires a valid underlying case. *Harris* had one. The Original Plaintiffs here did not.

Returning to *McCord*: If the underlying case was never a proper case or controversy, a court must examine whether "the intervention could be treated as an original suit." 233 U.S. at 164. This case presents a "different case" than in *Harris* because here, "the earlier suit" brought by the Original Plaintiffs "was jurisdictionally . . . defective." *Truvillion*, 614 F.2d at 526. "[I]ntervention presupposes the pendency of an action in a court of competent jurisdiction . . . ." 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1918 (3d ed. 2025). If no such action existed, the intervenor's claim can only continue "as if it were a *separate* suit." *Id.* (emphasis added); *Allen Exch. Partners, Ltd. v. CLA Allen, LLC*, No. 4:21-CV-870, 2022 WL 2910014, at *1 (E.D. Tex. July 22, 2022) ("In cases in which intervention occurs *before* dismissal, 'a federal court has the discretion to treat an intervention as a *separate action* . . . .'" (emphasis added) (quoting *Arkoma*, 904 F.2d at 7)). Of course, this means the intervenor must then satisfy "by itself the requirements of jurisdiction *and venue*." 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1918 (3d ed. 2025) (emphasis added). Other district courts that have evaluated cases in a similar procedural posture have concluded the same. *See, e.g.*, *Kruse v. Wells Fargo Home Mortg., Inc.*, No. 02-CV-3089, 2006 WL 1212512, at *8 (E.D.N.Y. May 3, 2006)

("Nevertheless, when the original plaintiffs upon whose claims jurisdiction and venue are based are dismissed from the case, [intervenor] plaintiffs must offer independent grounds for venue.").

### C. Intervenor Plaintiffs Do Not Independently Establish Venue

Accordingly, the Court must ask whether the Intervenor Plaintiffs can independently establish venue. They cannot.

In 1962, Congress expanded the venue statute to give plaintiffs the option to sue federal agencies or officials in additional districts. *See* Ronald M. Levin, *Vacatur, Nationwide Injunctions, and the Evolving APA*, 98 NOTRE DAME L. REV. 1997, 2033 (2023); *Reuben H. Donnelley Corp. v. Fed. Trade Comm'n*, 580 F.2d 264, 267 (7th Cir. 1978) ("The congressional purpose in enacting [Section] 1391(e) was indeed to broaden the number of places where federal officials and agencies could be sued."). But even with these additional options, the Intervenor Plaintiffs satisfy none of Section 1391(e)'s three bases for venue.

First, no defendant resides in the Northern District of Texas. *See* 28 U.S.C. § 1391(e)(1)(A). The Intervenor Plaintiffs do not argue otherwise. Federal officials in their official capacity and federal agencies reside in "the place where [they] perform[] [their] official duties." *See Donnelley*, 580 F.2d at 266 n.3; *Williams v. United States*, No. C-01-024, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 23, 2001) ("For purposes of venue, all federal defendants reside in Washington, D.C."). It is "settled law" that a federal agency resides in the District of Columbia. *Donnelley*, 580 F.2d at 267. And the FDA performs its official duties at its headquarters in the District of Maryland. No defendant here resides in the Northern District of Texas, even if they may have offices in this district. *See id.* at 266.

Second, a "substantial part of the events or omissions giving rise to the" Intervenor Plaintiffs' claims did not occur in the Northern District of Texas. *See* 28 U.S.C. § 1391(e)(1)(B). The Intervenor Plaintiffs briefly allege in their Amended Complaint that a "substantial part of the facts, events or omissions giving rise to the claims occurred in this district." ECF No. 217 at

7. They then completely fail to argue why that is so. *See* ECF No. 228 (not once mentioning Section 1391 and nowhere attempting to claim the FDA's changes to the mifepristone regulations occurred in the Northern District of Texas). Thus, this potential basis for venue is abandoned because Defendants raised arguments against it that the Intervenor Plaintiffs made no attempt to rebut. *See* ECF No. 219 at 10–11; *Lawson*, 527 F. Supp. 3d at 896 ("[O]nce a defendant has moved to dismiss based on improper venue, the majority of courts place the burden of establishing venue on the plaintiff."); *Kellam v. MetroCare Servs.*, No. 3:12-CV-352, 2013 WL 12093753, at \*3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (quoting *Abraham v. Greater Birmingham Humane Soc'y Inc.*, No. 2:11-CV-4358, 2013 WL 1346534, at \*4 (N.D. Ala. Mar. 28, 2013))); *see also In re Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017).

Even if Intervenor Plaintiffs had argued this point, venue on this basis would fail. "Transactional venue occurs w[h]ere 'a substantial part of the events or omissions giv[e] rise to the claim.'" *Career Colls.*, 2023 WL 2975164, at \*2 (second alteration in original) (quoting 28 U.S.C. § 1391(e)(1)). Courts "look[] to see where the alleged wrongdoing occurred because this is where the actions or omissions 'giving rise to the claim' took place." *LaCombe v. Walt Disney Parks & Resorts U.S., Inc.*, No. 18-7689, 2019 WL 13248968, at \*3 (E.D. La. May 1, 2019); *see also Turentine*, 2022 WL 16951647, at \*2 ("[T]he Court looks to the defendant's conduct and where that conduct took place." (internal alteration and quotation omitted)). "If the wrongdoing is committed in one district and the impact of that wrongdoing is felt in another, then transaction venue is *usually* established in the former but not the latter." *LaCombe*, 2019 WL 13248968, at \*3 (emphasis added). It is true that transactional venue can sometimes be satisfied in the district where the burdens or effects of an "unlawful rule" are felt. *Career Colls.*, 2023 WL 2975164, at \*2 (quoting *Umphress v. Hall*, 479 F. Supp. 3d 344, 351 (N.D. Tex. 2020)). Even so, a

"party bringing the claim must be present in the district or division in some real capacity and burdened by the unlawful rule." *Id.* at \*3. Only then can the party experience the burdens or effects of the unlawful rule in that district. And even that may not always be sufficient. *See Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000). At minimum, the venue statute's "plain text" requires that a party must experience those burdens and effects in the claimed district. *Career Colls.*, 2023 WL 2975164, at \*2. It is not enough that nonparties experience them in that district. This is why the party attempting to establish venue, even if not residing in the district, must have some presence within it.

None of these requirements is met, or even alleged, here. Missouri, Idaho, and Kansas do not claim any presence in the Northern District of Texas. Nor do they argue that the Northern District of Texas experiences a greater share of the effects of the FDA's loosening of mifepristone's regulations than any other district. Quite naturally, Missouri, Idaho, and Kansas focus their allegations of harm on Missouri, Idaho, and Kansas. *See, e.g.*, ECF No. 217 at 116–18, 135–36, 114–15, 133–35, 163, 176, 181–82, 184, 111–13, 128–33, 174, 183–84. Of course, the Northern District of Texas does experience many of the effects of the FDA's deregulation of mifepristone. But it must experience a substantial part of them for venue to be established here. Otherwise, transactional venue would be proper in any district nationwide. Facially, that is not a plausible reading of Section 1391. In any event, the "alleged wrongdoing"—the FDA's loosening of mifepristone's regulations—took place in either the District of Maryland or the District of D.C. *LaCombe*, 2019 WL 13248968, at \*3. Intervenor Plaintiffs do not argue otherwise.

Finally, Missouri, Idaho, and Kansas do not reside in the Northern District of Texas. *See* 28 U.S.C. § 1391(e)(1)(C). "A state is held to reside in any district within it." 14D WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3815 (4th ed. 2025). Of course, the Northern District of Texas is not within Missouri, Idaho, or Kansas. Had the Texas Attorney General

21

joined the Intervenor Plaintiffs' Motion to Intervene back in November 2023, then this prong would be easily satisfied. *See* ECF No. 151; *Utah v. Walsh*, No. 2:23-CV-016, 2023 WL 2663256, at \*3 (N.D. Tex. Mar. 28, 2023) ("Texas resides everywhere in Texas."). But for whatever reason, Texas neglected to do so. The Attorney General's oversight means the Intervenor Plaintiffs do not satisfy the third basis for venue under 28 U.S.C. Section 1391(e). Accordingly, Intervenor Plaintiffs do not have venue.

### D. Texas's Belated Motion to Intervene Cannot Establish Venue

Nearly two years after Missouri, Idaho, and Kansas filed their Motion to Intervene, and months after briefing closed on Defendants' Motion, Texas and Florida filed their own Motion to Intervene. They argue that Texas's intervention would make this Court a proper venue for the Intervenor Plaintiffs' claims. *See* ECF No. 255 at 25.

As already noted, "intervention presupposes the pendency of an action in a court of competent jurisdiction." 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1918 (3d ed. 2025); *In re Greyhound Sec. Litig.*, 1997 WL 531317, at \*3 ("By its very nature intervention presupposes pendency of an action in a court of competent jurisdiction . . . ." (quoting *Cent. Motor Lines, Inc.*, 500 F.2d at 408)); *McCord*, 233 U.S. at 163 ("[R]ights to intervene . . . presuppose an action duly brought under its terms."). And just as "intervention cannot cure jurisdictional defects or create jurisdiction," "defects in venue cannot be cured by intervention." 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1918 (citing *Levenson v. Little*, 75 F. Supp. 575, 576 (S.D.N.Y. 1948) (holding that intervention could not establish venue where venue was improper under the original plaintiff's lawsuit)); *see also Truvillion*, 614 F.2d at 526 ("[A]n existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit. The same reasoning applies to a procedurally defective suit . . . ." (internal citations omitted)).

The Texas Attorney General failed to join the Intervenor Plaintiffs' Motion in November 2023, when the Original Plaintiffs were still part of this case and thereby rendered venue proper in this District. Had he done so then, venue plainly would be proper in this District. Texas cannot now intervene—in a case where venue in the Northern District of Texas is manifestly *improper* with only the Intervenor Plaintiffs as parties—in a belated attempt to establish venue. "Venue follows jurisdiction." 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1918 n.1 (3d ed. 2025). And again, just as "intervention cannot cure jurisdictional defects or create jurisdiction," by "the same token defects in venue cannot be cured by intervention." *Id.* § 1918. Even though venue is an affirmative defense and so not "strictly jurisdictional," in the sense that it "may be waived by the defendant," *United States v. Chagra*, 494 F. Supp. 908, 911 (D. Mass. 1980), it is still a basic procedural requirement without which a "case must be dismissed or transferred." *King v. Caliber Home Loans, Inc.*, 210 F. Supp. 3d 130, 135 (D.D.C. 2016) (quoting *Atl. Marine*, 571 U.S. at 55); *see also McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, No. 23-60494, --- F.4th ----, 2025 WL 2602899, at *12–13 (5th Cir. Sept. 9, 2025) (recognizing that a defense can be "jurisdictional in the sense" of limiting courts' power to adjudicate a case without being "jurisdictional in the narrow Rule 12(b)(1) [subject-matter jurisdiction] sense"). This Court cannot strain to distinguish between subject-matter jurisdiction and venue to hold that a party may intervene in a case that is jurisdictionally valid but procedurally defective. A "court's subject matter jurisdiction is necessarily established before intervention." *Ruiz v. Estelle*, 161 F.3d 814, 832 (5th Cir. 1998) (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1212–13 (11th Cir. 1989)). The same should hold true for venue.

Despite all this, neither late-intervening state perceives that improper venue poses an obstacle to their Motion to Intervene. They cite no law for the proposition that a party may intervene in a case where the plaintiffs who originally provided proper venue have been dismissed, and the remaining intervenor plaintiffs cannot establish venue. Nor do they argue

23

that even if such an intervention were permissible, it could remedy defects in venue. In fact, Section 1391, the venue statute, appears nowhere in their briefing. *See* ECF No. 255. They use the word "venue" only once, and only to point out that any potential venue defects would be resolved if Texas were a party to the case. *See id.* at 25 ("Movants also note that intervention would likely eliminate other time-consuming issues, such as whether this Court is a proper venue for Plaintiffs' claims.").[3] That may be so. But this does not mean this Court should, or even could, grant Texas's Motion to Intervene. At any rate, Texas and Florida make no attempt to confront the complex relationship[4] between intervention and venue.

Lastly, lower courts have "discretion to treat the intervenor's claim as if it were a separate suit and may entertain it if it satisfies by itself the requirements of jurisdiction and venue." 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1918 (3d ed. 2025); *see also Harris*, 768 F.2d at 675 ("[D]istrict courts have the 'discretion to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor.'" (quoting *Fuller*, 351 F.2d at 328)). Exercising that discretion would be illogical and impractical here, however, where the still-pending underlying action *must* be transferred or dismissed for improper venue. The more sensible course is to transfer or dismiss the case in its entirety, rather than allow Texas and Florida to sue in this District while the Intervenor Plaintiffs proceed with a substantially identical lawsuit elsewhere.

The Court accordingly finds that Texas and Florida's Motion to Intervene cannot establish venue in the Northern District of Texas. It follows that their Motion and Louisiana's Motion must be **DENIED as MOOT**.

---

[3] Louisiana, too, discusses venue only in passing, offering a conclusory statement that Texas and Florida's Motion "resolv[ed] any prior disputes over venue." ECF No. 265 at 18. In any event, even if Louisiana could properly intervene, their intervention would not establish venue in the Northern District of Texas.
[4] "[Q]uestions of jurisdiction presented by intervention have been much considered by the courts. By contrast, there is almost no law on how the requirements of venue apply when intervention is sought." 7C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1918 (3d ed. 2025).

24

## II. Transfer Is Appropriate

When venue is improper under Section 1391(e), Congress requires courts to dismiss the case or, "if it be in the interest of justice," to transfer the case to another district. 28 U.S.C. § 1406(a); *Atl. Marine*, 571 U.S. at 56 ("When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [Section] 1391[]. If it does, venue is proper; if it does not, venue is improper and the case must be dismissed or transferred under [Section] 1406(a).").

The Court transfers this case in the interest of justice. The interest of justice favors transfer because it is the "prefer[red]" way to resolve improper venue. *Springboards*, 2017 WL 3023489, at \*5; *Willis*, 2015 WL 9809939, at \*2. And the interest of justice favors transfer because it would "prevent waste of time, energy, and money" to transfer rather than dismiss. *Autoflex*, 2017 WL 713667, at \*6. Instead of returning this years-long case to square one, transferring will enable the transferee court to assess the administrative exhaustion and statute of limitations arguments that Defendants raise and allow that court to determine how the Original Plaintiffs' case relates to those concerns. But dismissal would sever any connection between the Intervenor Plaintiffs and Original Plaintiffs. That severance would predetermine that the Original Plaintiffs' case and citizen petitions have no relation to the Intervenor Plaintiffs' claims. And it would force the Intervenor Plaintiffs to begin again on those issues. *Cf.* Michael Krupka, Note, *Exasperated But Not Exhausted: Unlocking the Trap Set by the Exhaustion Doctrine on the FDA's REMS Petitioners*, 77 VAND. L. REV. 937, 939–40 (2024) (contrasting the FDA's regulation-breaking lethargy in reviewing citizen petitions with its vigorous attempts to catch petitioners in an "exhaustion trap"). "A transfer here would be in the interest of justice because it would avoid the costs and delay that would likely result from dismissal and refiling." *Turentine*, 2022 WL 16951647, at \*3. The Court declines to prompt such

25

a "waste of time" and "energy" for Intervenor Plaintiffs. *Autoflex*, 2017 WL 713667, at \*6. Here, "the interest of justice . . . favors transferring [this] case to an appropriate forum." *Willis*, 2015 WL 9809939, at \*2.

Intervenor Plaintiffs do not specify to which district they would like the case transferred should the Court hold that transfer is required. Indeed, their briefing seems not to recognize transfer as a possibility. Defendants argue dismissal is proper, but they propose transfer as an alternative. *See* ECF No. 219 at 13 ("[T]he States' Amended Complaint should be dismissed for lack of venue, or in the alternative transferred to a court with proper venue."). Defendants "reserve the right" to oppose Intervenor Plaintiffs' claims on other threshold grounds should the case transfer. *Id.* at 13 n.3. They argue that standing problems may preclude proper venue in either Missouri, Idaho, or Kansas. *Id.* The Court declines to prejudge any of these other threshold issues.

The Court transfers this case to the Eastern District of Missouri because it is an appropriate forum. The Court need not strain to determine the best forum. Rather, Section 1406(a) only requires transfer to "*any* district" where the case "could have been brought." 28 U.S.C. § 1406(a) (emphasis added). The Eastern District of Missouri is an accessible district with a major city where at least one party resides. *See Texas v. Mayorkas*, No. 6:23-CV-001, 2023 WL 5616184, at \*2 (S.D. Tex. Aug. 29, 2023) ("The Court remains steadfast in its interpretation of Section 1391 and the conclusion that a state is a resident at every point within its borders."); *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1328 (N.D. Ala. 2005) (rejecting federal defendants' argument that a state only resides in the district where its state capital is located); *Atlanta & Fla. R.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892) (noting that a "state government . . . resides at every point within the boundaries of the state"). And the Court need not "force[]" Intervenor Plaintiffs "to sue in the District of Columbia district court" if

litigating in their own state may be less "burdensome." Levin, *supra*, at 2033. Accordingly, the Court transfers the case to the Eastern District of Missouri in the interest of justice.

CONCLUSION

Defendants' Motion is **GRANTED**. Danco's Motion is **DENIED as MOOT**. Texas, Florida, and Louisiana's Motions to Intervene are likewise **DENIED as MOOT**. This case is **TRANSFERRED** to the Eastern District of Missouri. This Order is further **STAYED** for twenty-one days under Northern District of Texas Local Rule 62.2.

All pending applications for admission *pro hac vice* are accordingly also **DENIED as MOOT**. ECF Nos. 257, 258, 259, 269, 270, 271, 272. The Clerk of the Court is **DIRECTED** to refund the fees associated with these applications.

**SO ORDERED**.

September **30**, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE